1 | Daniel J. Berman, Esq.
2 | BERMAN O'CONNOR & MANN
   | Suite 503 Bank of Guam Bldg.
3 | 111 Chalan Santo Papa
   | Hagatna, Guam 96932
4 | Telephone: (671) 477-2778

5

6 | Mark S. Smith, Esq.
   | LAW OFFICES OF MARK S. SMITH
7 | 456 West O'Brien Drive, Suite 102-D
   | Hagåtña, Guam 96910
8 | Telephone: (671) 477-6631

9 | Attorneys for Petitioner:
10 | *WEN YUEH LU*

**FILED**
DISTRICT COURT OF GUAM

DEC 22 2006 *mbo*

MARY L.M. MORAN
CLERK OF COURT

11 | **IN THE UNITED STATES DISTRICT COURT**

12 | **FOR THE DISTRICT OF GUAM** **06-00039**

13 | *Civil Case*
   | ~~Special Proceedings~~ No. _____

14 | WEN YUEH LU,                                )
   |                                             )
15 |                                             )
   |                     Petitioner,             )
16 |                                             )
17 |           vs.                               )   **PETITION FOR WRIT OF HABEAS**
   |                                             )   **CORPUS**
18 | LEONARDO M. RAPADAS, United States          )
19 | Attorney for the Territory of Guam and the  )
   | Northern Mariana Islands, JOAQUIN L.G.      )
20 | SALAS, in his official capacity as the Chief)
   | Marshal; Territory of Guam; and FRANK       )
21 | MICHAEL CRUZ, in his official capacity as   )
   | Chief Probation Officer, U.S. Probation Office )
22 | for the Territory of Guam,                  )
   |                                             )
23 |                                             )
   |                     Respondents.            )
24 | _____   )

25

26 | **I. INTRODUCTION**

27 | 1.     Petitioner Wen Yueh Lu seeks a Writ of Habeas Corpus. Petitioner is

28 | E:\Jean\Plds\DJB\Wen Lu v. Hon. Rapadas\petition.wpd

**ORIGINAL**

===============================================================

currently subject to an Order Setting Conditions of Release forced upon him by the United States Attorney for the Territory of Guam, and such Order is also subject to enforcement by the U.S. Marshal's Office Pretrial Services and supervision by the U.S. Probation Office with respect to the imposed conditions of release.  Prior to his release, Petitioner had been arrested and incarcerated by federal authorities.  Under the terms of the Order of Release, Petitioner has had his passport taken away, was required to post a cash bond of $5,000, must reside at a local hotel, must stay away from all ports of entry and exit, and may not leave the Island of Guam without approval of the Court.  The purpose of this enforced detention and loss of liberty is to require that Petitioner attend legal proceedings in the misdemeanor criminal case of *United States v. Wen Yueh Lu*, Case No. MJ-06-00031, pending in this Court.  Thus, Petitioner has been detained, without a right to return to his residence in Taiwan and pursue his occupation as a fishing captain and is, in effect, incarcerated on the Island of Guam.  Petitioner seeks a Writ of Habeas Corpus and an order requiring Respondents to allow the unconditional release of Petitioner as is required by customary rules of international law binding upon the United States.  Petitioner is being detained in violation of the laws of the United States.

## II. JURISDICTION

2.        Petitioner brings this action under 28 U.S.C. § 2241 and 2242.  Petitioner

E:\Jean\Plds\DJB\Wen Lu v. Hon. Rapadas\petition.wpd

further invokes this Court's jurisdiction under 28 U.S.C. §§ 1331, 1651, 2201, and 2202.

Insofar as he seeks declaratory relief, Petitioner also relies on Federal Rule of Civil

Procedure 57.

     3.      This Court has authority under 28 U.S.C. § 2241 to grant the Writ of Habeas

Corpus and, under 28 U.S.C. § 2242, to entertain this Petition.

     4.      The Court is further empowered (a) to declare the rights and other legal

remedies of the parties herein by 28 U.S.C. § 2201; (b) to effectuate and enforce declaratory

relief by all necessary and proper means by 28 U.S.C. § 2202, as this case involves an actual

controversy within the Court's jurisdiction; and (c) to issue all writs necessary or

appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

     5.      Petitioner also invokes the jurisdiction of this Court pursuant to 28 U.S.C.

§1343 in that Petitioner seeks to redress deprivation of rights guaranteed by the

Constitution, laws and treaties of the United States.

     6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391.  Petitioner is

currently being detained on the Island of Guam.

### III. PARTIES

     7.      Petitioner is an individual who a citizen of the Republic of China (Taiwan)

and is now prevented from freely leaving the Island of Guam by the Order Setting

E:\Jean\Plds\DJB\Wen Lu v. Hon. Rapadas\petition.wpd

Conditions of Release entered in Case No MJ-06-00031, entered December 13, 2006. Exhibit "1", attached. Petitioner is a fishing vessel captain who, while serving as the captain of the MARSHALLS 201, a tuna purse seine vessel flying the flag of the Republic of the Marshall Islands, has been charged with refusal to allow boarding under the Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. § 1857(1)(D). Petitioner is currently confined to the Island of Guam and is not free to leave, pending the outcome of the legal proceedings against him.

8.      Respondent Leonardo M. Rapadas is the U.S. Attorney for the Territory of Guam and the Northern Mariana Islands. Mr. Rapadas is sued in his official capacity.

9.      Respondent Joaquin L.G. Salas is the Director of the U.S. Marshal's Office for the Territory of Guam. Mr. Salas is sued in his official capacity.

10.      Respondent Frank Michael Cruz is the Director of the U.S. Probation Office for the Territory of Guam. Mr. Cruz is sued in his official capacity.

## IV.  STATEMENT OF FACTS

11.      On September 9, 2006, Petitioner was operating a tuna purse seine vessel in what he believed were waters of the Exclusive Economic Zone of the Republic of Kiribati. His vessel, documented under the flag of the Republic of the Marshall Islands is owned by the Marshall Island Fishing Company, an entity organized under the laws of the Republic

E:\Jean\Plds\DJB\Wen Lu v. Hon. Rapadas\petition.wpd

of the Marshall Islands.  The vessel is the MARSHALLS 201.

12.    It is alleged that enforcement officials of the U.S. Coast Guard sited the fishing vessel by aircraft and then sought to arrest the MARSHALLS 201 using the buoy tender WALNUT.  The WALNUT is not a traditional U.S. Coast Guard "cutter", but an industrial vessel built primarily to service navigational buoys at sea.  The vessel is 225 feet long and is configured with an aft superstructure and a large crane fixed on the main deck. A copy of a recent press release describing the WALNUT and photograph of the WALNUT are attached as Exhibit "2".  The appearance of the WALNUT at sea resembles that of a commercial vessel, not a U.S. government military vessel.

13.    Government authorities allege that, on September 9, 2006, the MARSHALLS 201 was in waters claimed by the United States to be part of the Exclusive Economic Zone of Howland and Baker Islands, located to the north of the Republic of Kiribati.   The basis of the assertion of jurisdiction was enactment in 1976 of the Magnuson-Stevens Fishery Conservation and Management Act, which asserted exclusive fishery management jurisdiction by the United States out to 200 nautical miles.  16 U.S.C. § 1811(a).

14.    On March 7, 1977, the U.S. Department of State published a notice in the Federal Register (42 Fed. Reg. 12,937) claiming jurisdiction over waters around Howland and Baker Islands in accordance with certain longitude and latitude coordinates selected

E:\Jean\Plds\DJB\Wen Lu v. Hon. Rapadas\petition.wpd

unilaterally by the United States.  Exhibit "3".  Another unilateral assertion of jurisdiction

over waters around Howland and Baker Islands was declared in a Federal Register notice

dated August 23, 1995 (60 Fed. Reg. 43,825).  Exhibit "4". That notice stated that the

Exclusive Economic Zone around Howland and Baker Islands is "a line 200 nautical miles

from the baseline from which the territorial sea is measured, except to the southeast and

south of Howland Baker Islands the limit of the exclusive economic zone" is determined

by straight lines connecting a set of latitude and longitude coordinates.  Exhibit "4", at p.

43829.

      15.    The asserted fishery management jurisdiction of the United States over water

around the uninhabited islands of Howland and Baker Islands abut against and, on

information and belief, overlap the area claimed by the Republic of Kiribati as that

country's exclusive economic zone. The maritime boundary between the claimed exclusive

economic zones around Howland and Baker Islands and the claimed exclusive economic

zone of the Republic of Kiribati has never been resolved by mutual agreement or

international adjudication.  In 1977, the United States stated, at 42 Fed. Reg. 24,134 (May

12, 1977), that the claimed limits of the U.S. fishery management zones were without

prejudice to any negotiations with neighboring countries or any positions that have been

or may be adopted respecting the limits of maritime jurisdiction.

E:\Jean\Plds\DJB\Wen Lu v. Hon. Rapadas\petition.wpd

16.     At the time of the incident, the MARSHALLS 201 was in possession of a license authorizing fishing activities by the vessel in waters subject to the jurisdiction of the Republic of Kiribati.  The Republic of Kiribati asserted its jurisdiction in May 1983 by enactment of the Maritime Zones (Declaration) Act No. 7.  The Republic of Kiribati also acceded to the United National Convention on Law of the Sea in February 2003.

17.     The act of conducting a purse seine fishing operation on the high seas to capture and recover highly migratory tuna is complex.  Such a vessel uses a large net, approximately 3,000 meters long and 300 feet deep, weighing about 30 tons.  Large skiffs must be used to encircle a school of fish for recovery.  These skiffs then assist as the tuna are "brailed" from the net and loaded below deck in chilled compartments.  The net and the skiffs must then be brought on board the vessel to complete the "set."   A typical "set" to recover a load of tuna and can take about 3 hours and requires the strict attention of all crew, in particular the captain.

18.     It is claimed by U.S. government enforcement officials that the WALNUT "pulled along side" the MARSHALLS 201 while it was bringing in its fishing gear, at approximately 1027 hours. It is alleged that, at that time on September 9, the fishing vessel was 1.9 nautical miles within the U.S. exclusive economic zone around Howland and Baker Islands.  It is then alleged that, despite attempting to contact the captain by radio, the

E:\Jean\Plds\DJB\Wen Lu v. Hon. Rapadas\petition.wpd

WALNUT was unable to contact the captain and the vessel began to "flee south."

19.     It is alleged by U.S. government enforcement officials that, at 1040 hours, the WALNUT hauled up a flag hoist signal "LIMA" and sounded the signal "LIMA" with the WALNUT's whistle.  It is then alleged that the MARSHALLS 201 come to a complete stop at 1100 hours, exactly 33 minutes after it was alleged that the WALNUT "pulled along side" the MARSHALLS 201.

20.     Following boarding, the MARSHALLS 201 was seized and escorted to Guam where it was arrested by the U.S. Marshal's Office pursuant to a warrant of arrest dated October 4, 2006.  The United States Attorney's Office also filed a complaint for the forfeiture of the MARSHALLS 201 for violations of the Magnuson-Stevens Fishery Conservation and Management Act.  *U.S. v. MARSHALLS 201*, Civil Case No. 06-00030 (D.Guam).

21.     The arrest of the MARSHALLS 201 resulted in the issuance of a formal protest by the Republic of the Marshall Islands, dated December 13, 2006, attached as Exhibit "5".

22.     On October 13, 2006, the MARSHALLS 201 was released upon the filing of a bond in the amount of $2,950,000.00.

23.     Immediately following the filing of the bond, the MARSHALLS 201 and all

E:\Jean\Plds\DJB\Wen Lu v. Hon. Rapadas\petition.wpd

of its crew, including Petitioner, were granted the right of free departure from the Island

of Guam and the United States.

24.     On December 6, 2006, following issuance of an Order denying Plaintiff's

Motion to Quash Discovery (entered November 30, 2006), Petitioners arrived on Guam to

provide a testimony preservation deposition.   A representative of the U.S. Attorney's

Office participated in the deposition in the civil forfeiture case and fully cross examined

Petitioner with respect to the incident.   The deposition concluded in the afternoon on

December 8, 2006.

25.     On December 9, 2006, when Petitioner was in the departure area of the Guam

International Airport, he was arrested by federal government authorities and incarcerated

in Hagatna, Guam prison.   The United States Attorney's Office filed a criminal complaint

against Petitioner for refusal to allow boarding under the Magnuson-Stevens Fishery

Conservation and Management Act, specifically 16 U.S.C. § 1857(1)(D).   It is charged that

Petitioner "did knowingly and willfully refuse to permit United States Coast Guard officers

of the USCG Cutter Walnut to board the Marshalls 201 for purposes of conducting a search

and investigation" of alleged fishing violations in the U.S. exclusive economic zone.   It is

also alleged in the complaint that Petitioner is subject to the special maritime and territorial

jurisdiction of the United States, as defined in 18 U.S.C. § 7(1).

E:\Jean\Plds\DJB\Wen Lu v. Hon. Rapadas\petition.wpd

26.    On December 9, 2006, Petitioner was arraigned and pleaded not guilty to the

criminal charge, which is a Class B misdemeanor.  Government authorities have filed

statements in both this criminal case and in the civil forfeiture case confirming that

Petitioner did in fact stop the MARSHALLS 201 and allow enforcement officials to conduct

an inspection, which then led to its arrest.  Prior to December 8, 2006, U.S. government

enforcement officials had filed no civil or other charges against Petitioner for the incident

on September 9, 2006.

27.    On December 13, 2006, the Order Setting Conditions of Release was entered,

preventing Petitioner from being released unconditionally, ordered the payment of a

$5,000.00 bond and prohibited from leaving the Island of Guam.  Exhibit "1".

## V.  APPLICABLE LAW

28.    The applicable statutory provision, part of the fishery management laws of

the United States, reads, in relevant part, as follows:

> It is unlawful—
>
> (1) for any person—
>
> (D) to refuse to permit any officer authorized to enforce the
> provisions of this Act …to board a fishing vessel subject to
> such person's control for the purposes of conducting any
> search or inspection in connection with the enforcement of this
> Act or any regulation, permit…

E:\Jean\Plds\DJB\Wen Lu v. Hon. Rapadas\petition.wpd

16 U.S.C. § 1857(1)(D).

29.     Commission of an act prohibited by 16 U.S.C. § 1857(1)(D) is a criminal offense.  16 U.S.C. § 1859(a).

30.     Conviction of the prohibited act of failure to allow boarding is punishable by a fine, or imprisonment of not more than 6 months, unless the conduct involves use of a dangerous weapon, caused bodily injury or places an observer or officer in fear of imminent bodily harm.

31.     The United Nations Law of the Sea Treaty ("LOS Treaty") has been ratified by 152 nations as of October 23, 2006.  The Republic of the Marshall Islands and the Republic of Kiribati have acceded to the LOS Treaty and are bound by its terms.

32.     Article 73.2 of the LOS Treaty states that "[a]rrested vessels and their crews shall be promptly released upon the posting of reasonable bond or other security."  The plain text of this Article mandates a prompt unconditional release, not a release with conditions.

33.     Article 73.3 of the LOS Treaty states that "Coastal State [i.e. in this case the United States] penalties for violations of fisheries laws and regulations in the exclusive economic zone may not include imprisonment, in the absence of agreements to the contrary by the States concerned, or any other form of corporal punishment."

E:\Jean\Plds\DJB\Wen Lu v. Hon. Rapadas\petition.wpd

34.     Article 73 of the LOS Treaty is binding on the United States as a matter of customary international law and Article 18 of the Vienna Convention on the Law of Treaties.  The President of the United States has submitted the LOS Treaty to the United States Senate for ratification, indicating the intention of the United States to be bound by its terms. *Lauritzen v. Larsen,* 354 U.S. 571, 581-82 (1953); *U.S. v. Royal Caribbean Cruises, Ltd.,* 11 F.Supp.2d 1358, 1369-1374 (S.D.Fla. 1998); *U.S. v. Royal Caribbean Cruises, Ltd.,* 24 F.Supp.2d 155, 159-160 (D.Puerto Rico 1997); *United States v. Kun Yun Jho,* 2006 WL 3488952 (E.D.Texas; Dec. 4, 2006).

### FIRST CAUSE OF ACTION

**Failure to Release Petitioner Unconditionally;
Violation of Customary International Law**

35.     Petitioner incorporates by reference Paragraphs 1-34.

36.     Petitioner has been arrested and charged with a violation of the fisheries laws of the United States applicable to a maritime area alleged to be the exclusive economic zone of the United States.

37.     Petitioner has posted the bond, $5,000, for his release.

38.     Respondents have imposed conditions on Petitioner's release that prevent him from leaving the Island of Guam and returning to his residence in the Republic of Taiwan and from pursuing his livelihood.

