# ORIGINAL

**FILED**
DISTRICT COURT OF GUAM

DEC 29 2006

MARY L.M. MORAN
CLERK OF COURT

1 LEONARDO M. RAPADAS
  United States Attorney
2 KARON V. JOHNSON
  Assistant U.S. Attorney
3 Suite 500, Sirena Plaza
  108 Hernan Cortez Avenue
4 Agana, Guam 96910
  Telephone: (671) 472-7332/7283
5 Telecopier: (671) 472-7334

6 Attorneys for United States of America

7

## IN THE UNITED STATES DISTRICT COURT

8

## FOR THE TERRITORY OF GUAM

9

10 UNITED STATES OF AMERICA,                )    ~~MAGISTRATE CASE NO.  06-0031~~
                                           )    CIVIL CASE NO.  06-00039
11                    Plaintiff,            )
                                           )    **UNITED STATES MOTION FOR**
12          vs.                            )    **DISQUALIFICATION OF DANIEL**
                                           )    **J. BERMAN AND TO VACATE**
13 WEN YUEH LU,                            )    **ORDER SETTING BRIEFING AND**
                                           )    **AND HEARING DATES**
14                    Defendant.           )
                                           )

15

16          COMES NOW THE United State of America, by and through undersigned counsel, and

17 moves this Honorable Court for an Order disqualifying Daniel J. Berman, and the law firm of

18 Berman O'Connor & Mann, from representing and participating in representation of defendant

19 Wen Yueh Lu in Civil Case 06-00039 and in the criminal case pending against Lu, Magistrate

20 Case No. 06-00031. In addition, the United States moves that this Honorable Court vacate its

21 Order entered December 28, 2006, for the United States to respond to Lu's Habeas Corpus

22 motion, until the question of representation has been resolved. In support of this Motion, the

23 government states as follows:

24          On October 4, 2006, the United States filed a Complaint for the forfeiture of the Fishing

25 Vessel Marshalls 201, Civil Case No. 06-00030, which complaint and accompanying documents

26 are attached hereto as Exhibit 1. As the Affidavit of Special Agent John Barylsky, with the U.S.

27

28                                              -1-

1 Department of Commerce, National Oceanic and Atmospheric Administration (NOAA) sets
2 forth at page 6, defendant Lu was the master of this vessel at the time it was seized by the United
3 States Coast Guard and brought to Guam. The United States is seeking forfeiture of the
4 Marshalls 201 for violations of the Magnuson Fishery Conservation and Management Act, 16
5 U.S.C. § 1801 *et seq.* This civil case is being defended by Daniel J. Berman and James P. Walsh
6 of San Francisco (Exhibit 2, pages i-iv.)

7 On December 8, 2006, Wen Yueh Lu was charged with one of the criminal provisions of
8 that Act, for failing to allow U.S. Coast Guard officials to board, in violation of Title 16, U.S.C.
9 § 1857(1)(D). Trial on that matter is presently set for February 2, 2007. Lu made his initial
10 appearance in that matter on December 9, 2006, with Daniel Berman appearing as his counsel.
11 In a subsequent bail hearing, December 13, 2006, attorney Mark S. Smith appeared with Mr.
12 Berman, and announced that he appearing "on behalf of "Lu "with Daniel Berman." The Berman
13 firm did not withdraw as counsel on this case. Mr. Smith entered a notice of appearance as
14 counsel, reflecting only that he was appearing "as co-counsel" for Lu (Exhibit 3). Thus, as
15 matters now stand, Daniel Berman is representing both the Marshalls 201 fishing vessel and the
16 master of the vessel, Wen Yueh Lu, on cases arising from the same incident.

17 On December 21, 2006, Mr. Smith wrote this office, inquiring into the possibility of Lu
18 entering into a *nolo contendere* plea (Exhibit 4). By letter dated December 29, this office advised
19 that such pleas are not favored by the United States Attorney General, and that Lu would have to
20 plead guilty to the charge. Discovery and a plea agreement were included as well (Exhibit 5).
21 The present habeas corpus action was filed by Mr. Berman on December 22, 2006.