E:\Jean\Plds\DJB\Wen Lu v. Hon. Rapadas\petition.wpd

39.     Article 73.2 of the LOS Treaty, binding on the United States as a rule of customary international law, requires that Petitioner be released unconditionally after posting a reasonable bond in cases involving violations of the fisheries laws of the United States in the exclusive economic zone.

40.     Therefore, the conditions for release set forth in the Order Setting Conditions of Release are unlawful and cannot be imposed on Petitioner.

## SECOND CLAIM FOR RELIEF

### Threat of Imprisonment; Violation of Customary International Law

41.     Petitioner incorporates by reference Paragraphs 1-40.

42.     Petitioner has been charged with a violation of U.S. law, 16 U.S.C. § 1857(1)(D) that could be punished by a term of imprisonment of not more than six months. This statutory provision is part of the fisheries laws of the United States applicable in the exclusive economic zone.

43.     Article 73.3 of the LOS Treaty, binding on the United States as a rule of customary international law, prohibits imprisonment of any individual for violations of fisheries laws or other form of corporal punishment, except pursuant to agreements with the relevant country, in this case the Republic of the Marshall Islands, the flag nation for the MARSHALLS 201.  The Republic of the Marshall Islands has not agreed to allow the

E:\Jean\Plds\DJB\Wen Lu v. Hon. Rapadas\petition.wpd

United States to imprison any of the crew serving on fishing vessels that are registered in the Republic of the Marshall Islands.

44.     The United States may not impose any sanction on Petitioner that includes imprisonment.

45.     Petitioner seeks a declaration from this Court that, even if the United States could establish that it has jurisdiction and that Petitioner failed to stop (which is denied), no penalty of imprisonment can be imposed.

## REQUEST FOR RELIEF

WHEREFORE, Petitioner requests for relief as follows:

46.     Grant the Writ of Habeas Corpus.

47.     Enter an order enjoining Respondents from enforcing the terms of the Order Setting Conditions of Release with respect to Petitioner.

48.     Enter an order requiring that Respondents release Petitioner unconditionally now that he has posted a reasonable bond.

49.     Enter an order finding that, in any event, Petitioner can never be imprisoned on the basis of the charges made against him by the United States.

50.     Grant such other and further relief as the Court may deem necessary and appropriate to protect Petitioner's rights, including an award of attorney's fees and costs.

E:\Jean\Plds\DJB\Wen Lu v. Hon. Rapadas\petition.wpd

Dated this ⎨⎨ day of December, 2006.

Respectfully submitted,

Attorneys for Petitioner:
*WEN YUEH LU*

By:  _____

**DANIEL J. BERMAN**
**MARK S. SMITH**

E:\Jean\Plds\DJB\Wen Lu v. Hon. Rapadas\petition.wpd



**FILED**

DISTRICT COURT OF GUAM

DEC 1 3 2006

MARY L.M. MORAN
CLERK OF COURT

# UNITED STATES DISTRICT COURT

## District of      GUAM

United States of America

V.

**WEN YUEH LU**

_____
Defendant

**ORDER SETTING CONDITIONS
OF RELEASE**

Case Number:  **MJ-06-00031**

IT IS ORDERED that the release of the defendant is subject to the following conditions:

  (1)  The defendant shall not commit any offense in violation of federal, state or local law while on release in this case.

  (2)  The defendant shall immediately advise the court, defense counsel and the U.S. attorney in writing before any change in address and telephone number.

  (3)  The defendant shall appear at all proceedings as required and shall surrender for service of any sentence imposed as

directed.  The defendant shall appear at (if blank, to be notified) _____**DISTRICT COURT OF GUAM**_____
Place

_____**U.S. COURTHOUSE**_____ on _____**FEBRUARY 2, 2007 AT 9:30 A.M.**_____
Date and Time

### Release on Personal Recognizance or Unsecured Bond

IT IS FURTHER ORDERED that the defendant be released provided that:

( ✔ ) (4)  The defendant promises to appear at all proceedings as required and to surrender for service of any sentence imposed.

(   ) (5)  The defendant executes an unsecured bond binding the defendant to pay the United States the sum of _____ dollars ($ _____ ) in the event of a failure to appear as required or to surrender as directed for service of any sentence imposed.

DISTRIBUTION:  COURT    DEFENDANT    PRETRIAL    SERVICES    U.S. ATTORNEY    U.S. MARSHAL



**EXHIBIT "1"**

## Additional Conditions of Release

Upon finding that release by one of the above methods will not by itself reasonably assure the appearance of the defendant and the safety of other persons and the community.

IT IS FURTHER ORDERED that the release of the defendant is subject to the conditions marked below:

( ) (6)   The defendant is placed in the custody of:

(Name of person or organization)  **TAI LI HU**

(Address)  **1448 PALE SAN VITORES ROAD, ROOM 203, TUMON BAY CAPITOL HOTEL**

(City and state)  **TUMON, GUAM**                                      (Tel. No.)  **(671) 646-3903**

who agrees (a) to supervise the defendant in accordance with all the conditions of release, (b) to use every effort to assure the appearance of the defendant at all scheduled court proceedings, and (c) to notify the court immediately in the event the defendant violates any conditions of release or disappears.

Signed: _____          12/13/2006
                    Custodian or Proxy                              Date

( ) (7)   The defendant shall:

( X ) (a)   report to the  **U.S. PROBATION OFFICE**              ,
               telephone number  **473-9201**              , not later than  **AS DIRECTED**              .

( X ) (b)   execute a bond or an agreement to forfeit upon failing to appear as required the following sum of money or designated property:
               **$5,000.00 CASH**

( ) (c)   post with the court the following indicia of ownership of the above-described property, or the following amount or percentage of the above-described
               _____ .

( ) (d)   execute a bail bond with solvent sureties in the amount of $ _____ .

( ) (e)   maintain or actively seek employment.

( ) (f)   maintain or commence an education program.

( X ) (g)   surrender any passport to:  **U.S. DISTRICT COURT OF GUAM**

( X ) (h)   obtain no passport.

( X ) (i)   abide by the following restrictions on personal association, place of abode, or travel:
               **MAINTAIN A FIXED RESIDENCE**

( ) (j)   avoid all contact, directly or indirectly, with any persons who are or who may become a victim or potential witness in the subject investigation or prosecution, including but not limited to:

( ) (k)   undergo medical or psychiatric treatment and/or remain in an institution as follows: _____

( ) (l)   return to custody each (week) day as of _____ o'clock after being released each (week) day as of _____ o'clock for employment, schooling, or the following limited purpose(s):

( ) (m)   maintain residence at a halfway house or community corrections center, as deemed necessary by the pretrial services office or supervising officer.

( X ) (n)   refrain from possessing a firearm, destructive device, or other dangerous weapons.

( ) (o)   refrain from  (   ) any  (   ) excessive use of alcohol.

( X ) (p)   refrain from use or unlawful possession of a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.

( ) (q)   submit to any method of testing required by the pretrial services office or the supervising officer for determining whether the defendant is using a prohibited substance. Such methods may be used with random frequency and include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing.

( ) (r)   participate in a program of inpatient or outpatient substance abuse therapy and counseling if deemed advisable by the pretrial services office or supervising officer.

( ) (s)   refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited substance testing or electronic monitoring which is (are) required as a condition(s) of release.

( ) (t)   participate in one of the following home confinement program components and abide by all the requirements of the program which  (   ) will or
               (   ) will not include electronic monitoring or other location verification system. You shall pay all or part of the cost of the program based upon your ability to pay as determined by the pretrial services office or supervising officer.
               (   )  (i)  **Curfew.** You are restricted to your residence every day  (   ) from _____ to _____ , or  (   ) as directed by the pretrial services office or supervising officer; or
               (   )  (ii)  **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the pretrial services office or supervising officer; or
               (   )  (iii)  **Home Incarceration.** You are restricted to your residence at all times except for medical needs or treatment, religious services, and court appearances pre-approved by the pretrial services office or supervising officer.

( ) (u)   report as soon as possible, to the pretrial services office or supervising officer any contact with any law enforcement personnel, including, but not limited to, any arrest, questioning, or traffic stop.

( X ) (v)   **DO NOT LEAVE GUAM WITHOUT PERMISSION OF THE COURT AND THE U.S. PROBATION OFFICE.**

( X ) (w)   **STAY AWAY FROM ALL PORTS OF ENTRY AND EXIT.**

( ) (x)   _____

DISTRIBUTION:   COURT     DEFENDANT     PRETRIAL SERVICES     U.S. ATTORNEY     U.S. MARSHAL

## Advice of Penalties and Sanctions

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

A violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of release, an order of detention, and a prosecution for contempt of court and could result in a term of imprisonment, a fine, or both.

The commission of a Federal offense while on pretrial release will result in an additional sentence of a term of imprisonment of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be in addition to any other sentence.

Federal law makes it a crime punishable by up to 10 years of imprisonment, and a $250,000 fine or both to obstruct a criminal investigation. It is a crime punishable by up to ten years of imprisonment, and a $250,000 fine or both to tamper with a witness, victim or informant; to retaliate or attempt to retaliate against a witness, victim or informant; or to intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If after release, you knowingly fail to appear as required by the conditions of release, or to surrender for the service of sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more, you shall be fined not more than $250,000 or imprisoned for not more than 10 years, or both;
(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, you shall be fined not more than $250,000 or imprisoned for not more than five years, or both;
(3) any other felony, you shall be fined not more than $250,000 or imprisoned not more than two years, or both;
(4) a misdemeanor, you shall be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be in addition to the sentence for any other offense. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

## Acknowledgment of Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions set forth above.

LU, WEN - YUEH
_____
Signature of Defendant

ROOM 203
_____
Address

CAPITAL HOTEL TUMON
_____
City and State                          Telephone

646-3903

## Directions to United States Marshal

( ) The defendant is ORDERED released after processing.
(X) The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release. The defendant shall be produced before the appropriate judge at the time and place specified, if still in custody.

Date: ___12/13/2006___

_____
Signature of Judicial Officer

**JOAQUIN V.E. MANIBUSAN, JR., MAGISTRATE JUDGE**
Name and Title of Judicial Officer

DISTRIBUTION:    COURT    DEFENDANT    PRETRIAL SERVICE    U.S. ATTORNEY    U.S. MARSHAL

# USCG Seagoing Buoy Tender

From Wikipedia, the free encyclopedia
(Redirected from USCG seagoing buoy tender)

The **Seagoing Buoy Tender** is a class of U.S. Coast Guard Cutter originally designed to service aids to navigation, throughout the waters of the United States, and wherever U.S. shipping interests require. The Coast Guard has maintained a fleet of seagoing buoy tenders dating back to its orgins in the U.S. Light House Service. These ships originally were designated with the hull classification symbol **WAGL**, but in 1965 the designation was changed to **WLB**, which is still used today.

Two classes of the WLB cutters have been produced. The older class, the "180" class WLB cutters, were 180 feet (55 m) long. Thirty-nine of these sturdy vessels were built from 1942-1944. All but one were constructed in the shipyards of Duluth, Minnesota. The 180 fleet, many of which served for more than 50 years, all went through different mid-life modifications that essentially resulted in three different classes of ship. All of the 180s are now retired and have been replaced with the new 225 foot (69 m) Juniper class WLBs. The last 180-foot cutter, the USCGC Acacia (WLB-406), was decommissioned June 7, 2006.

The new 225 foot buoy tenders are designed and operated as multi-mission platforms. While the 180's also performed other CG missions, they lacked the speed, communications, navigation and manuverability of the new 225's. Today, 225's conduct almost as much law enforcement as they do AtoN, and are also outfitted to conduct oil spill recovery, Search and Rescue, homeland security and some ice breaking operations.

## Contents

- 1 180' - Class Ships
    - 1.1 Class A (Cactus)
    - 1.2 Class B (Mesquite)
    - 1.3 Class C (Iris)
- 2 225' - Juniper Class Ships
- 3 See also
- 4 External links

# 180' - Class Ships

## Class A (Cactus)

- USCGC Balsam (WLB-62)
- USCGC Cactus (WLB-270)
- USCGC Cowslip (WLB-277)
- USCGC Woodbine (WLB-289)
- USCGC Gentian (WLB-290)
- USCGC Laurel (WLB-291)
- USCGC Clover (WLB-292)
- USCGC Evergreen (WLB-295)
- USCGC Sorrel (WLB-296)
- USCGC Citrus (WLB-300)
- USCGC Conifer (WLB-301)
- USCGC Madrona (WLB-302)
- USCGC Tupelo (WLB-303)

**EXHIBIT "2"**

## Class B (Mesquite)

- USCGC Ironwood (WLB-297)
- USCGC Mesquite (WLB-305)
- USCGC Buttonwood (WLB-306)
- USCGC Planetree (WLB-307)
- USCGC Papaw (WLB-308)
- USCGC Sweetgum (WLB-309)

## Class C (Iris)

- USCGC Basswood (WLB-388)
- USCGC Bittersweet (WLB-389)
- USCGC Blackhaw (WLB-390)
- USCGC Blackthorn (WLB-391)
- USCGC Bramble (WLB-392)
- USCGC Firebush (WLB-393)
- USCGC Hornbeam (WLB-394)
- USCGC Iris (WLB-395)
- USCGC Mallow (WLB-396)
- USCGC Mariposa (WLB-397)
- USCGC Redbud (WLB-398)
- USCGC Sagebrush (WLB-399)
- USCGC Saliva (WLB-400)
- USCGC Sassafras (WLB-401)
- USCGC Sedge (WLB-402)
- USCGC Spar (WLB-403)
- USCGC Sundew (WLB-404)
- USCGC Sweetbrier (WLB-405)
- USCGC Acacia (WLB-406)
- USCGC Woodrush (WLB-407)


USCGC *Conifer* WLB-301 circa 1966


USCG Buoy Tender *Mesquite*

# 225' - Juniper Class Ships


USCG Buoy Tender *Sundew*

The *Juniper* class uses Dynamic Positioning which
allows maintenance of the vessel's position within a 10
meter circle in winds of up to 30 knots (56 km/h) and waves of up to 8 feet (2.4 m).

- USCGC Juniper (WLB-201)
- USCGC Willow (WLB-202)
- USCGC Kukui (WLB-203)
- USCGC Elm (WLB-204)
- USCGC Walnut (WLB-205)
- USCGC Spar (WLB-206)
- USCGC Maple (WLB-207)
- USCGC Aspen (WLB-208)
- USCGC Sycamore (WLB-209)
- USCGC Cypress (WLB-210)
- USCGC Oak (WLB-211)
- USCGC Hickory (WLB-212)
- USCGC Fir (WLB-213)
- USCGC Hollyhock (WLB-214)
- USCGC Sequoia (WLB-215)
- USCGC Alder (WLB-216)



Launch of the *Juniper* class Buoy Tender *Oak* WLB-211

## See also

- USCG Coastal Buoy Tender
- USCG Inland Buoy Tender

## External links

- *Juniper* class overiview (http://www.uscg.mil/datasheet/225wlb.htm)



USCGC *Hollyhock* in front of the Renaissance Center in Detroit

| ***Juniper*-class Coast Guard Cutters** |
| --- |
| *Juniper* \| *Willow* \| *Kukui* \| *Elm* \| *Walnut* \| *Spar* \| *Maple* \| *Aspen* \| *Sycamore* \| *Cypress* \| *Oak* \| *Hickory* \| *Fir* \| *Hollyhock* \| *Sequoia* \| *Alder* |
| **United States Coast Guard** |

Retrieved from "http://en.wikipedia.org/wiki/USCG_Seagoing_Buoy_Tender"

Categories: United States Coast Guard ships \| Ship classes

- This page was last modified 18:14, 14 November 2006.
- All text is available under the terms of the GNU Free Documentation License. (See **Copyrights** for details.) Wikipedia® is a registered trademark of the Wikimedia Foundation, Inc.

# Starbulletin.com

Sunday, April 27, 2003



ASSOCIATED PRESS

This worn-out Iraqi buoy will be replaced with a new one by the crew of the U.S. Coast Guard Cutter Walnut, off the coast of Iraq in the North Arabian Gulf. The cuter, based in Honolulu, is replacing buoys in the Khor Abd Allah Waterway to ensure safe transit for vessels sailing to the port of Umm Qasr including vessels carrying humanitarian aid to Iraq.

--Advertisements--
Ads by Google

**Military Friends**
Military singles seek love, dating and marriage. Join free today.
www.MilitaryLoveLinks.cc

**School of Military Mates**
Get reunited with your School of Military friends at Forces Reunited
www.forcesreunited.org.u

Advertise on this site

--Advertisements--

# Isle Coast Guard

# buoys Iraqi safety

## The cutter Walnut helps
## secure devices for navigation
## around coastal waters

By David Briscoe
Associated Press

Forty days' sail from its familiar waters off Hawaiian shores, a U.S. Coast Guard vessel is replacing buoys and helping secure coastal waters around newly conquered Iraq.