22 ## MEMORANDUM OF LAW

23 Under the Sixth Amendment, a criminal defendant has the right to be represented by
24 counsel whose loyalties are undivided. Wood v. Georgia, 450 U.S. 261 (1981). Mr. Berman is
25 engaged in a multiple representation of clients which creates an actual conflict of interest. If Lu
26 desired to accept the government's plea agreement, necessarily he would have to admit that he

27

28 -2-

1     was subject to the jurisdiction of the United States Coast Guard at the time he was ordered to

2     heave to and allow boarding. Yet his guilty plea to this element would constitute an admission

3     that the Marshalls 201 was within the Howland-Baker EEZ of the United States, and therefore

4     forfeitable under the Magnuson Act. It is in Lu's interest to accept the government's plea offer,

5     because the government will recommend no further incarceration, a fine within the Guidelines

6     range, and further recommend that he be allowed to leave Guam to find other employment. Such

7     an admission, however, is obviously not in the interest of Mr. Berman's other client, the

8     Marshalls 201. Such an actual conflict constitutes a denial of Lu's Sixth Amendment right to

9     effective assistance of counsel. Glasser v. Kretske, 315 U.S. 60, 76 (1942).

10     The American Bar Association Model Rules of Professional Conduct, 5th Edition, Rule

11     1.7, Conflict of Interest, Current clients is attached hereto as Exhibit 6. The exceptions to

12     representation of clients with concurrent conflicts interest cannot apply to the facts of this case

13     because representation it violates Lu's Sixth Amendment right to independent counsel. This

14     conflict is of such a nature that it cannot be cured by Lu's consent.

15     The ABA Code of Professional Responsibility, DR 5-105 (2001 Ed.) is attached hereto as

16     Exhibit 7. Ethical Code 5-15 is attached hereto as Exhibit 8. A lawyer must decline proffered

17     employment if the exercise of his independent professional judgment in behalf of a client will be

18     or is likely to be adversely affected by the acceptance of such employment, or if it would be

19     likely to involve him in representing differing interests. He may represent multiple clients only if

20     it is "obvious" that he can adequately represent the interest of each.

21     It is irrelevant that the Marshalls 201 is not charged with a criminal violation of the

22     Magnuson Act. For example, in United States v. Schwarz, 283 F.3d 76 (2nd Cir. 2002), counsel

23     represented a police officer charged with brutally assaulting a prisoner, and he also represented

24     the Policeman's Benevolent Association (PBA), which had paid him a $10 million retainer to

25     represent its members. The client police officer, Schwartz, was charged with criminal violations

26     for assaulting the prisoner, but the PBA faced a civil lawsuit for violation of the prisoner's civil

27

28                                        -3-

1    rights. The Second Circuit held that, under the facts of that case, the attorney faced an actual

2    conflict in representing both clients, which could not be waived. "An actual or potential conflict

3    cannot be waived if, in the circumstances of the case, the conflict is of such a serious nature that

4    no rational defendant would knowingly and intelligently desire that attorney's representation."

5    Id. at 95 (citations omitted).

6         As part of the hearing on this motion, the government requests this Honorable Court

7    conduct an inquiry pursuant to FRCrP 44(c) to determine who is paying for Lu's representation

8    and which counsel is controlling the disposition of his case. In United States v. Allen, 831 F.2d

9    1487 (9th Cir. 1987), for example, 17 defendants were arrested for drug trafficking, and the two

10   unindicted "generals" of the ring hired counsel to represent them all. Although nominally

11   independent attorneys were provided for the 17 as well, their fees were paid by the generals and

12   the course of the plea and sentencing bargaining was controlled by counsel for the generals. The

13   court noted this was reminiscent of Wood v. Georgia, 450 U.S. 261 (1981), where the criminal

14   defendant was represented by an attorney hired and paid for by the operator of the criminal

15   enterprise. The Court noted "[o]ne risk is that the lawyer will prevent his client from obtaining

16   leniency by preventing the client from offering testimony against his former employer or from

17   taking other actions contrary to the employer's interest." Id. at 273.

18                                          CONCLUSION

19        Because of the actual and direct conflict between the interests of Wen Yueh Lu and the

20   Marshalls 201, the government requests an order of the Court formally disqualifying Mr. Dan

21   Berman and other members of his firm from representation of Lu and barring him from

22   participation of any kind in that representation.

23                                          LEONARDO M. RAPADAS
                                            United States Attorney
24                                          Districts of Guam and CNMI

25
                              By:
26                                          KARON V. JOHNSON
                                            Assistant U.S. Attorney
27

28                                          -4-

1   LEONARDO M. RAPADAS
    United States Attorney
2   MIKEL W. SCHWAB
    Assistant U.S. Attorney
3   Sirena Plaza, Suite 500
    108 Hernan Cortez Avenue
4   Hagatna, Guam 96910
    Tel: 671-472-7332
5   Fax: 671-472-7215

6   Paul Ortiz
    Senior Attorney
7   Office of General Counsel
    National Oceanic and Atmospheric Administration
8   501 West Ocean Blvd.
    Suite 4470
9   Long Beach, California 90802
    Tel: 562 980 4069