Buoys that guide ships along the Khor Abd Allah Waterway flowing into the main Iraqi port of Umm Qasr are in serious disrepair and way out of place, says Lt. Rick Wester, executive officer of the cutter Walnut.

"They are intended to be an aid to navigation and most of them are a hazard to navigation," said Wester in a telephone interview from Iraq. Wester is also a spokesman for the Coast Guard in Honolulu, where he's used to dealing with illegal drift nets, civilian rescues and other domestic coastline challenges.

The ship's commander, Lt. Cmdr. Chris Smith, said the buoy replacements will help ensure the safety of military, humanitarian aid and commercial ships heading into the critical Iraqi port.

The 225-foot Walnut, one of a series of U.S. buoy tenders named for trees, is the first of its type to be sent into a war zone. It left Honolulu in January for Guam, Singapore, Kuwait and then Iraq.

Wester says, however, it's not the first Coast Guard ship to go to war. Coast Guard cutters and earlier model buoy tenders served during World War II, Vietnam, Grenada and the aborted U.S. invasion of Haiti.

The Walnut's original mission in Iraq was to deal with a possible terrorist act that might result in an oil spill. The buoy tender has a 400-gallon per minute skimming capacity.

The ship's crew had undergone two months of weapons and force protections training and had drills in chemical, biological and radiological attack response while en route to the Gulf, Wester said.

When no environmental disaster occurred, the little Coast Guard ship pulled interdiction duty under U.N. sanctions, boarding ships



entering Iraqi waters.

One big ship was hauling 420 containers, and it took a day of climbing over the cargo to check it all. No violations were found, Wester said.

There were some uncertain moments, but the boarded ship's crews generally welcomed the sight of a U.S. Coast Guard ship in Iraqi waters, Wester said.

An exciting moment came when the Walnut crew first entered the Persian Gulf.

"One afternoon, radar indicated a group of contacts approaching Walnut's stern doing about twice its speed," Wester said. "The contacts drew closer, and the lookout reported a larger carrier battle group on the horizon overtaking Walnut."

For a moment it looked as if Walnut was "at the tip of the spear," leading the U.S. carrier battle group into the Gulf, Wester said, but the Navy dismissed the Walnut during the transit as a "slow-moving Coast Guard asset."

On its Gulf mission, the Walnut also was used to carry Navy equipment from Hawaii to Kuwait, refueled a stranded Iraqi civilian tug, helped in recovery efforts for two British helicopters that collided and rescued a five-member port security crew caught in heavy seas.

The Walnut's 50-member Honolulu crew had a stroke of luck in its buoy repair duties when 30 brand new buoys were found in an Iraqi warehouse. That made it a relatively simple operation to bolt high-tech solar lighting units onto the buoys and simply replace the 30 rusted, barnacle-encrusted Iraqi devices in the channel.

Wester said the operations should take about two more weeks, and then Walnut expects to begin the long journey home.

E-MAIL THIS ARTICLE ||| PRINTER-FRIENDLY VERSION
E-mail to City Desk

BACK TO TOP

**Text Site Directory:**
**[News] [Business] [Features] [Sports] [Editorial] [Do It Electric!]**
**[Classified Ads] [Search] [Subscribe] [Info] [Letter to Editor]**
**[Feedback]**

© 2003 Honolulu Star-Bulletin -- http://starbulletin.com





[Public Notice 526]

## FISHERY CONSERVATION ZONE

### Notice of Limits

The Fishery Conservation and Management Act of 1976 establishes a fishery conservation zone contiguous to the territorial sea of the United States, effective March 1, 1977, the outer boundary of which is a line drawn in such a manner that each point on it is 200 nautical miles from the baselines from which the breadth of the territorial sea is measured.

The Government of the United States of America has been, is, and will be, engaged in consultations and negotiations with the governments of neighboring countries concerning the delimitation of areas subject to the respective jurisdiction of the United States and of these countries.

The limits of the fishery conservation zone of the United States as set forth below are intended to be without prejudice to any negotiations with these countries or to any positions which may have been or may be adopted respecting the limits of maritime jurisdiction in such areas.

Therefore, the Department of State on behalf of the Government of the United States of America hereby announces the limits of the fishery conservation zone of the United States of America, within which the United States will exercise its exclusive fishery management authority as set forth in the Fishery Conservation and Management Act of 1976, pending the establishment of permanent maritime boundaries by mutual agreement.

Publication of a notice on this subject which is effective immediately upon publication is necessary to effectively exercise the foreign affairs responsibility of the Department of State. (See Title 5, U.S.C., 553 (a) (1) and (b) (B)).

The North American coordinates in this notice relate to the Clarke 1866 Ellipsoid and the North American 1927 datum for the contiguous United States.

Straight line in this notice means a geodetic line.

U.S. ATLANTIC COAST AND GULF OF MEXICO

In the Gulf of Main area ¹,² the limit of the fishery conservation zone shall be determined by straight lines connecting the following coordinates:

1. 44°46'35.346'' N., 66°54'11.253'' W.
2. 44°44'41'' N., 66°56'17'' W.
3. 44°43'66'' N., 66°56'26'' W.
4. 44°39'18'' N., 66°57'29'' W.
5. 44°36'58'' N., 67°00'36'' W.
6. 44°33'27'' N., 67°02'37'' W.
7. 44°30'38'' N., 67°02'38'' W.
8. 44°29'02'' N., 67°03'42'' W.
9. 44°25'27'' N., 67°02'16'' W.
10. 44°21'43'' N., 67°02'33'' W.
11. 44°14'08'' N., 67°08'38'' W.
12. 44°07'42'' N., 67°25'30'' W.
13. 43°32'00'' N., 67°50'00'' W.
14. 43°23'00'' N., 67°46'00'' W.
15. 42°27'30'' N., 67°06'00'' W.
16. 42°32'41'' N., 66°21'36'' W.
17. 42°00'00'' N., 65°40'00'' W.
18. 41°29'18.07'' N., 65°08'11.94'' W.

Between point 18 and 19 the limit of the fishery conservation zone is 200 nautical miles seaward from the baseline from which the territorial sea is measured.

In the area of the Blake Plateau, the Straits of Florida and the Eastern Gulf of Mexico, the limit of the fishery conservation zone shall be determined by straight lines connecting the following coordinates:

19. 28°17'10'' N., 76°36'45'' W.
20. 28°17'10'' N., 79°11'34'' W.
21. 27°52'54'' N., 79°28'36'' W.
22. 27°26'00'' N., 79°31'58'' W.
23. 27°16'12'' N., 79°34'18'' W.
24. 27°11'53'' N., 79°34'50'' W.
25. 27°05'58'' N., 79°35'19'' W.
26. 27°00'27'' N., 79°35'17'' W.
27. 26°55'15'' N., 79°34'39'' W.
28. 26°53'57'' N., 79°34'37'' W.
29. 26°45'45'' N., 79°32'41'' W.
30. 26°44'22'' N., 79°32'23'' W.
31. 26°43'35'' N., 79°32'20'' W.
32. 26°41'11'' N., 79°32'01'' W.
33. 26°38'12'' N., 79°31'33'' W.
34. 26°36'29'' N., 79°31'07'' W.
35. 26°35'20'' N., 79°30'50'' W.
36. 26°34'50'' N., 79°30'40'' W.
37. 26°34'10'' N., 79°30'38'' W.
38. 26°31'11'' N., 79°30'15'' W.
39. 26°29'04'' N., 79°29'53'' W.
40. 26°25'30'' N., 79°29'58'' W.
41. 26°23'28'' N., 79°29'55'' W.
42. 26°23'20'' N., 79°29'54'' W.
43. 26°18'56'' N., 79°31'55'' W.
44. 26°15'25'' N., 79°33'17'' W.
45. 26°15'12'' N., 79°33'23'' W.
46. 26°03'08'' N., 79°35'53'' W.
47. 26°07'46'' N., 79°30'09'' W.
48. 26°06'58'' N., 79°36'35'' W.
49. 26°02'51'' N., 79°38'22'' W.
50. 25°59'29'' N., 79°40'03'' W.
51. 25°59'15'' N., 79°40'08'' W.
52. 25°57'47'' N., 79°40'23'' W.
53. 25°56'17'' N., 79°41'00'' W.
54. 25°54'03'' N., 79°41'38'' W.
55. 25°53'23'' N., 79°41'46'' W.
56. 25°51'53'' N., 79°41'59'' W.
57. 25°49'32'' N., 79°42'16'' W.
58. 25°48'23'' N., 79°42'23'' W.
59. 25°48'19'' N., 79°42'24'' W.
60. 25°46'25'' N., 79°42'44'' W.
61. 25°46'15'' N., 79°42'45'' W.
62. 25°43'39'' N., 79°42'59'' W.
63. 25°42'30'' N., 79°42'46'' W.
64. 25°40'36'' N., 79°42'27'' W.
65. 25°37'32'' N., 79°42'27'' W.
66. 25°37'07'' N., 79°42'27'' W.
67. 25°31'02'' N., 79°42'12'' W.
68. 25°27'58'' N., 79°42'11'' W.
69. 25°24'03'' N., 79°42'12'' W.
70. 25°22'20'' N., 79°42'20'' W.
71. 25°21'28'' N., 79°42'08'' W.
72. 25°16'51'' N., 79°41'24'' W.
73. 25°15'56'' N., 79°41'31'' W.
74. 25°10'38'' N., 79°41'31'' W.
75. 25°09'50'' N., 79°41'35'' W.
76. 25°09'02'' N., 79°41'45'' W.
77. 25°02'53'' N., 79°42'30'' W.
78. 25°02'58'' N., 79°42'57'' W.
79. 25°00'28'' N., 79°44'00'' W.
80. 24°59'01'' N., 79°44'49'' W.
81. 24°55'28'' N., 79°45'58'' W.
82. 24°46'16'' N., 79°49'25'' W.
83. 24°43'02'' N., 79°49'39'' W.
84. 24°42'34'' N., 79°50'51'' W.
85. 24°41'48'' N., 79°52'52'' W.
86. 24°38'30'' N., 79°55'59'' W.
87. 24°36'25'' N., 80°03'62'' W.
88. 24°33'16'' N., 80°12'44'' W.
89. 24°33'03'' N., 80°14'22'' W.
90. 24°32'17'' N., 80°15'17'' W.
91. 24°31'26'' N., 80°16'50'' W.
92. 24°30'55'' N., 80°17'48'' W.
93. 24°30'12'' N., 80°19'22'' W.

94. 24°30'04'' N., 80°19'45'' W.
95. 24°29'36'' N., 80°21'06'' W.
96. 24°28'16'' N., 80°24'36'' W.
97. 24°28'04'' N., 80°25'11'' W.
98. 24°27'21'' N., 80°27'21'' W.
99. 24°20'28'' N., 80°39'31'' W.
100. 24°25'05'' N., 80°33'23'' W.
101. 24°23'28'' N., 80°36'10'' W.
102. 24°22'31'' N., 80°38'57'' W.
103. 24°22'05'' N., 80°39'52'' W.
104. 24°19'29'' N., 80°45'52'' W.
105. 24°19'14'' N., 80°45'48'' W.
106. 24°18'36'' N., 80°46'50'' W.
107. 24°18'33'' N., 80°46'55'' W.
108. 24°09'49'' N., 80°59'48'' W.
109. 24°09'40'' N., 80°59'52'' W.
110. 25°08'56'' N., 81°01'03'' W.
111. 24°03'28'' N., 81°01'52'' W.
112. 24°08'24'' N., 81°01'58'' W.
113. 24°07'26'' N., 81°03'07'' W.
114. 23°52'18'' N., 81°03'06'' W.
115. 23°53'59'' N., 81°11'10'' W.
116. 23°56'24'' N., 81°13'27'' W.
117. 23°55'00'' N., 81°16'41'' W.
118. 23°51'50'' N., 81°25'03'' W.
119. 23°50'37'' N., 81°28'12'' W.
120. 23°49'50'' N., 81°30'08'' W.
121. 23°49'41'' N., 81°30'29'' W.
122. 23°49'33'' N., 81°32'33'' W.
123. 23°49'22'' N., 81°35'11'' W.
124. 23°49'09'' N., 81°38'57'' W.
125. 23°49'05'' N., 81°39'21'' W.
126. 23°48'22'' N., 81°46'48'' W.
127. 23°48'24'' N., 81°47'02'' W.
128. 23°48'28'' N., 81°47'53'' W.
129. 23°48'48'' N., 81°54'30'' W.
130. 23°49'44'' N., 82°03'01'' W.
131. 23°49'50'' N., 82°03'06'' W.
132. 23°51'29'' N., 82°17'58'' W.
133. 23°51'35'' N., 82°18'31'' W.
134. 23°52'21'' N., 82°21'53'' W.
135. 23°52'28'' N., 82°23'33'' W.
136. 23°53'17'' N., 82°33'15'' W.
137. 23°53'30'' N., 82°35'32'' W.
138. 23°53'20'' N., 82°36'04'' W.
139. 23°49'25'' N., 82°50'01'' W.
140. 23°49'13'' N., 82°50'46'' W.
141. 23°49'08'' N., 82°52'46'' W.
142. 23°49'00'' N., 82°54'21'' W.
143. 23°49'08'' N., 82°58'41'' W.
144. 23°49'08'' N., 82°58'46'' W.
145. 23°49'30'' N., 83°07'00'' W.
146. 23°49'42'' N., 83°03'13'' W.
147. 23°49'53'' N., 83°11'03'' W.
148. 23°49'53'' N., 83°11'10'' W.
149. 23°50'02'' N., 83°12'10'' W.
150. 23°51'11'' N., 83°20'13'' W.
151. 23°52'49'' N., 83°31'09'' W.
152. 23°54'12'' N., 83°39'45'' W.
153. 23°55'09'' N., 83°48'16'' W.
154. 23°56'11'' N., 83°48'23'' W.
155. 23°58'20'' N., 83°55'52'' W.
156. 24°03'18'' N., 84°11'20'' W.
157. 24°10'22'' N., 84°29'19'' W.
158. 24°12'50'' N., 84°35'44'' W.
159. 24°14'17'' N., 84°38'37'' W.
160. 24°40'32'' N., 85°31'20'' W.
161. 24°51'50'' N., 85°53'45'' W.
162. 25°10'29'' N., 86°37'23'' W.
163. 25°13'03'' N., 86°32'08'' W.

Between point 163 and point 164 the limit of the fishery conservation zone is 200 nautical miles seaward from the baseline from which the territorial sea is measured.

In the area of the Central Gulf of Mexico, the limit of the fishery conservation zone shall be determined by straight lines connecting the following coordinates: ²

164. 25°41'56.52'' N., 88°23'05.54'' W.
165. 25°46'52.00'' N., 90°29'41.00'' W.
166. 25°42'13.05'' N., 91°05'24.83'' W.

Between point 166 and point 167, the limit of the fishery conservation zone is 200 nautical miles seaward from the baseline from which the territorial sea is measured.

HeinOnline -- 42 Fed. Reg. 12937 1977

EXHIBIT "3"

Case 1:06-cv-00039    Document 1    Filed 12/22/2006    Page 29 of 42

In the area of the western Gulf of Mexico, the limit of the fishery conservation zone shall be determined by straight lines connecting the following coordinates:[3]

167. 25°59'48.23'' N., 93°26'42.19'' W.
168. 26°00'30'' N., 95°38'26'' W.
169. 26°00'31'' N., 96°48'29'' W.
170. 25°58'30.57'' N., 96°55'27.37'' W.

From point 170, the limit of the fishery conservation zone shall follow the line established by the United States of America and the United Mexican States in Article V(A) and annexes of the Treaty to Resolve Pending Boundary Differences and Maintain the Rio Grande and Colorado River as the International Boundary, signed at Mexico City, November 23, 1970.

U.S. PACIFIC COAST (WASHINGTON, OREGON AND CALIFORNIA)

In the area seaward of the Strait of Juan de Fuca[1] the limit of the fishery conservation zone shall be determined by straight lines connecting the following coordinates:

1. 48°29'37.19'' N., 124°43'33.19'' W.
2. 48°30'11'' N., 124°47'13'' W.
3. 48°30'22'' N., 124°50'21'' W.
4. 48°30'14'' N., 124°54'52'' W.
5. 48°29'57'' N., 124°59'14'' W.
6. 48°29'44'' N., 125°00'06'' W.
7. 48°28'09'' N., 125°05'47'' W.
8. 48°27'10'' N., 125°08'25'' W.
9. 48°23'47'' N., 125°09'12'' W.
10. 48°20'16'' N., 125°22'48'' W.
11. 48°18'22'' N., 125°29'58'' W.
12. 48°11'05'' N., 125°53'48'' W.
13. 47°49'16'' N., 126°40'57'' W.
14. 47°36'47'' N., 127°11'58'' W.
15. 47°22'00'' N., 127°41'23'' W.
16. 46°42'05'' N., 128°51'59'' W.
17. 46°31'47'' N., 129°07'39'' W.