10
11  Attorneys for the United States of America

12          IN THE UNITED STATES DISTRICT COURT

13              FOR THE TERRITORY OF GUAM

14

15  UNITED STATES OF AMERICA,        )   CIVIL CASE NO. 06 - 00030
                                     )
16              Plaintiff,           )
                                     )
17          vs.                      )   **COMPLAINT FOR FORFEITURE;**
                                     )   **AFFIDAVIT OF MIKEL W.**
18  MARSHALLS 201,                   )   **SCHWAB; IN REM WARRANT**
                                     )   **OF ARREST**
19              Defendant.           )
                                     )
20  _____)

21          The United States of America, by and through its attorney, Mikel W. Schwab,

22  Assistant U.S. Attorney for the Districts of Guam and NMI, alleges and states:

23          1. This is a case of admiralty and maritime jurisdiction within the meaning of

24  Rule 9(h), Federal Rules of Civil Procedure, for condemnation and forfeiture of the

25  Defendant Vessel, **Marshalls 201** (hereafter the "Vessel"), including her fishing gear,

26  furniture, appurtenances, stores, cargo, electronic and documentary records, and catch of

27  fish, for violation of provisions of the Magnuson Fishery Conservation and Management

28  Act (MFCMA); specifically, 16 U.S.C. §§ 1824(a), 1857(1)(A), 1857(2)(B), and 1857

1

EXHIBIT

(4)(A) & (B), and the pertinent implementing regulations 50 C.F.R. § 600.505 (a)(7), 600.501 and others.

2. This Court has jurisdiction of this action pursuant to 16 U.S.C. §§ 1860(b) and 1861(d), 28 U.S.C. §§ 1333, 1345, and 1355.

3. The defendant Vessel, a Republic of the Marshall Islands ("RMI") flagged purse seine fishing vessel, is a 70.46 meters long, four deck vessel having a gross weight of 1076 metric tons, and listed in vessel registration documentation as being owned by the Marshall Islands Fishing Company (MIFCO), an RMI based company, established as a result of a Joint Venture agreement between the Marshall Islands Marine Resources Authority and KOO'S Fishing Company (KFC), with KFC as the majority owner. The Vessel's RMI registry number is V7CNY, and the Vessel operates out of the RMI.

4. The United States considers that the EEZ is that area adjacent to the United States which, except where modified to accommodate international boundaries, encompasses all waters from the seaward boundary of each of the coastal states to a line on which each point is 200 nautical miles from the baseline from which the territorial sea of the United States is measured. The United States exercises exclusive jurisdiction under the provisions of 16 U.S.C. §§ 1811 and 1812, and over which this Court has exclusive jurisdiction pursuant to 16 U.S.C. §§ 1861(d) and 1860(b).

5. For the Vessel to be in compliance with the MFCMA while fishing within the EEZ, it must have on board a valid Pacific Insular Area Fishery Agreement permit authorizing such fishing issued by the United States Secretary of Commerce under 16 U.S.C. § 1824.

6. On September 07, 2006, the defendant Vessel was sighted from the air inside

2

the United States EEZ surrounding Howland and Baker Islands, with its fishing gear readily available for fishing in violation of 16 U.S.C. § 1857(4)(A) & (B).

7. On September 09, 2006, the defendant Vessel was sighted and boarded while actively fishing within the United States EEZ surrounding Howland and Baker Islands, which constituted fishing within the meaning of 16 U.S.C. § 1802(15) and 50 C.F.R. § 600.10.

8. The defendant Vessel on or about said date was fishing within the EEZ without a valid, applicable permit issued by the United States in violation of 16 U.S.C. §§ 1821, 1824(a), 1857(2), and 50 C.F.R. § 611.3(a).

9. The defendant Vessel, including its fishing gear, furniture, appurtenances, stores, cargo, electronic and documentary records, and catch of fish will be seized by duly appointed agents of the United States Department of Commerce National Marine Fisheries Service and the United States Coast Guard upon entry into our jurisdiction. The vessel is within the jurisdiction.

10. By reason of its use in the commission of acts prohibited by 16 U.S.C. § 1857 and pertinent regulations thereunder, and under the provisions of 16 U.S.C. § 1860(a), the defendant Vessel, including its fishing gear, furniture, appurtenances, stores, cargo, electronic and documentary records (including plotters, fax machines and other devices), and catch of fish is subject to forfeiture to the United States.

**WHEREFORE,** Plaintiff prays that a Warrant for the Arrest of the defendant Vessel, including its fishing gear, furniture, appurtenances, stores, cargo, electronic and documentary records and catch of fish issue; and that all interested persons be duly cited to answer the premises; and Plaintiff demands judgment condemning and forfeiting the defendant Vessel, including its fishing gear, furniture, appurtenances, stores, cargo,

3

electronic and documentary records (including plotters, fax machines and other devices), and catch of fish, to the United States and for civil fines as specified by law; and for such other and further relief as may be found appropriate.