Between point 17 and 18 the limit of the fishery conservation zone is 200 nautical miles seaward from the baseline from which the breadth of the territorial sea is measured.

In the area of the Southern California coast[1] the limit of the fishery conservation zone shall be determined by a series of straight lines connecting the following coordinates:

18. 30°33'31.20'' N., 121°51'58.37'' W.
19. 31°07'58'' N., 118°36'18'' W.
20. 32°37'37'' N., 117°49'31'' W.
21. 32°35'22.11'' N., 117°27'49.42'' W.

From point 21 the limit of the fishery conservation zone shall follow the line established by the United States of America and the United Mexican States in Article V(B) and annexes of the Treaty to Resolve Pending Boundary Differences and Maintain the Rio Grande and Colorado River as the International Boundary, signed at Mexico City, November 23, 1970.

ALASKA

Off the coast of Alaska, in the area of the Beaufort Sea,[1] the eastern limit of the fishery conservation zone shall be determined by straight lines connecting the following coordinates:

1. 69°38'48.88'' N., 140°59'52.57'' W.
2. 69°38'53'' N., 140°59'51'' W.
3. 69°39'37'' N., 140°59'01'' W.
4. 69°40'10'' N., 140°58'34'' W.
5. 69°41'30'' N., 140°57'00'' W.
6. 69°46'28'' N., 140°49'45'' W.
7. 69°47'54'' N., 140°47'07'' W.
8. 69°51'40'' N., 140°42'37'' W.
9. 70°09'28'' N., 140°19'22'' W.
10. 70°11'30'' N., 140°16'09'' W.
11. 70°29'43'' N., 140°09'51'' W.
12. 70°29'19'' N., 140°09'45'' W.
13. 70°37'31'' N., 140°02'47'' W.
14. 70°43'25'' N., 139°52'31'' W.
15. 70°58'02'' N., 139°47'16'' W.
16. 71°01'16'' N., 139°44'24'' W.

17. 71°11'59'' N., 139°53'58'' W.
18. 71°23'10'' N., 139°21'46'' W.
19. 72°12'18'' N., 138°26'19'' W.
20. 72°46'39'' N., 137°39'02'' W.
21. 72°56'49'' N., 137°34'08'' W.

Between point 21 and point 22 at 72°46'53.00'' N., 168°58'23.587'' W., the limit of the fishery conservation zone is 200 nautical miles seaward from the baseline from which the territorial sea is measured.

From point 22, the limit of the fishery conservation zone extends southerly along the line set forth in the Convention signed at Washington, March 30, 1867, until point 23 at 60°36'53'' N., 179°52'54'' W. is reached.

From point 23 to point 24 at 56°19'03'' N., 172°25'24'' E., the limit of the fishery conservation zone is 200 nautical miles seaward from the baseline from which the territorial sea is measured.

From point 24, the limit of the fishery conservation zone extends southerly along the line set forth in the Convention signed at Washington, March 30, 1867, until point 25 at 51°18'15'' N., 167°42'30'' E., is reached.

From point 25 to point 26, the limit of the fishery conservation zone is 200 nautical miles from the baseline from which the breadth of the territorial sea is measured.

From point 26, the southern limit of the fishery conservation zone off the coast of Alaska[1] shall be determined by straight lines connecting the following coordinates:

26. 53°28'27'' N., 136°45'20'' W.
27. 54°00'01'' N., 135°45'57'' W.
28. 54°07'30'' N., 134°58'24'' W.
29. 54°12'45'' N., 134°25'03'' W.
30. 54°12'57'' N., 134°24'47'' W.
31. 54°16'40'' N., 134°10'49'' W.
32. 54°00'39'' N., 133°49'21'' W.
33. 54°22'01'' N., 133°44'24'' W.
34. 54°30'08'' N., 133°16'58'' W.
35. 54°31'02'' N., 133°14'00'' W.
36. 54°30'43'' N., 133°11'28'' W.
37. 54°30'10'' N., 133°07'43'' W.
38. 54°30'03'' N., 133°07'00'' W.
39. 54°28'32'' N., 132°55'28'' W.
40. 54°28'25'' N., 132°55'54'' W.
41. 54°27'23'' N., 132°50'43'' W.
42. 54°27'07'' N., 132°49'35'' W.
43. 54°28'00'' N., 132°44'12'' W.
44. 54°24'54'' N., 132°39'46'' W.
45. 54°24'34'' N., 132°38'16'' W.
46. 54°24'39'' N., 132°28'51'' W.
47. 54°24'41'' N., 132°24'35'' W.
48. 54°24'41'' N., 132°24'29'' W.
49. 54°24'52'' N., 132°23'39'' W.
50. 54°21'51'' N., 132°02'54'' W.
51. 54°25'41'' N., 131°49'28'' W.
52. 54°28'18'' N., 131°45'20'' W.
53. 54°30'32'' N., 131°38'01'' W.
54. 54°29'53'' N., 131°33'48'' W.
55. 54°36'53'' N., 131°19'29'' W.
56. 54°39'09'' N., 131°16'17'' W.
57. 54°40'52'' N., 131°13'54'' W.
58. 54°42'11'' N., 131°13'00'' W.
59. 54°46'18'' N., 131°04'43'' W.
60. 54°45'35'' N., 131°03'09'' W.
61. 54°44'12'' N., 130°59'44'' W.
62. 54°43'46'' N., 130°58'55'' W.
63. 54°43'00'' N., 130°57'41'' W.
64. 54°43'37'' N., 130°57'09'' W.
65. 54°42'27'' N., 130°56'18'' W.
66. 54°41'26'' N., 130°53'39'' W.
67. 54°41'21'' N., 130°53'18'' W.
68. 54°41'05'' N., 130°49'17'' W.
69. 54°41'06'' N., 130°48'31'' W.
70. 54°40'40'' N., 130°45'31'' W.
71. 54°40'41'' N., 130°44'59'' W.
72. 54°40'42'' N., 130°44'43'' W.
73. 54°40'03'' N., 130°32'22'' W.
74. 54°39'43'' N., 130°41'35'' W.
75. 54°34'14'' N., 130°39'19'' W.
76. 54°39'54'' N., 130°38'58'' W.
77. 54°41'09'' N., 130°38'58'' W.
78. 54°42'22'' N., 130°38'26'' W.
79. 54°42'47'' N., 130°38'06'' W.

80. 54°42'58'' N., 130°37'57'' W.
81. 54°43'00'' N., 130°37'55'' W.
82. 54°43'15'' N., 130°37'44'' W.
83. 54°43'24'' N., 130°37'39'' W.
84. 54°43'30.15'' N., 130°37'37.01'' W.

THE CARIBBEAN SEA

Commonwealth of Puerto Rico and the Virgin Islands of the United States: The seaward limit of the fishery conservation zone around the Commonwealth of Puerto Rico and the Virgin Islands of the United States is a line 200 nautical miles from the baseline from which the breadth of the territorial sea is measured, except that to the west, south, and east, the limit of the fishery conservation zone shall be determined by straight lines connecting the following coordinates:

1. 21°48'41'' N., 65°50'02'' W.
2. 21°44'37'' N., 65°49'10'' W.
3. 20°41'49'' N., 65°36'51'' W.
4. 20°37'10'' N., 65°33'41'' W.
5. 20°18'44'' N., 65°21'51'' W.
6. 19°57'59'' N., 65°27'17'' W.
7. 19°38'16'' N., 65°21'00'' W.
8. 19°13'24'' N., 65°06'29'' W.
9. 18°41'12'' N., 64°50'36'' W.
10. 18°32'36'' N., 64°55'50'' W.
11. 18°29'25'' N., 64°53'53'' W.
12. 18°27'53'' N., 64°53'20'' W.
13. 18°26'15'' N., 64°52'58'' W.
14. 18°25'42'' N., 64°52'49'' W.
15. 18°25'23'' N., 64°52'42'' W.
16. 18°24'31'' N., 64°52'23'' W.
17. 18°24'30'' N., 64°52'22'' W.
18. 18°24'07'' N., 64°52'03'' W.
19. 18°23'56'' N., 64°51'54'' W.
20. 18°23'50'' N., 64°51'40'' W.
21. 18°23'46'' N., 64°50'32'' W.
22. 18°23'47'' N., 64°50'26'' W.
23. 18°23'53'' N., 64°49'45'' W.
24. 18°24'13'' N., 64°49'10'' W.
25. 18°24'19'' N., 64°49'00'' W.
26. 18°24'25'' N., 64°48'36'' W.
27. 18°24'31'' N., 64°48'17'' W.
28. 18°24'37'' N., 64°48'01'' W.
29. 18°24'33'' N., 64°47'04'' W.
30. 18°23'21'' N., 64°44'41'' W.
31. 18°23'20'' N., 64°40'40'' W.
32. 18°23'08'' N., 64°48'14'' W.
33. 18°23'02'' N., 64°40'03'' W.
34. 18°23'46'' N., 64°45'22'' W.
35. 18°23'47'' N., 64°45'16'' W.
36. 18°22'48'' N., 64°45'05'' W.
37. 18°23'02'' N., 64°44'56'' W.
38. 18°22'48'' N., 64°44'58'' W.
39. 18°22'50'' N., 64°44'48'' W.
40. 18°22'49'' N., 64°44'30'' W.
41. 18°22'50'' N., 64°44'37'' W.
42. 18°22'46'' N., 64°44'26'' W.
43. 18°22'44'' N., 64°44'23'' W.
44. 18°22'43'' N., 64°44'10'' W.
45. 18°22'46'' N., 64°44'01'' W.
46. 18°22'48'' N., 64°43'45'' W.
47. 18°22'42'' N., 64°43'33'' W.
48. 18°22'38'' N., 64°43'36'' W.
49. 18°22'38'' N., 64°43'29'' W.
50. 18°22'37'' N., 64°43'25'' W.
51. 18°22'33'' N., 64°43'04'' W.
52. 18°22'30'' N., 64°43'00'' W.
53. 18°22'34'' N., 64°42'50'' W.
54. 18°22'33'' N., 64°42'38'' W.
55. 18°22'34'' N., 64°42'32'' W.
56. 18°22'31'' N., 64°42'20'' W.
57. 18°22'30'' N., 64°42'14'' W.
58. 18°22'36'' N., 64°42'05'' W.
59. 18°22'24'' N., 64°42'02'' W.
60. 18°22'24'' N., 64°41'49'' W.
61. 18°22'28'' N., 64°41'24'' W.
62. 18°22'31'' N., 64°41'00'' W.
63. 18°22'33'' N., 64°40'57'' W.
64. 18°22'24'' N., 64°40'47'' W.
65. 18°22'13'' N., 64°40'02'' W.
66. 18°22'10'' N., 64°40'37'' W.
67. 18°22'09'' N., 64°40'13'' W.
68. 18°22'09'' N., 64°40'04'' W.
69. 18°22'05'' N., 64°39'50'' W.
70. 18°22'01'' N., 64°39'25'' W.

HeinOnline -- 42 Fed. Reg. 12938 1977

Case 1:06-cv-00039    Document 1    Filed 12/22/2006    Page 30 of 42

71. 18°22'01" N., 64°39'21" W.
72. 18°22'02" N., 64°39'03" W.
73. 18°21'59" N., 64°38'28" W.
74. 18°21'59" N., 64°38'25" W.
75. 18°21'23" N., 64°38'20" W.
76. 18°21'23" N., 64°38'21" W.
77. 18°20'46" N., 64°38'58" W.
78. 18°20'44" N., 64°38'36" W.
79. 18°20'10" N., 64°38'28" W.
80. 18°19'29" N., 64°38'19" W.
81. 18°19'21" N., 64°38'15" W.
82. 18°19'12" N., 64°38'18" W.
83. 18°17'48" N., 64°39'21" W.
84. 18°17'18" N., 64°39'46" W.
85. 18°16'13" N., 64°39'39" W.
86. 18°04'26" N., 64°38'14" W.
87. 18°03'06" N., 64°38'05" W.
88. 18°03'04" N., 64°34'22" W.
89. 18°03'03" N., 64°33'44" W.
90. 18°03'01" N., 64°30'56" W.
91. 18°03'01" N., 64°29'05" W.
92. 18°02'55" N., 64°26'30" W.
93. 18°02'37" N., 64°22'20" W.
94. 18°02'37" N., 64°20'34" W.
95. 18°02'37" N., 64°19'58" W.
96. 18°01'38" N., 64°11'59" W.
97. 18°00'48" N., 64°06'02" W.
98. 18°00'29" N., 64°03'43" W.
99. 17°59'20" N., 63°56'37" W.
100. 17°59'53" N., 63°54'22" W.
101. 17°56'35" N., 63°53'22" W.
102. 17°39'48" N., 63°54'54" W.
103. 17°37'15" N., 63°55'11" W.
104. 17°30'28" N., 63°55'57" W.
105. 17°11'43" N., 63°58'00" W.
106. 17°05'07" N., 63°58'42" W.
107. 16°45'47" N., 64°00'49" W.
108. 16°49'22" N., 64°06'31" W.
109. 16°48'10" N., 64°06'59" W.
110. 16°42'40" N., 64°08'06" W.
111. 16°41'43" N., 64°10'07" W.
112. 16°26'19" N., 64°23'39" W.
113. 16°23'30" N., 64°45'54" W.
114. 15°39'31" N., 65°58'41" W.
115. 15°30'10" N., 66°07'09" W.
116. 15°14'06" N., 66°19'57" W.
117. 14°55'48" N., 66°34'30" W.
118. 14°56'06" N., 66°51'40" W.
119. 14°58'27" N., 67°04'19" W.
120. 14°58'45" N., 67°05'17" W.
121. 14°58'58" N., 67°06'11" W.
122. 14°58'10" N., 67°07'00" W.
123. 15°03'32" N., 67°23'40" W.
124. 15°05'07" N., 67°36'23" W.
125. 15°10'38" N., 68°03'46" W.
126. 15°11'08" N., 68°09'21" W.
127. 15°12'33" N., 68°27'32" W.
128. 15°12'51" N., 68°28'56" W.
129. 15°46'46" N., 68°26'04" W.
130. 17°21'30" N., 68°17'53" W.
131. 17°38'01" N., 68°16'46" W.
132. 17°50'24" N., 58°16'11" W.
133. 17°58'07" N., 68°15'59" W.
134. 18°02'23" N., 68°15'40" W.
135. 18°06'10" N., 68°15'27" W.
136. 18°07'27" N., 68°15'33" W.
137. 18°09'12" N., 68°14'53" W.
138. 18°17'08" N., 68°11'28" W.
139. 18°19'20" N., 68°09'40" W.
140. 18°22'42" N., 68°06'57" W.
141. 18°24'39" N., 68°04'58" W.
142. 18°25'25" N., 68°03'09" W.
143. 18°28'08" N., 68°00'59" W.
144. 18°31'27" N., 67°56'57" W.
145. 17°32'58" N., 67°55'07" W.
146. 18°34'34" N., 67°52'53" W.
147. 18°54'37" N., 67°46'21" W.
148. 19°00'42" N., 67°44'25" W.
149. 19°10'00" N., 67°41'24" W.
150. 19°19'03" N., 67°38'19" W.
151. 19°21'20" N., 67°38'01" W.
152. 19°29'45" N., 67°31'52" W.
153. 20°00'59" N., 67°31'35" W.
154. 20°01'17" N., 67°31'29" W.
155. 20°02'49" N., 67°31'04" W.
156. 20°03'30" N., 67°30'52" W.
157. 20°09'28" N., 67°29'11" W.

158. 20°48'18" N., 67°17'50" W.
159. 21°22'58" N., 67°03'34" W.
160. 21°30'18" N., 66°59'05" W.
161. 21°33'47" N., 66°57'30" W.
162. 21°51'24" N., 66°49'30" W.

*Navassa Island.* The limits of the fishery conservation zone around Navassa Island remain to be determined.

CENTRAL AND WESTERN PACIFIC [4]

*Hawaii and Midway Island.* The seaward limit of the fishery conservation zone is 200 nautical miles from the baseline from which the territorial sea is measured.