RESPECTFULLY submitted this **2ND** day of ~~September~~ *October*, 2006.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

BY: _____

MIKEL W. SCHWAB
Assistant U.S. Attorney

LEONARDO M. RAPADAS
United States Attorney
MIKEL W. SCHWAB
Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagatna, Guam 96910
Tel: 671-472-7332
Fax: 671-472-7215

Paul Ortiz
Senior Attorney
Office of General Counsel
National Oceanic and Atmospheric Administration
501 West Ocean Blvd.
Suite 4470
Long Beach, California 90802
Tel: 562-980-4069

Attorneys for the United States of America

RECEIVED
OCT 0 4 2006
BERMAN O'CONNOR
MANN & SHKLOV

**FILED**
DISTRICT COURT OF GUAM
OCT 1 4 2006
MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE

TERRITORY OF GUAM

UNITED STATES OF AMERICA,      )   CIVIL CASE NO. **06 - 00030**
                               )
               Plaintiff,      )
                               )
        vs.                    )   **AFFIDAVIT OF**
                               )   **JOHN BARYLSKY**
MARSHALLS 201,                 )
                               )
               Defendant.      )
———————————————————————————————)

I, John Barylsky, being duly sworn, do hereby depose and state:

## I.    INTRODUCTION

1. I am a Special Agent ("SA") with the U.S. Department of Commerce, National Oceanic and Atmospheric Administration, National Marine Fisheries Service, Office for Law Enforcement ("NOAA OLE"), presently assigned to the Honolulu, HI, Field Office.

1  I have been a SA with NOAA OLE since 1997. Part of my duties consists of
2  investigating violations of United States fisheries laws codified under the Magnuson-
3  Stevens Fishery Conservation and Management Act ("Magnuson-Stevens Act"), and its
4  related regulations, which include prohibitions on foreign fishing vessels fishing in
5  United States fishing waters without a valid permit. Before becoming a NOAA OLE SA,
6  I was a Florida Marine Patrol Officer between the years 1990 and 1997. During this time
7  period, I investigated violations of both State of Florida and Federal Fisheries wildlife
8  regulations. My formal education includes an Associate in Science for Criminal Justice
9  from Daytona Beach Community College.

10
11  **II.**  <u>**PROPERTY TO BE SEIZED**</u>

12      2. This affidavit is made in support of a Complaint for Forfeiture to arrest the
13  foreign fishing vessel **Marshalls 201**, including the vessel's fishing gear, furniture,
14  appurtenances, stores, electronic and documentary records (including plotters, fax
15  machines and other devices), and catch of fish, for violating 16 U.S.C. § 1857(2)(B)
16  (Foreign Fishing Vessel Engaged in Fishing within the United States EEZ without a Valid
17  and Applicable Permit), and 16 U.S.C. 1857 (4)(A)(B) (Foreign Fishing Vessel engaged
18  in fishing within the U.S. EEZ without their fishing gear, stowed, stored, secured or
19  covered, so as to render it unusable for fishing unless authorized to engage in fishing in
20  the area in which the vessel is operating). 16 U.S.C. § 1861(b)(1)(A) states in part that
21  with or without a warrant, a fishing vessel (together with its fishing gear, furniture,
22  appurtenances, stores, and cargo) used or employed in the violation of any provision of
23  this chapter may be seized. Further, Section 1861 also states that other evidence related
24  to any violation of any provision of this chapter may be seized. The **Marshalls 201**, a
25  Republic of the Marshall Islands ("RMI") flagged purse seine fishing vessel, is a 70.46
26  meter long, four deck vessel having a gross weight of 1076 metric tons, and listed in
27  vessel registration documentation as being owned by the Marshall Islands Fishing
28  Company, an RMI based company. The vessel's hull is white in color and the

2

superstructure is white in color, with the vessel name printed on the right and left side of the front area of the vessel. Further, the vessel's international radio call sign of V7CN4 is printed about mid-ship on both sides of the vessel.

III.   **BACKGROUND INFORMATION**

3. Based upon my training and experience as a NOAA OLE SA, and from information obtained from other NOAA personnel, I know the following:

4. The Magnuson-Stevens Act is the United States fishery law that governs the management of living marine resources, which includes fish, in the waters under the jurisdiction of the United States. The ultimate purpose of the Magnuson-Stevens Act is to help insure that the living marine resources, which includes highly migratory fish such as tuna, continue to exist at sustainable levels, while at the same time allowing the resource to continue to be available for harvesting. The Magnuson-Stevens Act attempts to accomplish the goal of a sustainable fishery by regulating the United States fishing industry, and by also regulating the fishing activities that occur in ocean areas where the United States claims sovereign rights.