*American Samoa.* The seaward limit of the fishery conservation zone shall be determined by straight lines connecting the following points:
1. 11°01'21" S., 173°46'15" W.
2. 11°03'28" S., 173°44'37" W.
3. 11°22'08" S., 173°15'50" W.
4. 11°28'56" S., 173°08'46" W.
5. 11°40'49" S., 172°48'17" W.
6. 11°53'57" S., 172°23'03" W.
7. 11°54'06" S., 172°22'53" W.
8. 12°05'27" S., 172°00'55" W.
9. 12°13'49" S., 171°44'47" W.
10. 12°14'01" S., 171°44'25" W.
11. 12°17'25" S., 171°37'14" W.
12. 12°23'34" S., 171°26'18" W.
13. 12°27'27" S., 171°17'26" W.
14. 12°29'47" S., 171°08'24" W.
15. 12°35'21" S., 170°36'20" W.
16. 12°38'11" S., 170°31'35" W.
17. 12°36'18" S., 170°30'44" W.
18. 13°09'05" S., 170°42'39" W.
19. 13°13'56" S., 170°44'20" W.
20. 13°50'40" S., 170°58'24" W.
21. 13°55'43" S., 170°57'57" W.
22. 13°54'30" S., 170°58'20" W.
23. 13°56'54" S., 170°59'34" W.
24. 14°03'20" S., 171°02'53" W.
25. 14°03'27" S., 171°03'03" W.
26. 14°03'28" S., 171°03'06" W.
27. 14°06'18" S., 171°04'48" W.
28. 14°27'02" S., 171°14'40" W.
29. 14°40'48" S., 171°24'21" W.
30. 15°01'58" S., 171°31'37" W.
31. 15°14'19" S., 171°37'37" W.
32. 15°50'19" S., 171°50'44" W.
33. 15°50'48" S., 171°50'23" W.
34. 15°58'20" S., 171°40'00" W.
35. 16°04'47" S., 171°42'37" W.
36. 16°13'29" S., 171°37'41" W.
37. 16°40'33" S., 171°11'03" W.
38. 16°48'46" S., 171°12'29" W.
39. 16°39'17" S., 170°10'05" W.
40. 16°34'58" S., 169°55'59" W.
41. 16°32'36" S., 169°12'12" W.
42. 16°37'55" S., 169°18'19" W.
43. 16°56'20" S., 168°20'05" W.
44. 17°31'45" S., 168°02'17" W.
45. 15°28'58" S., 163°12'33" W.
46. 15°28'58" S., 163°12'33" W.
47. 14°51'29" S., 165°24'22" W.
48. 14°38'39" S., 165°27'41" W.
49. 14°03'53" S., 165°36'57" W.
50. 14°00'54" S., 165°40'31" W.
51. 13°35'14" S., 166°10'05" W.
52. 13°24'33" S., 166°22'23" W.
53. 13°01'48" S., 166°48'11" W.
54. 12°47'51" S., 167°03'50" W.
55. 12°30'48" S., 167°23'09" W.

*Guam.* The seaward limit of the fishery conservation zone is 200 nautical miles from the baseline from which the breadth of the territorial sea is measured, except that to the north of Guam, the limit of the fishery conservation zone shall be determined by straight lines connecting the following points:
1. 15°43'28" N., 142°05'43" E.
2. 14°55'18" N., 143°15'29" E.
3. 14°47'43" N., 143°20'23" E.
4. 14°30'07" N., 143°51'50" E.
5. 14°11'10" N., 144°26'36" E.

6. 14°03'34" N., 144°36'47" E.
7. 13°57'14" N., 144°51'43" E.
8. 13°53'11" N., 144°59'19" E.
9. 13°51'18" N., 145°03'00" E.
10. 13°51'10" N., 145°03'05" E.
11. 13°51'00" N., 143°03'38" E.
12. 13°50'18" N., 145°06'15" E.
13. 13°49'15" N., 145°03'37" E.
14. 13°47'40" N., 145°12'31" E.
15. 15°40'00" N., 145°16'14" E.
16. 13°45'37" N., 145°17'23" E.
17. 13°41'19" N., 145°26'08" E.
18. 13°37'16" N., 145°34'33" E.
19. 13°36'23" N., 145°36'21" E.
20. 13°35'54" N., 145°37'14" E.
21. 13°10'24" N., 146°12'14" E.
22. 13°05'18" N., 146°32'02" E.
23. 13°00'17" N., 146°41'05" E.
24. 12°33'03" N., 147°29'57" E.
25. 12°14'34" N., 148°03'11" E.
26. 12°13'55" N., 148°04'31" E.

and, except that to the south of Guam, the limit of the fishery conservation zone shall be determined by straight lines connecting the following points:
27. 11°38'25" N., 147°44'42" E.
28. 11°30'53" N., 147°31'03" E.
29. 11°31'48" N., 146°55'19" E.
30. 11°27'15" N., 146°25'34" E.
31. 11°22'13" N., 145°52'36" E.
32. 11°17'31" N., 145°22'38" E.
33. 11°13'33" N., 144°57'26" E.
34. 11°13'23" N., 144°56'29" E.
35. 10°57'03" N., 143°28'53" E.
36. 10°57'30" N., 143°03'09" E.
37. 11°55'33" N., 142°15'02" E.
38. 12°54'00" N., 141°21'48" E.
39. 12°54'17" N., 141°21'33" E.
40. 12°57'34" E., 141°19'17" E.
41. 13°06'32" N., 141°12'59" N.

*Johnston Atoll.* The seaward limit of the fishery conservation zone is 200 nautical miles from the baseline from which the breadth of the territorial sea is measured.

*Palmyra Atoll.* The seaward limit of the fishery conservation zone is 200 nautical miles from the baseline from which the breadth of the territorial sea is measured, except that to the southeast of Palmyra Atoll the limit of the fishery conservation zone shall be determined by straight lines connecting the following coordinates:
1. 7°55'04" N., 159°22'29" W.
2. 7°31'05" N., 159°39'30" W.
3. 7°09'43" N., 159°54'35" W.
4. 6°33'46" N., 160°19'51" W.
5. 6°31'37" N., 160°21'18" W.
6. 6°25'31" N., 160°25'40" W.
7. 6°03'05" N., 160°41'42" W.
8. 5°44'12" N., 160°55'13" W.
9. 4°57'25" N., 161°28'18" W.
10. 4°44'39" N., 161°37'18" W.
11. 3°54'25" N., 163°12'56" W.
12. 2°39'50" N., 163°05'14" W.

*Wake Island.* The seaward limit of the fishery conservation zone is 200 nautical miles from the baseline from which the breadth of the territorial sea is measured, except that to the south of Wake Island the limit of the fishery conservation zone shall be determined by straight lines connecting the following coordinates:
1. 17°56'15" N., 169°54'00" E.
2. 17°40'02" N., 169°31'18" E.
3. 17°37'47" N., 169°12'53" E.
4. 17°11'18" N., 168°13'30" E.
5. 16°41'31" N., 167°07'39" E.
6. 16°02'45" N., 165°43'30" E.

*Jarvis Island.* The seaward limit of the fishery conservation zone is 200 nautical miles from the baseline from which the breadth of the territorial sea is measured, except that to the north of Jarvis Island, the

HeinOnline -- 42 Fed. Reg. 12939 1977

Case 1:06-cv-00039    Document 1    Filed 12/22/2006    Page 31 of 42

limit of the fishery conservation zone shall be determined by straight lines connecting the following coordinates:

1. 2°01'00" N., 162°22'00" W.
2. 2°01'42" N., 162°01'35" W.
3. 2°03'20" N., 161°41'33" W.
4. 2°02'30" N., 161°38'20" W.
5. 2°00'13" N., 161°22'24" W.
6. 1°50'18" N., 160°20'42" W.
7. 1°45'46" N., 159°53'59" W.
8. 1°43'31" N., 159°35'27" W.

and, except that to the eastward of Jarvis Island, the limit of the fishery conversation zone between point No. 8 and a point at 3°10'40" S., 158°10'30" W. remains to be determined.

*Howland and Baker Islands.* The seaward limit of the fishery conservation zone is a line 200 nautical miles from the baseline from which the breadth of the territorial sea is measured, except that to the south of Howland and Baker Islands, the limit of the fishery conservation zone remains to be determined between 0°14'30" N., 173°08'00" W. and 02°55'45" S., 177°26'00" W.

FOOTNOTES

[1] The limits of the U.S. fishery conservation zone in areas adjacent to Canada do not correspond to limits of the Canadian fishery zone as described in the Canada Gazette of January 1, 1977.

[2] In view of the fact that the claimed limits of fishery jurisdiction published by the United States and Canada would leave an unclaimed area within the Gulf of Maine, the United States will exercise its fishery management jurisdiction to the Canadian claimed line where that line is situated seaward of the United States claimed line, until such time as a permanent maritime boundary with Canada is established in the Gulf of Maine.

[3] Agreed with the Government of Mexico as a provisional maritime boundary on November 24, 1976.

[4] Establishment of the fishery conservation zone as set forth in this notice is without prejudice to claims regarding the sovereignty of disputed islands.

Dated: March 1, 1977.

MARK B. FELDMAN,
*Deputy Legal Adviser.*

[FR. Doc.77-6563 Filed 3-3-77;8:45 am]

# DEPARTMENT OF TRANSPORTATION

## Coast Guard

[CGD 77-025]

### UNITED STATES COAST GUARD ACADEMY ADVISORY COMMITTEE

#### Renewal and Charter

This is to give notice, in accordance with the Federal Advisory Committee Act (Pub. L. 92-463, 5 U.S.C. App. 1) of October 6, 1972, that the U.S. Coast Guard Academy Advisory Committee has been renewed by the Secretary of Transportation for a two-year period beginning January 16, 1977 through January 16, 1979.

The U.S. Coast Guard Academy Advisory Committee was established under section 6 of an Act of Congress, Pub. L. 75-38 of April 16, 1937 (14 U.S.C. 193) as amended.

The purpose of the Advisory Committee is to examine the curriculum and faculty of the Academy and advise the Commandant of recommendations to maintain and improve the Academy's high quality.

CHARTER—U.S. COAST GUARD ACADEMY

ADVISORY COMMITTEE

1. *Purpose.* The purpose of this Instruction is to promulgate the charter of the Coast Guard Academy Advisory Committee in response to the provisions of reference (a).

2. *Cancellation.* Commandant Instruction 5420.10A is hereby canceled.

3. *Background.* The Coast Guard Academy Advisory Committee was authorized by section 6, of an Act of Congress, Pub. L. 75-38, on 16 April 1937. This Act permitted the Secretary to appoint an advisory committee of "five persons of distinction in the field of education who shall serve without pay." Subsequently, the 81st Congress increased the membership to "seven persons of distinction in education and other fields relating to the purposes of the Academy, who shall serve without pay."

4. *Objective.* The objective and mission of the Committee is to advise the Commandant, United States Coast Guard, on the status of the curriculum and faculty of the United States Coast Guard Academy, making recommendations for improvement and maintenance of its high quality.

5. *Membership.* The Committee will consist of seven members who are recognized persons of distinction in the field of education and other fields relating to the purpose of the Academy.

6. *Committee Officers.* a. The "Chairman" shall be appointed by the Secretary and shall conduct each meeting, provide opportunity for participation by each member, and ensure adherence to the agenda.

b. The "Executive Director" and permanent Vice Chairman shall be the Superintendent, United States Coast Guard Academy. He shall be responsible for preparing the agenda and submitting same to Commandant (G-P) eight weeks prior to the scheduled date of the meeting. He shall be the designated Federal Official required by section 10 of the Federal Advisory Committee Act and perform the duties pertaining thereto.

(c) The "Executive Secretary" shall be the Academic Dean, United States Coast Guard Academy. He will assist the chairman and the Executive Director in discharging committee responsibilities.

d. The "Coast Guard Headquarters Liaison Officer" shall be Chief, Office of Personnel. He will be the point of contact for the Committee, Executive Director and the Executive Secretary and will provide all the necessary support services to permit the effective execution of Committee functions.

7. *Meetings.* The Committee shall meet approximately once every six months with special meetings called as necessary. Timely notice shall be published in the FEDERAL REGISTER. All meetings shall be open to the public, who shall be permitted to attend, appear before or file statements with the Committee. All members of the public may file written statements with the Advisory Committee before or after the meeting. The Committee may allow oral statements if desired and may establish procedures for their introduction. The Executive Director shall approve the calling of all meetings, approve all agenda, attend all meetings and is authorized to adjourn any meeting whenever he determines it to be in the public interest.

8. *Cost.* All necessary operating expenses will be borne by the United States Coast Guard. It is estimated that the annual cost will be $5,000.00 and 0.1 man-years. All members serve voluntarily without compensation, except for reimbursement for travel expenses and lodging plus $16.00 in lieu of subsistence, the total not to exceed $35.00 per day.

9. *Sponsor.* The sponsor of the Committee shall be the Commandant, to whom the Committee shall report.

10. *Subcommittees.* The Chairman is authorized, with the approval of the sponsor, to establish subcommittees from among the membership of the Committee. Subcommittees shall comply with the provisions of paragraph 9, of DOT Order 1120.3A.

11. *Availability of Records.* Subject to section 552 of Title 5, U.S.C., the records, reports, minutes, agenda or other documents shall be made available for public inspection and copying at a single location in the offices of the Executive Secretary.

12. *Reports.* A detailed report, including the minutes of each meeting, shall be furnished to the Commandant and shall include:

a. Persons present.

b. Complete and accurate description of matters discussed and conclusions reached.

c. Copies of reports received, issued or approved by the Committee.

d. Certification of accuracy by the Chairman and Executive Director.

13. *Filing Date—January 16, 1977.* This is the effective date of the charter which will expire two years from that date unless sooner terminated or extended.

Interested persons may seek additional information by writing:

Capt. R. M. White, U.S.C.G., Executive Secretary, Coast Guard Academy Advisory Committee, U.S. Coast Guard Academy, New London, CT 00320.

or by calling: 203-443-8666.

Dated: March 2, 1977.

C. E. LARKIN,
*Rear Adm., U.S. Coast Guard,
Chief, Office of Personnel.*

[FR Doc.77-6587 Filed 3-4-77;8:45 am]

HeinOnline -- 42 Fed. Reg. 12940 1977

Case 1:06-cv-00039   Document 1   Filed 12/22/2006   Page 32 of 42

12. If you were a Cabinet Secretary, would you hire this person to be a key member of your staff?

13. What would you expect this candidate to be doing in 15 to 20 years?

**Privacy Act and Paperwork Reduction Act Statements**

Pursuant to the Freedom of Information Act (5 U.S.C. 552, as amended) and the Privacy Act (5 U.S.C. 552a), the President's Commission on White House Fellowships operates its competitive application process and collects personal information for its use in evaluating applicants under authority of Executive Order 11183, as amended. Submission of the information is voluntary; however, failure to furnish all the requested information may result in delay or elimination of consideration for a Fellowship. All files, records, and other material submitted by or in behalf of any applicant, or collected or obtained with regard to an applicant, are used by those persons associated with the Commission for the purpose of screening and evaluating applications. The information may also be disclosed to a congressional office in response to an inquiry from that office made at the request of that individual. Executive Order 9397 provides for the collection of Social Security Numbers to identify individual records. Furnishing your Social Security Number is voluntary; however, failure to do so may delay the processing of your application.

This request is in accordance with the clearance requirements of the Paperwork Reduction Act (44 U.S.C. 3507). The information is being collected in order to evaluate your qualifications for a Fellowship. Your response is required to make this determination. Public reporting burden for this collection of information is estimated to average five (5) hours per response, including time for reviewing instructions, gathering the requested personal evaluations, and completing the application. Please send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing the burden, to the President's Commission on White House Fellowships, Washington, DC 20415.

**Records Retention**

The application forms of persons selected as White House Fellows may be circulated to appropriate Executive Branch officials incident to placing Fellows in assignments for the Fellowship year and subsequently may be retained, along with other applicant file materials, by the Commission in its permanent files on persons who are selected as White House Fellows. These permanent records are accessible to the individuals concerned.

Sixty days after a letter has been mailed to an applicant advising that he or she has been eliminated from the competition, all materials in the applicant's file will be destroyed and this procedure will be repeated after each stage of the selection process.

The Commission cannot assume responsibility for the return of applications or supporting documents. Applicants are therefore advised to retain copies of their application forms and not to submit irreplaceable documents or other materials with applications.

[FR Doc. 95–20947 Filed 8–22–95; 8:45 am]

BILLING CODE 6325–01–M

## DEPARTMENT OF STATE

[Public Notice 2237]

### Exclusive Economic Zone and Maritime Boundaries; Notice of Limits

By Presidential Proclamation No. 5030 made on March 10, 1983, the United States established an exclusive economic zone, the outer limit of which is a line drawn in such a manner that each point on it is 200 nautical miles from the baseline from which the breadth of the territorial sea is measured.