5. A portion of the ocean area that the United States claims sovereign rights over, for the purpose of exploring, exploiting, conserving, and managing of natural resources, is the exclusive economic zone ("EEZ"). The United States considers that the EEZ is that area adjacent to the United States which, except where modified to accommodate international boundaries, encompasses all waters from the seaward boundary of each of the coastal states to a line on which each point is 200 nautical miles from the baseline from which the territorial sea of the United States is measured. The United States, and other nations, have the rights to control, manage, and use the natural resources, including living marine resources such as fish, within their respective EEZ's. Thus, the United States has jurisdiction to control fishing activities within its EEZ, including the EEZ waters around United States territories and Pacific Insular Possessions of the United States.

3

6. Howland and Baker Islands are small uninhabited islands near the equator, due south of Midway Island, and they are considered Pacific Insular Possessions of the United States. Howland and Baker Islands, which are within 60 nautical miles of each other, provide the United States with an EEZ around the islands. The United States thus has sovereign rights over the fishery resources within the EEZ surrounding Howland and Baker Islands.

7. For a foreign fishing vessel to legally engage in fishing activities within the United States EEZ surrounding Howland and Baker Islands, the foreign fishing vessel would need to have a Pacific Insular Area Fishery Agreement ("PIAFA") permit.

8. According to the Magnuson-Stevens Act, fishing is defined in part as the catching, taking, or harvesting of fish, the attempted catching, taking, or harvesting of fish, and any other activity which can reasonably be expected to result in the catching, taking, or harvesting of fish.

9. There is concern in the government and the fishing industry of the United States and other nations that the stocks of highly migratory fish species, such as tuna, are being depleted below sustainable levels due to over fishing. In an effort to help sustain the fishery, the United States and other countries have entered into numerous fishery treaties, with the intention of regulating the catch of highly migratory fish species. The need for international cooperation is deemed necessary for the fishery to stay viable, due to the fact that there is only so much fish in the ocean to catch, and because highly migratory fish travel freely from one country's EEZ to another country's EEZ. Because many highly migratory fish provide high dollar returns, countries aggressively enforce their fishery laws, and the sovereign rights and exclusive fishery management authority over the highly migratory fish inside their respective EEZ. Thus, the United States considers the highly migratory fish inside its EEZ as an important economic resource.

4

## IV.  SUMMARY OF PROBABLE CAUSE

10.  This affidavit is submitted for the purpose of establishing probable cause to seize the foreign fishing vessel **Marshall 201**, for violating 16 U.S.C. § 1857(2)(B)(Foreign Fishing Vessel Engaged in Fishing within the United States EEZ without a Valid and Applicable Permit) and 16 U.S.C. § 1857(4)(A)&(B) (fishing gear not stowed where it is not readily available for fishing).  This affidavit is intended to show that there is sufficient probable cause for the requested seizure warrant, and does not purport to set forth all my knowledge of the investigation into this matter.  The evidence set forth in this affidavit is based on my personal observations, training, and experience, review of documents, interviews of witnesses, information obtained from other Special Agents and government personnel, and information obtained from other sources as set forth below.

11.  The evidence detailed in this affidavit shows that there is probable cause to believe that, on or about the 7th and the 9th of September, 2006, the foreign fishing vessel **Marshalls 201** engaged in fishing operations in the United States EEZ surrounding Howland and Baker Islands without having their fishing gear properly stowed and secured as observed by SA Honda and members of the USCG C-130 during aerial surveillance operations.

12. The evidence detailed in this affidavit shows that there is probable cause to believe that, on or about the 9th of September, 2006,  the foreign fishing vessel **Marshalls 201** engaged in fishing operations in the United States EEZ surrounding Howland and Baker Islands without having a valid and applicable permit.  The **Marshalls 201** was observed on September 7, 2006, in the U.S. EEZ via aerial surveillance by a USCG C-130 and surface patrol via USCGC Walnut.  Evidence indicates that the master of the **Marshalls 201** was well aware that the vessel was located inside the United States EEZ, and that it was illegal for them to fish inside the EEZ.  Evidence of the master's knowledge resulted from radio communications and attempts to flee the USCGC Walnut.

5

13. Further evidence shows that the principle owner of the **Marshalls 201**, KOO's Fishing Corporation (KFC), had been civilly fined by NOAA for a previous violation when one of their purse seine fishing vessels, the KOO's 103, aka the Niugini 103, illegally fished in the U.S. EEZ surrounding Howland and Baker Islands in August 2000. The KOO'S Fishing Company is also currently under investigation, and prosecution is pending, for a similar alleged violation involving the **KOO'S Fishing Vessel 108** in January of 2004.