The Government of the United States of America has been, is, and will be, engaged in consultations and negotiations with governments of neighboring countries concerning the delimitation of areas subject to the respective jurisdiction of the United States and of these countries.

The limits of the exclusive economic zone of the United States as set forth below are intended to be without prejudice to any negotiations with these countries or to any positions which may have been or may be adopted respecting the limits of maritime jurisdiction in such areas. Further, the limits of the exclusive economic zone set forth below are without prejudice to the outer limit of the continental shelf of the United States where that shelf extends beyond 200 nautical miles from the baseline in accordance with international law.

The following notices have been published which have defined the United States maritime boundaries and fishery conservation zone established March 1, 1977: Public Notice 506, **Federal Register**, Vol. 41, No. 214, November 4, 1976, 48619–20; Public Notice 526, **Federal Register**, Vol. 42, No. 44, March 7, 1977, 12937–40; Public Notice 544, **Federal Register**, Vol. 42, No. 92, May 12, 1977, 24134; Public Notice 4710–01, **Federal Register**, Vol. 43, No. 7, January 11, 1978, 1658; Public Notice 585, **Federal Register**, Vol. 43, No. 7, January 11, 1978, 1659; Public Notice 910, **Federal Register**, Vol. 49, No. 155, August 9, 1984, 31973.

This Public Notice supersedes all limits defined in the above Public Notices.

Therefore, the Department of State on behalf of the Government of the United States hereby announces the limits of the exclusive economic zone of the United States of America, within which the United States will exercise its sovereign rights and jurisdiction as permitted under international law, pending the establishment of permanent maritime boundaries by mutual agreement in those cases where a boundary is necessary and has not already been agreed.

Publication of a notice on this subject which is effective immediately upon publication is necessary to effectively exercise the foreign affairs responsibility of the Department of State. (See Title 5 U.S.C. 553 (a)(1)(B).)

Unless otherwise noted, the coordinates in this notice relate to the Clarke 1866 Ellipsoid and the North American 1927 Datum ("NAD 27"). Unless otherwise specified, the term "straight line" in this notice means a geodetic line.

**U.S. Atlantic Coast and Gulf of Mexico**

In the Gulf of Maine area, the limit of the exclusive economic zone is defined by straight lines connecting the following coordinates[1]:

1. 44°46′35.346″ N., 66°54′11.253″ W.
2. 44°44′41″ N., 66°56′17″ W.
3. 44°43′56″ N., 66°56′26″ W.
4. 44°39′13″ N., 66°57′29″ W.
5. 44°36′58″ N., 67°00′36″ W.
6. 44°33′27″ N., 67°02′57″ W.
7. 44°30′38″ N., 67°02′38″ W.
8. 44°29′03″ N., 67°03′42″ W.
9. 44°25′27″ N., 67°05′17″ W.
10. 44°21′43″ N., 67°02′33″ W.
11. 44°14′06″ N., 67°08′38″ W.
12. 44°11′12″ N., 67°16′46″ W.
13. 42°53′14″ N., 67°44′35″ W.
14. 42°31′08″ N., 67°28′05″ W.
15. 40°27′05″ N., 65°41′59″ W.

Between points 15 and 16, the limit of the exclusive economic zone is 200 nautical miles seaward from the baseline from which the territorial sea is measured.

In the area of the Blake Plateau, the Straits of Florida, and Eastern Gulf of Mexico, the limit of the exclusive economic zone shall be determined by

---

[1] The limits of the U.S. exclusive economic zone from points 1 to 12 in areas adjacent to Canada do not correspond to limits of the Canadian fishery zone as defined in the Canada Gazette of January 1, 1977, due to the dispute between the United States and Canada relating to the sovereignty over Machias Seal Island and North Rock. The line defined by points 12 through 15 reflects the International Court of Justice Award of October 14, 1984, establishing a United States-Canada maritime boundary, pursuant to the Treaty between the Government of Canada and the Government of the United States of America to Submit to Binding Dispute Settlement the Delimitation of the Maritime Boundary in the Gulf of Maine Area, TIAS 10204.



EXHIBIT "4"

straight lines connecting the following coordinates:[2]

16. 28°17'10" N. 76°36'45" W.
17. 28°17'10" N. 78°17'24" W.
18. 27°52'54" N. 79°28'36" W.
19. 27°26'00" N. 79°31'38" W.
20. 27°16'12" N. 79°34'18" W.
21. 27°11'53" N. 79°34'56" W.
22. 27°05'58" N. 79°35'19" W.
23. 27°00'27" N. 79°35'17" W.
24. 26°55'15" N. 79°34'39" W.
25. 26°53'57" N. 79°34'27" W.
26. 26°45'45" N. 79°32'41" W.
27. 26°44'29" N. 79°32'33" W.
28. 26°43'39" N. 79°32'20" W.
29. 26°41'11" N. 79°32'01" W.
30. 26°38'12" N. 79°31'33" W.
31. 26°36'29" N. 79°31'07" W.
32. 26°35'20" N. 79°30'50" W.
33. 26°34'50" N. 79°30'46" W.
34. 26°34'10" N. 79°30'38" W.
35. 26°31'11" N. 79°30'15" W.
36. 26°29'04" N. 79°29'52" W.
37. 26°25'30" N. 79°29'58" W.
38. 26°23'28" N. 79°29'55" W.
39. 26°23'20" N. 79°29'54" W.
40. 26°18'56" N. 79°31'55" W.
41. 26°15'25" N. 79°33'17" W.
42. 26°15'12" N. 79°33'23" W.
43. 26°08'08" N. 79°35'53" W.
44. 26°07'46" N. 79°36'09" W.
45. 26°06'58" N. 79°36'35" W.
46. 26°02'51" N. 79°38'22" W.
47. 25°59'29" N. 79°40'03" W.
48. 25°59'15" N. 79°40'08" W.
49. 25°57'47" N. 79°40'38" W.
50. 25°56'17" N. 79°41'06" W.
51. 25°54'03" N. 79°41'38" W.
52. 25°53'23" N. 79°41'46" W.
53. 25°51'53" N. 79°41'59" W.
54. 25°49'32" N. 79°42'16" W.
55. 25°48'23" N. 79°42'23" W.
56. 25°48'19" N. 79°42'24" W.
57. 25°46'25" N. 79°42'44" W.
58. 25°46'15" N. 79°42'45" W.
59. 25°43'39" N. 79°42'59" W.
60. 25°42'30" N. 79°42'48" W.
61. 25°40'36" N. 79°42'27" W.
62. 25°37'23" N. 79°42'27" W.
63. 25°37'07" N. 79°42'27" W.
64. 25°31'02" N. 79°42'12" W.
65. 25°27'58" N. 79°42'11" W.
66. 25°24'03" N. 79°42'12" W.
67. 25°22'20" N. 79°42'20" W.
68. 25°21'22" N. 79°42'20" W.
69. 25°16'51" N. 79°41'24" W.
70. 25°15'56" N. 79°41'31" W.
71. 25°10'38" N. 79°41'31" W.
72. 25°09'50" N. 79°41'36" W.
73. 25°09'02" N. 79°41'45" W.
74. 25°03'53" N. 79°42'30" W.
75. 25°02'58" N. 79°42'57" W.
76. 25°00'28" N. 79°44'06" W.
77. 24°59'01" N. 79°44'49" W.
78. 24°55'26" N. 79°45'58" W.
79. 24°44'16" N. 79°49'25" W.
80. 24°43'02" N. 79°49'39" W.
81. 24°42'34" N. 79°50'51" W.
82. 24°41'45" N. 79°52'58" W.
83. 24°38'30" N. 79°59'59" W.

84. 24°36'25" N. 80°03'52" W.
85. 24°33'16" N. 80°12'44" W.
86. 24°33'03" N. 80°13'22" W.
87. 24°32'11" N. 80°15'17" W.
88. 24°31'25" N. 80°16'56" W.
89. 24°30'55" N. 80°17'48" W.
90. 24°30'12" N. 80°19'22" W.
91. 24°30'04" N. 80°19'45" W.
92. 24°29'36" N. 80°21'06" W.
93. 24°28'16" N. 80°24'36" W.
94. 24°28'04" N. 80°25'11" W.
95. 24°27'21" N. 80°27'21" W.
96. 24°26'28" N. 80°29'31" W.
97. 24°25'05" N. 80°32'23" W.
98. 24°23'28" N. 80°36'10" W.
99. 24°22'31" N. 80°38'57" W.
100. 24°22'05" N. 80°39'52" W.
101. 24°19'29" N. 80°45'22" W.
102. 24°19'14" N. 80°45'48" W.
103. 24°18'36" N. 80°46'50" W.
104. 24°18'33" N. 80°46'55" W.
105. 24°09'49" N. 80°59'48" W.
106. 24°09'06" N. 80°59'52" W.
107. 24°08'56" N. 81°01'08" W.
108. 24°03'28" N. 81°01'52" W.
109. 24°08'24" N. 81°01'58" W.
110. 24°07'06" N. 81°03'07" W.
111. 24°02'18" N. 81°09'06" W.
112. 23°59'58" N. 81°11'16" W.
113. 23°55'30" N. 81°12'55" W.
114. 23°53'50" N. 81°19'44" W.
115. 23°50'50" N. 81°30'00" W.
116. 23°50'00" N. 81°40'00" W.
117. 23°49'03" N. 81°50'00" W.
118. 23°49'03" N. 82°00'12" W.
119. 23°49'40" N. 82°10'00" W.
120. 23°51'12" N. 82°25'00" W.
121. 23°51'12" N. 82°40'00" W.
122. 23°49'40" N. 82°48'54" W.
123. 23°49'30" N. 82°51'12" W.
124. 23°49'22" N. 83°00'00" W.
125. 23°49'50" N. 83°15'00" W.
126. 23°51'20" N. 83°25'50" W.
127. 23°52'25" N. 83°33'02" W.
128. 23°54'02" N. 83°41'36" W.
129. 23°55'45" N. 83°48'12" W.
130. 23°58'36" N. 84°00'00" W.
131. 24°09'35" N. 84°29'28" W.
132. 24°13'18" N. 84°38'40" W.
133. 24°16'39" N. 84°46'08" W.
134. 24°23'28" N. 85°00'00" W.
135. 24°26'35" N. 85°06'20" W.
136. 24°38'55" N. 85°31'55" W.
137. 24°44'15" N. 85°43'12" W.
138. 24°53'55" N. 86°00'00" W.
139. 25°12'25" N. 86°33'12" W.

Between points 139 and 140, the limit of the exclusive economic zone is 200 nautical miles seaward from the baseline from which the territorial sea is measured.

In the central Gulf of Mexico, the limit of the exclusive economic zone is determined by straight lines connecting the following coordinates:[3]

140. 25°41'56.52.88" N. 88°23'05.54" W.

[3] The lines defined by points 140–142 and 143–146 reflect the exchange of Notes Effecting Agreement on the provisional Maritime Boundary with Mexico done on November 24, 1976, TIAS 8805, 29 UST 196. The U.S.-Mexico Maritime Boundary Treaty, signed on May 4, 1978, Senate Executive F, 96th Congress, 1st Sess., defines boundary using the same turning points.

141. 25°46'52.00" N. 90°29'41.00" W.
142. 25°42'13.05" N. 91°05'24.89" W.

Between points 142 and 143, the limit of the exclusive economic zone is 200 nautical miles seaward from the baseline from which the territorial sea is measured.

In the western Gulf of Mexico, the limit of the exclusive economic zone is determined by straight lines connecting the following coordinates:

143. 25°59'48.28" N. 93°26'42.19" W.
144. 26°00'30.00" N. 95°39'26.00" W.
145. 26°00'31.00" N. 96°48'29.00" W.
146. 25°58'30.57" N. 96°55'27.37" W.

From point 146, the limit of United States jurisdiction is the territorial sea boundary with Mexico established by the United States of America and the United Mexican States in Article V(A) and annexes of the Treaty to Resolve Pending Boundary Differences and Maintain the Rio Grande and Colorado River as the International Boundary, signed at Mexico City, November 23, 1970, and entered into force April 18, 1972, TIAS No. 7313, 23 UST 371.

**U.S. Pacific Coast (Washington, Oregon, and California)**

In the area seaward of the Strait of Juan de Fuca, the limit of the exclusive economic zone shall be determined by straight lines connecting the points with the following coordinates:[4]

1. 48°29'37.19" N. 124°43'33.19" W.
2. 48°30'11" N. 124°47'13" W.
3. 48°30'12" N. 124°50'21" W.
4. 48°30'14" N. 124°54'52" W.
5. 48°29'57" N. 124°59'14" W.
6. 48°29'44" N. 125°00'06" W.
7. 48°28'09" N. 125°05'47" W.
8. 48°27'10" N. 125°08'25" W.
9. 48°26'47" N. 125°09'12" W.
10. 48°20'16" N. 125°22'48" W.
11. 48°18'22" N. 125°29'58" W.
12. 48°11'05" N. 125°53'48" W.
13. 47°49'15" N. 126°40'57" W.
14. 47°36'47" N. 127°11'58" W.
15. 47°22'00" N. 127°41'23" W.
16. 47°04'23" N. 128°42'19" W.
17. 46°31'47" N. 129°07'39" W.

Between point 17 and 18, the limit of the exclusive economic zone is 200 nautical miles seaward from the baseline from which the breadth of the territorial sea is measured. In the area off the Southern California coast, the limit of the exclusive economic zone shall be determined by straight lines connecting the following points:[5]

[4] The limit of the U.S. exclusive economic zone from points 1 to 17 adjacent to Canada in the area seaward of the Strait of Juan de Fuca do not correspond to the limits of the Canadian fishery zone as defined in the Canada Gazette of January 1, 1977.

[5] The line defined by points 18 through 21 reflect the Exchange of Notes Effecting Agreement on the Provisional Maritime Boundary with Mexico done on November 24, 1976. The U.S.-Mexico Maritime

[2] The line defined by points 113 through 139 is that line delimited in the maritime boundary treaty signed with Cuba December 16, 1977, Senate Executive H, 96th Cong., 1st Sess. The treaty has been applied provisionally since January 1, 1978.

Case 1:06-cv-00039    Document 1    Filed 12/22/2006    Page 35 of 42

18. 30°32′31.20″ N. 121°51′58.37″ W.
19. 31°07′58.00″ N. 118°36′18.00″ W.
20. 32°37′37.00″ N. 117°49′31.00″ W.
21. 32°35′22.11″ N. 117°27′49.42″ W.

From point 21 to the coast, the limit of United States jurisdiction is the territorial sea boundary with Mexico established by the United States of America and the United Mexican States in Article V(B) and annexes of the Treaty to Resolve Pending Boundary Differences and Maintain the Rio Grande and Colorado River as the International Boundary, signed at Mexico City, November 23, 1970, and entered into force April 18, 1972.

## Alaska

Off the coast of Alaska, in the area of the Beaufort Sea, the limit of exclusive economic zone shall be determined by straight lines, connecting the following coordinates: [6]

1. 69°38′48.88″ N. 140°59′52.7″ W.
2. 69°38′52″ N. 140°59′51″ W.
3. 69°39′37″ N. 140°59′01″ W
4. 69°40′10″ N. 140°58′34″ W.
5. 69°41′30″ N. 140°57′00″ W.
6. 69°46′25″ N. 140°49′45″ W.
7. 69°47′54″ N. 140°47′07″ W.
8. 69°51′40″ N. 140°42′37″ W.
9. 70°09′26″ N. 140°19′22″ W.
10. 70°11′30″ N. 140°18′09″ W.
11. 70°29′07″ N. 140°09′51″ W.
12. 70°29′19″ N. 140°09′45″ W.
13. 70°37′31″ N. 140°02′47″ W.
14. 70°48′25″ N. 139°52′32″ W.
15. 70°58′02″ N. 139°47′16″ W.
16. 71°01′15″ N. 139°44′24″ W.
17. 71°11′58″ N. 139°33′58″ W.
18 71°23′10″ N. 139°21′46″ W.
19. 72°12′18″ N. 138°26′19″ W.
20. 72°46′39″ N. 137°30′02″ W.
21. 72°56′49″ N. 137°34′08″ W.

Between point 21 and point 22, the limit of the exclusive economic zone is 200 nautical miles seaward from the baseline from which the territorial sea is measured. In the Chukchi Sea, Bering Strait, and northern Bering Sea, the limit of the exclusive economic zone shall be determined by straight lines connecting the following coordinates: [7]

22. 72°46′29″ N. 168°58′37″ W.
23. 65°30′00″ N. 168°58′37″ W.
24. 65°19′58″ N. 168°21′38″ W.
25. 65°09′51″ N. 169°44′34″ W.
26. 64°59′41″ N. 170°07′23″ W.