## V.   STATEMENT OF PROBABLE CAUSE

### A.  Illegally fishing within the EEZ of Howland and Baker Islands

14. Based on my interviews of USCG witnesses, other NOAA OLE Special Agents, documents provided, and from my own observations, analysis, and knowledge, I know the following to be true:

      a.  The **Marshalls 201**, IRCS V7CN4, is a 70.46 meter purse seiner homeported in Jaliute, Republic of Marshall Islands with a white hull, white superstructure and holds a Federated States of Micronesia (FSM) Regional Fisheries Access License number RA34105-317MH.

      b.  The Master of the vessel is Wen-Yueh LU, age 58, Sex: male, Height 5ft 5in, Weight 140 lbs, Hair: black, Eyes: Brown, Race: Asian, Citizenship Taiwan, Passport #13619946.

      c.  On September 07, 2006, members of the USCG C-130 and NOAA OLE SA Victor Honda observed the **Marshalls 201** fishing inside the U.S. EEZ of Howland and Baker Island without having their fishing gear properly stowed and secured, in violation of Magnuson-Stevens Act. On that date, NOAA OLE SA Victor Honda was deployed aboard a United States Coast Guard C-130 aircraft (CG C-130), tail number 1702. The purpose of this flight was to perform a fisheries patrol in and around the Howland and Baker Islands EEZ. During this patrol, at approximately 00:42 Z, the navigator reported a contact on the radar in the position of 02-29.0S 176-43.0W, on a

6

course of 182 degrees making way at 10 knots. This position is within the Howland and

Baker Islands EEZ. Visual contact was made of this vessel, and it was identified as the

Republic of Marshall Islands (RMI) foreign flagged fishing vessel (FF/V) with the name

"**MARSHALLS 201**" on the hull ( **Marshalls 201**). SA Honda observed the vessel's

boom was lowered and the purse seine net was not covered, in violation of U.S. law. The

vessel was sitting low in the water, indicating the vessel's cargo holds were not empty.

        d.  On September 09, 2006, members of the USCG observed the

**Marshalls 201** fishing inside the U.S. EEZ of Howland and Baker Islands. The vessel

does not possess a permit to legally fish within these waters. The **Marshalls 201** refused

to obey repeated orders to stop their vessel and submit to a USCG boarding. In detail, at

approximately 1853Z, the navigator onboard the CG C-130 reported a radar contact

within the EEZ of Howland and Baker Islands. The position of this contact was

approximately 55 nautical miles (NM) from the position of the CG C-130. When the CG

C-130 arrived near position 02-06.1S 176 00.5W, which is located north of the maritime

boundary line (MBL) between the U.S. EEZ and the Kiribati EEZ, members on the CG

C-130 and NOAA OLE SA Honda spotted a vessel fishing inside the U.S. EEZ. They

identified the vessel as **Marshalls 201.** SA Honda observed the **Marshalls 201**

retrieving her purse seine net. Approximately 90% of the purse seine net was on board

the vessel. Two smaller vessels, tenders for the **Marshalls 201**, were actively assisting in

the retrieval of the purse seine. Fish were observed being netted and brought on board the

**Marshalls 201.**

        e. Immediately after this observation, the CG C-130 contacted the USCGC

Walnut. The USCGC Walnut was patrolling approximately 20 NM inside the U.S. EEZ

north of this vessel's position. After receiving this information from the CG C-130, the

bridge team on the USCGC Walnut maneuvered their course to intercept the **Marshalls**

**201.** The members on the USCGC Walnut plotted the position provided by the CG C-130

and determined the vessel was approximately 2NM inside the U.S. EEZ of Howland and

Baker Islands.

7

f. At approximately 1027 hrs, the USCGC Walnut pulled along side the **Marshalls 201** which was stopped in the water and pulling in it's fishing gear, with two of it's small boats still in the water. It was determined at this time that the vessel was 1.9 NM within the U.S. EEZ. Members on the USCGC Walnut hailed the **Marshalls 201** on channel 16, ordering the vessel to heave to. The vessel then fled on a South-Southeast course directly toward the EEZ boundary line and the waters of Kirabiti.