Boundary Treaty, signed on May 4, 1978, defines the boundary using the same turning points.

[6] The limit of the U.S. exclusive economic zone in areas adjacent to Canada in the Beaufort Sea do not correspond to limits of the Canadian fishery zone, as defined in the Canada Gazette of January 1, 1997.

[7] The line defined by points 22–58 and 59–87 is that line delimited in the maritime boundary treaty signed with the former Soviet Union (now applicable to Russia) June 1, 1990, Senate Treaty Doc. 102–22, and applied provisionally pending the exchange of instruments of ratification, by an exchange of notes effective June 15, 1990.

27. 64°49′26″ N. 170°30′06″ W.
28. 64°39′08″ N. 170°52′43″ W.
29. 64°28′46″ N. 171°15′14″ W.
30. 64°18′20″ N. 171°37′40″ W.
31. 64°07′50″ N. 172°00′00″ W.
32. 63°59′27″ N. 172°18′39″ W.
33. 63°51′01″ N. 172°38′13″ W.
34. 63°42′23″ N. 172°55′42″ W.
35. 63°34′01″ N. 173°14′07″ W.
36. 63°25′27″ N. 173°32′27″ W.
37. 63°16′50″ N. 173°50′42″ W.
38. 63°08′11″ N. 174°08′52″ W.
39. 62°59′29″ N. 174°26′58″ W.
40. 62°50′44″ N. 174°44′59″ W.
41. 62°41′56″ N. 175°02′56″ W.
42. 62°33′06″ N. 175°20′48″ W.
43. 62°24′13″ N. 175°38′36″ W.
44. 62°15′17″ N. 175°56′19″ W.
45. 62°06′19″ N. 176°13′59″ W.
46. 61°57′18″ N. 176°31′34″ W.
47. 61°48′14″ N. 176°49′04″ W.
48. 61°39′08″ N. 177°06′31″ W.
49. 61°29′59″ N. 177°23′53″ W.
50. 61°20′47″ N. 177°41′11″ W.
51. 61°11′33″ N. 177°58′26″ W.
52. 61°02′17″ N. 178°15′36″ W.
53. 60°52′57″ N. 178°32′42″ W.
54. 60°43′35″ N. 178°49′45″ W.
55. 60°34′11″ N. 179°06′44″ W.
56. 60°24′44″ N. 179°23′38″ W.
57. 60°15′14″ N. 179°40′30″ W.
58. 60°11′39″ N. 179°46′47″ W.

Between points 58 and 59 the limit of the exclusive economic zone is 200 nautical miles seaward from the baseline from which the territorial sea is measured. In the southern Bering Sea and north Pacific Ocean, the limit of the exclusive economic zone shall be determined the straight lines connecting the following coordinates:

59. 56°16′31″ N. 174°00′10″ E.
60. 56°15′00″ N. 173°56′56″ E.
61. 56°04′34″ N. 173°41′08″ E.
62. 55°55′59″ N. 173°25′22″ E.
63. 55°43′22″ N. 173°09′37″ E.
64. 55°32′42″ N. 172°53′55″ E.
65. 55°21′59″ N. 172°38′14″ E.
66. 55°11′14″ N. 172°22′36″ E.
67. 55°00′26″ N. 172°06′59″ E.
68. 54°49′36″ N. 171°51′24″ E.
69. 54°38′43″ N. 171°35′51″ E.
70. 54°27′48″ N. 171°20′20″ E.
71. 54°16′50″ N. 171°04′50″ E.
72. 54°05′50″ N. 170°49′22″ E.
73. 53°54′47″ N. 170°33′56″ E.
74. 53°43′42″ N. 170°18′31″ E.
75. 53°32′46″ N. 170°05′29″ E.
76. 53°21′48″ N. 169°52′32″ E.
77. 53°10′49″ N. 189°39′40″ E.
78. 52°59′48″ N. 189°26′53″ E.
79. 52°48′46″ N. 189°14′12″ E.
80. 52°43′43″ N. 169°01′36″ E.
81. 52°26′38″ N. 168°49′05″ E.
82. 52°15′31″ N. 168°36′39″ E.
83. 52°04′23″ N. 168°24′17″ E.
84. 51°53′14″ N. 168°12′01″ E.
85. 51°42′03″ N. 167°59′49″ E.
86. 51°30′51″ N. 167°47′42″ E.
87. 51°22′15″ N. 167°38′28″ E.

From point 87 to point 88, the limit of the exclusive economic zone is 200 nautical miles from the baseline from which the territorial sea is measured.

From point 88, the southern limit of the exclusive economic zone off the coast of Alaska shall be determined by straight lines connecting the following coordinates: [8]

88. 53°28′27″ N. 138°45′20″ W.
89. 54°00′01″ N. 135°45′57″ W.
90. 54°07′30″ N. 134°56′24″ W.
91. 54°12′45″ N. 134°25′03″ W.
92. 54°12′57″ N. 134°23′47″ W.
93. 54°15′40″ N. 134°10′49″ W.
94. 54°20′33″ N. 133°49′21″ W.
95. 54°22′01″ N. 133°44′24″ W.
96. 54°30′06″ N. 133°16′58″ W.
97. 54°31′02″ N. 133°14′00″ W.
98. 54°30′42″ N. 133°11′28″ W.
99. 54°30′10″ N. 133°07′43″ W.
100. 54°30′03″ N. 133°07′00″ W.
101. 54°28′32″ N. 132°56′28″ W.
102. 54°28′25″ N. 132°55′54″ W.
103. 54°27′23″ N. 132°50′42″ W.
104. 54°27′07″ N. 132°49′35″ W.
105. 54°26′00″ N. 132°44′12″ W.
106. 54°24′54″ N. 132°39′46″ W.
107. 54°24′34″ N. 132°38′16″ W.
108. 54°24′39″ N. 132°26′51″ W.
109. 54°24′41″ N. 132°24′35″ W.
110. 54°24′41″ N. 132°24′29″ W.
111. 54°24′52″ N. 132°23′39″ W.
112. 54°21′51″ N. 132°02′54″ W.
113. 54°26′41″ N. 131°49′28″ W.
114. 54°28′18″ N. 131°45′20″ W.
115. 54°30′32″ N. 131°38′01″ W.
116. 54°29′53″ N. 131°33′48″ W.
117. 54°36′53″ N. 131°19′22″ W.
118. 54°39′09″ N. 131°16′17″ W.
119. 54°40′52″ N. 131°13′54″ W.
120. 54°42′11″ N. 131°13′00″ W.
121. 54°46′16″ N. 131°04′43″ W.
122. 54°45′39″ N. 131°03′06″ W.
123. 54°44′12″ N. 130°59′44″ W.
124. 54°43′46″ N. 130°58′55″ W.
125. 54°43′00″ N. 130°57′41″ W.
126. 54°42′34″ N. 130°57′09″ W.
127. 54°42′27″ N. 130°56′18″ W.
128. 54°41′26″ N. 130°53′39″ W.
129. 54°41′21″ N. 130°53′18″ W.
130. 54°41′05″ N. 130°49′17″ W.
131. 54°41′08″ N. 130°48′31″ W.
132. 54°40′46″ N. 130°45′51″ W.
133. 54°40′41″ N. 130°44′59″ W.
134. 54°40′42″ N. 130°44′43″ W.
135. 54°40′03″ N. 130°42′22″ W.
136. 54°39′48″ N. 130°41′35″ W.
137. 54°39′14″ N. 130°39′18″ W.
138. 54°39′54″ N. 130°38′58″ W.
139. 54°41′09″ N. 130°38′58″ W.
140. 54°42′22″ N. 130°38′26″ W.
141. 54°42′47″ N. 130°38′06″ W.
142. 54°42′58″ N. 130°37′57″ W.
143. 54°43′00″ N. 130°37′55″ W.
144. 54°43′15″ N. 130°37′44″ W.
145. 54°43′24″ N. 130°37′39″ W.

[8] The limit of the U.S. exclusive economic zone in, and seaward of, the Dixon Entrance do not correspond to the limits of the Canadian fishery zone, as defined in the Canada Gazette of January 1, 1977. Where the claimed boundaries published by the United States and Canada leave an unclaimed area within Dixon Entrance, the United States will exercise fishery management jurisdiction to the Canadian claimed line where that line is situated southward of the United States claimed line, until such time as a permanent maritime boundary with Canada is established in the Dixon Entrance.

Case 1:06-cv-00039    Document 1    Filed 12/22/2006    Page 36 of 42

146. 54°43'30.15" N. 130°37'37.01" W.

## Caribbean Sea

The seaward limit of the exclusive economic zone around the Commonwealth of Puerto Rico and the Virgin Islands of the United States is a line 200 nautical miles from the baseline from which the breadth of the territorial sea is measured, except that to the east, south, and west, the limit of the exclusive economic zone shall be determined by straight lines connecting the following coordinates: [9]

1. 21°48'33" N. 65°50'31" W.
2. 21°41'20" N. 65°49'13" W.
3. 20°58'05" N. 65°40'30" W.
4. 20°46'56" N. 65°38'14" W.
5. 19°57'29" N. 65°27'21" W.
6. 19°37'29" N. 65°20'57" W.
7. 19°12'25" N. 65°06'08" W.
8. 18°45'14" N. 65°00'22" W.
9. 18°41'14" N. 64°59'33" W.
10. 18°29'22" N. 64°53'50" W.
11. 18°27'36" N. 64°53'22" W.
12. 18°25'22" N. 64°52'39" W.
13. 18°24'31" N. 64°52'19" W.
14. 18°23'51" N. 64°51'50" W.
15. 18°23'43" N. 64°51'23" W.
16. 18°23'37" N. 64°50'18" W.
17. 18°23'48" N. 64°49'42" W.
18. 18°24'11" N. 64°49'01" W.
19. 18°24'29" N. 64°47'57" W.
20. 18°24'18" N. 64°47'00" W.
21. 18°23'14" N. 64°46'37" W.
22. 18°22'38" N. 64°45'21" W.
23. 18°22'40" N. 64°44'42" W.
24. 18°22'42" N. 64°44'36" W.
25. 18°22'37" N. 64°44'24" W.
26. 18°22'40" N. 64°43'42" W.
27. 18°22'30" N. 64°43'36" W.
28. 18°22'25" N. 64°42'58" W.
29. 18°22'27" N. 64°42'28" W.
30. 18°22'16" N. 64°42'03" W.
31. 18°22'23" N. 64°40'59" W.
32. 18°21'58" N. 64°40'15" W.
33. 18°21'51" N. 64°38'22" W.
34. 18°21'22" N. 64°38'16" W.
35. 18°20'39" N. 64°38'13" W.
36. 18°19'16" N. 64°38'13" W.
37. 18°19'07" N. 64°38'16" W.
38. 18°17'24" N. 64°39'37" W.
39. 18°16'43" N. 64°39'41" W.
40. 18°11'34" N. 64°38'58" W.
41. 18°03'03" N. 64°38'03" W.
42. 18°02'57" N. 64°29'35" W.
43. 18°02'52" N. 64°27'03" W.
44. 18°02'30" N. 64°21'08" W.

45. 18°02'31" N. 64°20'08" W.
46. 18°02'01" N. 64°15'39" W.
47. 18°00'12" N. 64°02'29" W.
48. 17°59'58" N. 64°01'02" W.
49. 17°58'47" N. 63°57'00" W.
50. 17°57'51" N. 63°53'53" W.
51. 17°56'37" N. 63°53'20" W.
52. 17°39'48" N. 63°54'54" W.
53. 17°37'15" N. 63°55'11" W.
54. 17°30'28" N. 63°55'57" W.
55. 17°11'43" N. 63°58'40" W.
56. 17°05'07" N. 63°58'42" W.
57. 16°44'49" N. 64°01'08" W.
58. 16°43'22" N. 64°06'31" W.
59. 16°43'10" N. 64°06'59" W.
60. 16°42'40" N. 64°08'06" W.
61. 16°41'43" N. 64°10'07" W.
62. 16°35'19" N. 64°23'39" W.
63. 16°23'30" N. 64°45'54" W.
64. 15°39'31" N. 65°58'41" W.
65. 15°30'10" N. 66°07'09" W.
66. 15°14'06" N. 66°19'57" W.
67. 14°55'48" N. 66°34'30" W.
68. 14°56'06" N. 66°51'40" W.
69. 14°58'27" N. 67°04'19" W.
70. 14°58'45" N. 67°05'17" W.
71. 14°58'58" N. 67°06'11" W.
72. 14°59'10" N. 67°07'00" W.
73. 15°02'32" N. 67°23'40" W.
74. 15°05'07" N. 67°36'23" W.
75. 15°10'38" N. 68°03'46" W.
76. 15°11'06" N. 68°09'31" W.
77. 15°12'33" N. 68°27'32" W.
78. 15°12'57" N. 68°28'56" W.
79. 15°46'46" N. 68°26'04" W.
80. 17°21'30" N. 68°17'53" W.
81. 17°38'01" N. 68°16'46" W.
82. 17°50'24" N. 68°16'11" W.
83. 17°58'07" N. 68°15'52" W.
84. 18°02'28" N. 68°15'40" W.
85. 18°06'10" N. 68°15'27" W.
86. 18°07'27" N. 68°15'33" W.
87. 18°09'12" N. 68°14'53" W.
88. 18°17'06" N. 68°11'28" W.
89. 18°19'20" N. 68°09'42" W.
90. 18°22'42" N. 68°06'57" W.
91. 18°24'39" N. 68°04'58" W.
92. 18°25'25" N. 68°04'09" W.
93. 18°28'08" N. 68°03'39" W.
94. 18°31'27" N. 67°56'57" W.
95. 18°32'59" N. 67°55'07" W.
96. 18°34'34" N. 67°52'53" W.
97. 16°54'37" N. 67°46'21" W.
98. 19°00'42" N. 67°44'25" W.
99. 19°10'00" N. 67°41'24" W.
100. 19°19'03" N. 67°38'19" W.
101. 19°21'20" N. 67°38'01" W.
102. 19°59'45" N. 67°31'52" W.
103. 20°00'59" N. 67°31'35" W.
104. 20°01'17" N. 67°31'29" W.
105. 20°02'49" N. 67°31'04" W.
106. 20°03'30" N. 67°30'52" W.
107. 20°09'28" N. 67°29'11" W.
108. 20°48'18" N. 67°17'50" W.
109. 21°22'48" N. 67°02'34" W.
110. 21°30'18" N. 66°59'05" W.
111. 21°33'47" N. 66°57'30" W.
112. 21°51'24" N. 66°49'30" W.

## Navassa Island. 

The limits of the exclusive economic zone around Navassa Island remain to be determined.

## Central and Western Pacific

**Northern Mariana Islands and Guam.** The seaward limit of the exclusive

economic zone is 200 nautical miles from the baseline from which the breadth of the territorial sea is measured, except that to the north of the Northern Mariana Islands, the limit of the exclusive economic zone shall be determined by straight lines connecting the following points [10]

1. 23°53'35" N. 145°05'46" E.
2. 23°44'32" N. 144°54'05" E.
3. 23°33'52" N. 144°40'23" E.
4. 23°16'11" N. 144°17'47" E.
5. 22°50'13" N. 143°44'57" E.
6. 22°18'13" N. 143°05'02" E.
7. 21°53'58" N. 142°35'03" E.
8. 21°42'14" N. 142°20'39" E.
9. 21°40'08" N. 142°18'05" E.
10. 21°28'21" N. 142°03'45" E.
11. 20°58'24" N. 141°27'33" E.
12. 20°52'51" N. 141°20'54" E.

and, except that to the south of Guam, the limit of the exclusive economic zone shall be determined by straight lines connecting the following points:

13. 11°38'25" N. 147°44'42" E.
14. 11°36'53" N. 147°31'03" E.
15. 11°31'48" N. 146°55'19" E.
16. 11°27'15" N. 146°25'34" E.
17. 11°22'13" N. 145°52'36" E.
18. 11°17'31" N. 145°22'38" E.
19. 11°13'32" N. 144°57'26" E.
20. 11°13'23" N. 144°56'29" E.
21. 10°57'03" N. 143°28'53" E.
22. 10°57'30" N. 143°03'09" E.
23. 11°52'33" N. 142°15'28" E.
24. 12°54'00" N. 141°21'48" E.
25. 12°54'17" N. 141°21'33" E.
26. 12°57'34" N. 141°19'17" E.
27. 13°06'32" N. 141°12'53" E.

**Hawaii and Midway Island.** The seaward limit of the exclusive economic zone is 200 nautical miles from the baselines from which the territorial sea is measured.