g. At approximately 1033 hrs, the **Marshalls 201,** underway heading south - southeast, began to transit out of the U.S. EEZ while it's seine nets were still hanging from the boom. The USCGC Walnut continued pursuit of the vessel repeatedly hailing them to stop and heave to with negative results. At 1040 hrs, the USCGC Walnut hauled up the flaghoist signal "LIMA" from the International Code of Signals on their starboard yardarm and sounded the signal "LIMA" with the ship's whistle. The **Marshalls 201** responded to this whistle with two short blasts and continued her coarse. At approximately 1047 hrs, the **Marshalls 201** departed the U.S. EEZ in position 02-07.711S 175-58.731W. USCGC Walnut maintained hot pursuit both visually and on radar and continually hailed the vessel to heave to on channel 16. Someone, believed to be the master, did respond over channel 16 stating "no speak English" and "me no inside work" several times. At 1048 hrs, the **Marshalls 201** stopped in order to finish stowing it's fishing gear, then continued it's transit towards the south-southeast. During this time, the commanding officer of the USCGC Walnut ordered the 50 caliber machine guns to be mounted. They were mounted, but never pointed toward the **Marshalls 201** at any time. At 1100 hrs, the **Marshalls 201** came to an all stop. Again, someone believed to be the master said on channel 16 "you come over my boat".

h. At this time members of the USCGC Walnut conducted an at sea law enforcement boarding. It was determined by CG boarding officers, that the **Marshalls 201** did not possess a permit to legally fish within the U.S. EEZ on board, as required by U.S. law, and had approximately 500 metric tons of tuna on board. A statement of no objection was granted by the USCG District 14 for the vessel and catch to be seized and

8

transported to Guam.

    i. On September 20, 2006, the Marshalls 201 was secured in the Port of
Guam where custody was transferred to NOAA OLE for violations of the Magnuson
Stevens Fisheries Conservation Act.

### B. The Marshalls 201 Did Not Have A Permit To Fish In The EEZ

    15. Based on information I learned from reviewing a previous case file
investigation by SA Jeff Pollack, I know the following to be true:

    a. A foreign fishing vessel would have to have a Pacific Insular Area
fishery agreement ("PIAFA") permit to legally fish within the United States EEZ at a
Pacific insular possession area like Howland and Baker Islands.

    b. No PIAFA permit has been issued to any foreign fishing vessel to fish in
the Pacific insular possessions since the PIAFA mechanism came into existence in 1997.

    c. If any foreign fishing vessel is fishing in the EEZ around Howland and
Baker Islands, the foreign fishing vessel is doing so illegally.

### C. The Principle Owner Of The Marshalls 201 Was Previously Fined And Is Currently Under Investigation For Another Alleged Violation.

    16. Based on my review of a previous case file investigation by NOAA OLE SA
Jeff Pollack, I know the following to be true:

    a. In August 2000, the NIUGINI 103 (reflagged and named the **KOO'S
103**), a foreign purse seine fishing vessel, illegally deployed five FADs while inside the
United States EEZ surrounding Howland and Baker Islands. The Vessel, on paper owned
by the NIUGINI FISHING COMPANY, was in reality owned by KWANG-MING KOO
of Taiwan, who was listed as the owner on the NIUGINI 103's FFA vessel registration
application.

    b. As a result of the **KOO'S 103 (NIUGINI 103)** deploying FADs into the
United States EEZ around Howland and Baker Islands, the NOAA Office of General

9

Counsel issued a civil Notice of Violation and Assessment ("NOVA") to the Nuigini Fishing Company and to Tsuguo Utsumi, the master of the Vessel. The NOVA demanded the payment of a civil penalty for the illegal fishing activity within the United States EEZ. In the process of negotiating and signing a settlement with NOAA, a shipping agent, who expressed that he represented the vessel's owner, informed NOAA that the NIUGINI 103 had been renamed as the **KOO'S 103**, the owner of the vessel was Mr. KOO and the KFC, and that the vessel was currently based in the RMI. Further, the agent, on behalf of Mr. KOO and the KFC, ultimately agreed to pay the United States Government $50,000.00 (U.S. dollars) to settle the case.

   c. The **KOO'S 108** FFA vessel registration application lists the KOO'S Fishing Company (KFC), a Marshall Islands corporation. The **KOO'S 108** is currently negotiating a settlement for an alleged violation in January of 2004.

   d. During the interview of Dike Poznanski, who was an official Observer for the Forum Fisheries Agency (FFA) serving on the **KOO'S 108** when it allegedly violated U.S. sovereignty by illegally fishing in the U.S. EEZ at Howland and Baker in 2004, informed SA Pollack of the following:

     i. The KFC is owned by Mr. KOO, and Mr. KOO lives in Taiwan.

     ii. The KFC had six Vessels based out of RMI, and they were the **KOO'S 101, 102, 103, 106, 107, and the 108**.

     iii. The KFC is a Taiwanese company.

   e. On a Taiwanese Government Information Office website, observed by NOAA Special Agent Pollack, on or about August 24, 2005, KWANG-MING KOO was listed as a national policy advisor to the Taiwanese President from the year 2000, and also as the chairman for the KFC from 1996. Further, an address provided on the website for KWANG-MING KOO was materially the same address as that provided for KWANG-MING KOO on the FFA Vessel registration application for the KOO'S 103 (aka Nuigini 103).