**Johnston Atoll.** The seaward limit of the exclusive economic zone is 200 nautical miles from the baselines from which the territorial sea is measured.

**American Samoa.** The seaward limit of the exclusive economic zone shall be determined by straight lines connecting the following points [11]:

1. 11°02'17" S. 173°44'48" W.

[9] The line defined by points 1–50 is that line delimited in the maritime boundary treaty signed with the United Kingdom (for the British Virgin Islands) at London on November 4, 1993, Senate Treaty Doc. 103–23, and entered into force on June 1, 1995. The line defined by points 50–51 is that line delimited in the maritime boundary treaty signed with the United Kingdom (for Anguilla) at London on November 4, 1993, Senate Treaty Doc. 103–23, and entered into force June 1, 1995. The line from point 1 to point 51 is on the North American Datum 1983 (NAD 83). The line defined by points 57–78 is that line delimited in the maritime boundary treaty signed with Venezuela at Caracas on March 28, 1978; the treaty entered into force on November 24, 1980, TIAS 9890, 32 UST 3100.

[10] The line defined by points 1–12 constitutes the line of delimitation between the maritime zones of the United States and Japan as reflected in an Exchange of Notes effective July 5, 1994. Points 1–12 are on the World Geodetic System 1984 (WGS 84). In this regard, users should be aware that the Government of Japan defines points 1–12 on the Tokyo Datum and the coordinate values will differ slightly from those published in this Notice.

[11] The line defined by points 1–8 is that line delimited in the maritime boundary treaty with New Zealand (for Tokelau) signed at Atafu on December 2, 1980; this treaty entered into force on September 3, 1983, TIAS 10775. The line defined by points 8–32 is that line delimited in the maritime boundary treaty with the Cook Islands signed at Rarotonga on June 11, 1980; this treaty entered into force on September 8, 1983, TIAS 10774. Points 1–32 are on the World Geodetic System 1972 (WGS 72).

2. 10°46′15″ S. 173°03′53″ W.
3. 10°25′26″ S. 172°11′01″ W.
4. 10°17′50″ S. 171°50′58″ W.
5. 10°15′17″ S. 171°15′32″ W.
6. 10°10′18″ S. 170°16′10″ W.
7. 10°07′52″ S. 169°46′50″ W.
8. 10°01′26″ S. 168°31′25″ W.
9. 10°12′44″ S. 168°31′02″ W.
10. 10°12′49″ S. 168°31′02″ W.
11. 10°52′31″ S. 168°29′42″ W.
12. 11°02′40″ S. 168°29′21″ W.
13. 11°43′53″ S. 168°27′58″ W.
14. 12°01′55″ S. 168°10′24″ W.
15. 12°28′40″ S. 167°25′20″ W.
16. 12°41′22″ S. 167°11′01″ W.
17. 12°57′51″ S. 166°52′21″ W.
18. 13°11′25″ S. 166°37′02″ W.
19. 13°14′03″ S. 166°34′03″ W.
20. 13°21′25″ S. 166°25′42″ W.
21. 13°35′44″ S. 166°09′19″ W.
22. 13°44′56″ S. 165°58′44″ W.
23. 14°03′30″ S. 165°37′20″ W.
24. 15°00′09″ S. 165°22′07″ W.
25. 15°14′04″ S. 165°18′39″ W.
26. 15°38′47″ S. 165°12′03″ W.
27. 15°44′58″ S. 165°16′36″ W.
28. 16°08′42″ S. 165°34′12″ W.
29. 16°18′30″ S. 165°41′29″ W.
30. 16°23′29″ S. 165°45′11″ W.
31. 16°45′30″ S. 166°01′39″ W.
32. 17°33′28″ S. 166°38′35″ W.
33. 17°31′45″ S. 166°42′07″ W.
34. 16°56′20″ S. 168°26′05″ W.
35. 16°37′55″ S. 169°18′19″ W.
36. 16°37′36″ S. 169°19′12″ W.
37. 16°34′58″ S. 169°55′59″ W.
38. 16°39′17″ S. 170°19′09″ W.
39. 16°48′46″ S. 171°12′29″ W.
40. 16°49′33″ S. 171°17′03″ W.
41. 16°13′29″ S. 171°37′41″ W.
42. 16°04′47″ S. 171°42′37″ W.
43. 15°58′20″ S. 171°46′06″ W.
44. 15°50′48″ S. 171°50′23″ W.
45. 15°50′12″ S. 171°50′44″ W.
46. 15°14′19″ S. 171°37′37″ W.
47. 15°01′58″ S. 171°31′37″ W.
48. 14°46′48″ S. 171°24′21″ W.
49. 14°22′07″ S. 171°14′46″ W.
50. 14°06′18″ S. 171°04′48″ W.
51. 14°03′28″ S. 171°03′06″ W.
52. 14°03′27″ S. 171°03′05″ W.
53. 14°03′05″ S. 171°02′53″ W.
54. 13°56′54″ S. 170°59′34″ W.
55. 13°54′30″ S. 170°58′20″ W.
56. 13°53′43″ S. 170°57′57″ W.
57. 13°50′40″ S. 170°56′24″ W.
58. 13°13′56″ S. 170°44′20″ W.
59. 13°09′05″ S. 170°42′39″ W.
60. 12°36′18″ S. 170°30′44″ W.
61. 12°36′11″ S. 170°31′35″ W.
62. 12°35′21″ S. 170°36′26″ W.
63. 12°29′47″ S. 171°08′24″ W.
64. 12°27′27″ S. 171°17′25″ W.
65. 12°23′34″ S. 171°25′18″ W.
66. 12°17′36″ S. 171°37′14″ W.
67. 12°14′01″ S. 171°44′25″ W.
68. 12°13′49″ S. 171°44′47″ W.
69. 12°05′27″ S. 172°00′55″ W.
70. 11°54′06″ S. 172°22′53″ W.
71. 11°53′57″ S. 172°23′09″ W.
72. 11°40′49″ S. 172°48′17″ W.
73. 11°26′56″ S. 173°08′46″ W.
74. 11°22′08″ S. 173°15′50″ W.
75. 11°02′28″ S. 173°44′37″ W.
76. 11°02′17″ S. 173°44′48″ W.

Palmyra Atoll-Kingman Reef. The seaward limit of the exclusive economic zone is 200 nautical miles from the baseline from which the territorial sea is measured, except that to the southeast of Palmyra Atoll and Kingman Reef the limit of the exclusive economic zone shall be determined by straight lines connecting the following points:

1. 7°55′04″ N. 159°22′29″ W.
2. 7°31′05″ N. 159°39′30″ W.
3. 7°09′43″ N. 159°54′35″ W.
4. 6°33′40″ N. 160°19′51″ W.
5. 6°31′37″ N. 160°21′18″ W.
6. 6°25′31″ N. 160°25′40″ W.
7. 6°03′05″ N. 160°41′42″ W.
8. 5°44′12″ N. 160°55′13″ W.
9. 4°57′25″ N. 161°28′19″ W.
10. 4°44′38″ N. 161°37′18″ W.
11. 3°54′25″ N. 162°12′56″ W.
12. 2°39′50″ N. 163°05′14″ W.

Wake Island. The seaward limit of the exclusive economic zone is 200 nautical miles from the baseline from which the territorial sea is measured, except that to the south of Wake Island the limit of the exclusive economic zone shall be determined by straight lines connecting the following points:

1. 17°56′15″ N. 169°54′00″ E.
2. 17°46′02″ N. 169°31′18″ E.
3. 17°37′47″ N. 169°12′53″ E.
4. 17°11′18″ N. 168°13′30″ E.
5. 16°41′31″ N. 167°07′39″ E.
6. 16°02′45″ N. 165°43′30″ E.

Jarvis Island. The seaward limit of the exclusive economic zone is 200 nautical miles from the baseline from which the territorial sea is measured, except that to the north and east of Jarvis Island, the limit of the exclusive economic zone shall be determined by straight lines connecting the following points:

1. 2°01′00″ N. 162°22′00″ W.
2. 2°01′42″ N. 162°01′35″ W.
3. 2°03′20″ N. 161°41′33″ W.
4. 2°02′30″ N. 161°36′20″ W.
5. 2°00′13″ N. 161°22′24″ W.
6. 1°50′18″ N. 160°20′42″ W.
7. 1°45′46″ N. 159°52′59″ W.
8. 1°43′31″ N. 159°39′27″ W.
9. 0°58′53″ N. 158°59′04″ W.
10. 0°46′53″ N. 158°48′24″ W.
11. 0°12′36″ N. 158°18′06″ W.
12. 0°00′17″ N. 158°07′27″ W.
13. 0°24′23″ S. 157°49′44″ W.
14. 0°25′44″ S. 157°48′43″ W.
15. 0°58′15″ S. 157°24′52″ W.
16. 2°13′26″ S. 157°49′01″ W.
17. 3°10′40″ S. 158°10′30″ W.

Howland and Baker Islands. The seaward limit of the exclusive economic zone is a line 200 nautical miles from the baseline from which the territorial sea is measured, except to the southeast and south of Howland and Baker Islands the limit of the exclusive economic zone shall be determined by straight lines connecting the following points:

1. 0°14′30″ N. 173°08′00″ W.

2. 0°14′32″ S. 173°27′28″ W.
3. 0°43′52″ S. 173°45′30″ W.
4. 1°04′06″ S. 174°17′41″ W.
5. 1°12′39″ S. 174°31′02″ W.
6. 1°14′52″ S. 174°34′48″ W.
7. 1°52′36″ S. 175°34′51″ W.
8. 1°59′17″ S. 175°45′29″ W.
9. 2°17′09″ S. 176°13′58″ W.
10. 2°32′51″ S. 176°38′59″ W.
11. 2°40′26″ S. 176°51′03″ W.
12. 2°44′49″ S. 176°58′01″ W.
13. 2°44′53″ S. 176°58′08″ W.
14. 2°56′33″ S. 177°16′43″ W.
15. 2°58′45″ S. 177°26′00″ W.

Dated: August 10, 1995.

**David A. Colson,**

*Deputy Assistant Secretary for Oceans*

[FR Doc. 95–20794 Filed 8–22–95; 8:45 am]

BILLING CODE 4710–09–M

## DEPARTMENT OF STATE IN CONJUNCTION WITH DEPARTMENT OF THE INTERIOR

[Public Notice 2243]

### Participation in Working Group To Elaborate a U.N. Declaration on Indigenous Rights

The Economic and Social Council (ECOSOC) of the United Nations has approved establishment of an open-ended, inter-sessional working group of the Commission on Human Rights to elaborate a draft declaration on indigenous rights. The goal of the Working Group is to prepare a declaration for consideration and adoption by the General Assembly during the International Decade of the World's Indigenous People (1994–2004). [The Working Group will consider the draft prepared by the independent experts who comprise the Working Group on Indigenous Populations, which is entitled "United Nations draft declaration on the rights of indigenous peoples."]

ECOSOC also approved adoption of a special procedure to authorize participation in the Working Group by organizations of indigenous people, including tribal governments, not in consultative status with ECOSOC. Interested organizations should apply to the Coordinator of the International Decade at the following address: The Honorable Ibrahima Fall, Assistant Secretary General for Human Rights, Human Rights Center, Office of the United Nations in Geneva, Palais des Nations, 8–14 Avenue de la Paix, 1211 Geneva, Switzerland.

Applications must include the following information about the organization concerned:

(a) The name, headquarters or seat, address and contact person for the organization;



REPUBLIC OF THE MARSHALL ISLANDS
MINISTRY OF FOREIGN AFFAIRS
PO BOX 1349
MAJURO, MARSHALL ISLANDS 96960

US/46-06

The Ministry of Foreign Affairs of the Republic of the Marshall Islands presents its compliments to the Embassy of the United States of America and refers to the recent arrest and imprisonment of Captain Wen Yueh Lu, former Captain of the F/V MARSHALLS 201, by the United States.

Captain Lu was formerly the Captain of the F/V MARSHALLS 201, which is a fishing vessel registered in the Republic of the Marshall Islands, owned and operated by the Marshall Islands Fishing Company (MIFCO), a joint venture between Koo's Fishing Company and the Marshall Islands Marine Resources Authority (MIMRA). On December 9, 2006, Captain Lu was arrested by the United States for allegedly failing to heave to as directed by the United States Coast Guard on September 9, 2006. This alleged failure to heave to occurred in an area of the Pacific Ocean that straddles the Exclusive Economic Zones (EEZ) of the Republic of Kiribati and the United States. In this respect, we understand that there is no agreement between the Republic of Kiribati and the United States establishing the EEZ boundary in the area where Captain Lu allegedly failed to heave to, and that such boundary is presently based on a unilateral determination by the United States by way of a United States Government regulation.

As part of the same incident for which Captain Lu has been arrested, the F/V MARSHALLS 201 was arrested by the United States Coast Guard on September 9, 2006, for alleged unlawful fishing in the United States EEZ and was escorted to Guam. When the F/V MARSHALLS 201 was arrested, there were 6 Marshallese crew members on board. After the F/V MARSHALLS 201 arrived in Guam, Captain Lu remained with the vessel in Guam until October 13, 2006, when the U.S. Attorney allowed Captain Lu to return to his home country of Taiwan. During the entire time Captain Lu was in Guam, and until December 8, 2006, Captain Lu was not charged with violating any law and there was never any indication that the United States intended to charge Captain Lu for failing to heave to. Captain Lu only returned to Guam to cooperate in the civil case pending against the F/V MARSHALLS 201 by giving deposition testimony on December 7 and 8. Only after Captain Lu completed his deposition testimony did the United States arrest, charge and imprison him. The United States position to arrest and imprison Captain Lu, and ordering his confinement to Guam to await criminal trial in the Federal Court for Guam, is a wholly erroneous and improvident exercise of the sovereign's police power and is contrary to customary international law.

Phone: (692) 625-3181/3012 Fax: (692) 625-3079 Email: mofapol@ntamar.net RMI Website: http://www.rmiembassyus.org/

EXHIBIT "5"

Principles of customary international law dictate that Captain Lu be released immediately upon the posting of a reasonable bond. The Republic of the Marshall Islands (RMI), along with 151 other nations, has ratified the United Nations Law of the Sea Convention (LOS Convention). Although the United States has not ratified the LOS Convention, by virtue of the President of the United States' submission of the LOS Convention to the United States Senate for ratification, the United States has expressed its intent to be bound by the LOS Convention and, pursuant to Article 18 of the Vienna Convention on the Law of Treaties, the United States is therefore bound by the rules of the LOS Convention. The LOS Convention provides that when a Coastal State arrests a vessel or crew for violation of that State's fisheries laws, the vessel and crew shall be released upon the posting of a reasonable bond. The LOS Convention further prohibits a Coastal State from imprisoning or imposing any other form of corporal punishment for violation of a Coastal State's fisheries laws unless the flag state of the vessel has consented to such sanction. RMI has not consented to any such sanction. Under these provisions, Captain Lu must be released as soon as a reasonable bond is posted.

In addition, fisheries and maritime resources are one of the few activities that the RMI has available to develop its private sector. The RMI has undertaken a program to maximize economic activity in this crucial sector by encouraging the establishment of locally based fishing vessels which off-load their catch in Majuro for packaging, processing, and shipment of seafood products. These activities also result in spin-off activities such as sales of fuel and provisions.

Presently, the marine resources and fisheries industry in the RMI employs over 300 people, most of which are Marshallese. Koo's Fishing and MIFCO employ approximately 87 Marshallese citizens. Employment of Marshallese in the fishing industry is the fastest growing source of employment for Marshallese citizens in the private sector of the RMI. Without these jobs, Marshallese citizens may need to seek government employment or even migrate to the United States.

The mutual desire of our Governments is to promote private sector development in the RMI under the Compact, as amended, as expressed in the statement made by the Chairman at the most recent JEMFAC meeting on August 30, 2006. In this instance, however, actions taken by the United States Government with respect to Captain Lu directly contravene these mutual objectives. These actions by the United States are frustrating our efforts to develop the private sector of the RMI by insisting on the imposition of criminal measures against Captain Lu personally that will significantly reduce the economic viability of the business for MIFCO as well as its ability to attract and retain qualified Captains to engage in such business. Without qualified Captains, Marshallese will not be able to crew MIFCO fishing vessels and thereby be gainfully employed while also furthering RMI's development of our private sector.

The Ministry therefore requests that the United States act to resolve this matter as quickly as possible by providing for the immediate release of Captain Lu upon the posting of a reasonable bond.

The Ministry of Foreign Affairs of the Republic of the Marshall Islands avails itself of this opportunity to renew to the Embassy of the United States of America the assurances of its highest consideration.



Embassy of the United States of America
Majuro, Marshall Islands
13 December 2006