10

# VI. CONCLUSION

17. Based on the information contained herein, I believe there is probable cause to support the issuance of an arrest warrant, under 16 U.S.C. §1861, to arrest the **Marshalls 201**, including the Vessel's fishing gear, furniture, appurtenances, stores, cargo, electronic and documentary records, and catch of fish for violating 16 U.S.C. § 1857(2)(B) (Foreign Fishing Vessel Engaged in Fishing within the United States EEZ without a Valid and Applicable Permit) and 16 U.S.C. § 1857(4)(A) & (B) (failure to have gear stowed where it can not be readily used for fishing).

FURTHER THIS AFFIANT SAYETH NOT.

JOHN BARYLSKY
Special Agent, NOAA OLE

SUBSCRIBED and SWORN to before me on this 2nd day of September, 2006.

CARMELLETA Q. SAN NICOLAS
Notary Public
In and for Guam, U.S.A.
My Commission Expires: Aug. 15, 2010
Sirena Plaza, Ste. 503,
108 Hernan Cortez Avenue
Hagatna, Guam 96910

11

LEONARDO M. RAPADAS
United States Attorney
MIKEL W. SCHWAB
Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagatna, Guam 96910
Tel: 671-472-7332
Fax: 671-472-7215

Paul Ortiz
Senior Attorney
Office of General Counsel
National Oceanic and Atmospheric Administration
501 West Ocean Blvd.
Suite 4470
Long Beach, California 90802
Tel: 562 980 4069

Attorneys for the United States of America

**RECEIVED**
OCT 0 4 2006
BERMAN O'CONNOR
MANN & SHKLOV

**FILED**
DISTRICT COURT OF GUAM

OCT - 4 2006

**MARY L.M. MORAN
CLERK OF COURT**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE

## TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL CASE NO. **06 - 00030** |
| Plaintiff, | |
| vs. | **APPLICATION FOR AND ORDER JUDICIALLY AUTHORIZING WARRANT FOR ARREST** |
| MARSHALLS 201, | |
| Defendant. | |

Plaintiff, United States of America, hereby applies to this Court for an Order authorizing the arrest of the defendant, **Marshalls 201**, a fishing vessel which is located within the jurisdiction of this Honorable Court. As more fully appears in the verified Complaint filed herewith, Plaintiff seeks to enforce action in admiralty for violation of provisions of the Magnuson-Stevens Fishery Conservation and Management Act

(MFCMA)  (See Fed.R.Civ.P. Rule C(1)(b) and 16 U.S.C. §§ 1858 (d) and 1860(a)), rendered by the **Marshalls 201**  Based upon the alleged facts and under Supplemental Admiralty Rule C, the <u>in rem</u> seizure of the **Marshalls 201** is appropriate.  Therefore, Plaintiff requests this Court to review this matter and to issue an order authorizing the issuance of service of process and a Warrant of Arrest against the defendant Vessel.

DATED this **2ᵗ²** day of ~~September~~ October, 2006.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

BY: _____
MIKEL W. SCHWAB
Assistant U.S. Attorney

2

LEONARDO M. RAPADAS
United States Attorney
MIKEL W. SCHWAB
Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagatna, Guam 96910
Tel: 671-472-7332
Fax: 671-472-7215

Paul Ortiz
Senior Attorney
Office of General Counsel
National Oceanic and Atmospheric Administration
501 West Ocean Blvd.
Suite 4470
Long Beach, California 90802
Tel: 562 980 4069

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE

TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL CASE NO. 06-00030 |
| Plaintiff, | |
| vs. | **AFFIDAVIT OF MIKEL W. SCHWAB** |
| MARSHALLS 201, | |
| Defendant. | |

MIKEL W. SCHWAB, being duly sworn upon oath, deposes and says as follows:

That the affiant is the Assistant U.S. Attorney for the District of Guam, and in his

capacity as such, has been informed by official communications from a Special Agent of

the National Marine Fisheries Service, of the matters alleged in the foregoing complaint

as witnessed by them; that upon such information the affiant verily believes that the facts stated in said Complaint are true.

FURTHER AFFIANT SAYETH NAUGHT

MIKEL W. SCHWAB
Assistant U.S. Attorney

SUBSCRIBED AND SWORN to before me this _4th_ day of October, 2006.

JOAQUIN V.E. MANIBUSAN, JR.
U.S. Magistrate Judge

2