Daniel J. Berman, Esq.
BERMAN O'CONNOR & MANN
Suite 503, Bank of Guam Building
111 Chalan Santo Papa
Hagatna, GU 96910
Telephone: (671) 472-2778

Mark S. Smith, Esq.
LAW OFFICES OF MARK S. SMITH
456 West O'Brien Drive, Suite 102-D
Hagatna, Guam 96910
Telephone: (671) 477-6631

Attorneys for Petitioner/Defendant
WEN YUEH LU

**FILED**

DISTRICT COURT OF GUAM

JAN - 4 2007   Wba

**MARY L.M. MORAN
CLERK OF COURT**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE TERRITORY OF GUAM

| | |
|---|---|
| WEN YUEH LU,<br><br>          Petitioner,<br><br>vs.<br><br>LEONARDO M. RAPADAS, United States Attorney for the Territory of Guam and the Northern Mariana Islands; JOAQUIN L.G. SALAS, in his official capacity as the Chief Marshal, U.S. Marshal's Office, Territory of Guam; and FRANK MICHAEL CRUZ, in his official capacity as Chief Probation Officer, U.S. Probation Office for the Territory of Guam,<br><br>          Respondents. | CV No. 06-00039<br><br>PETITIONER/DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE TO PETITION FOR HABEAS CORPUS<br><br>Date: January 10, 2007<br>Time: 1:30 p.m. |

### I.    SUMMARY OF REPLY

Petitioner/Defendant Wen Yueh Lu (hereinafter "Defendant"), by and through counsel undersigned, hereby submits this Reply to the Government's (hereinafter "Respondents") Response to his Petition for Writ of Habeas Corpus. Instead of responding to the Petition on its merits, Respondents assert that the Court lacks jurisdiction over the Petition because Defendant failed to exhaust his judicial remedies, such as by filing a motion for amendment of the conditions

of release. However, filing a motion for amendment of the conditions of release is not mandatory and the Court may even treat this Petition as such a motion, given that it is the court of original jurisdiction over the offense. In addition, the Court may waive exhaustion as Respondents' position simply postpones consideration of the merits to a later time, leaving Defendant in limbo for an uncertain period of time. Finally, such a motion cannot address that second part of Defendant's Petition, namely the question as to whether the charged offense may be punished by imprisonment for any period of time. By failing to address this issue, Respondents have, in essence, conceded the merits of Defendant's assertion that imprisonment for the fishery violation for which he is charged would violate applicable rules of customary international law.[1]

## II.  OBJECTION TO CONTINUANCE

Defendant Lu objects to the continuance of the scheduled hearing date on January 10, 2007, at 1:30 p.m. First, the petition is fully briefed in writing. Second, the U.S. Attorney's office has several extraordinary litigators in excess of 20 years court experience each. Third, and most importantly, the law does not permit imprisonment or confinement (custody) of Defendant Captain Lu for even one day, much less the now near 30 days he has been held on Guam. Notwithstanding, and without waiver of the objection, Defendant Lu agrees to a limited one day continuance to new date of January 11, 2007, should the court so find such date available.

## III.  REPLY TO PARTICULAR POINTS

### A.  Exhaustion of Remedies Is Not Statutorily Required and May Be Waived, Even If Prudentially Required.

It is black letter law in the Ninth Circuit that the habeas statute, 28 U.S.C. § 2241, does not specifically require petitioners to exhaust either judicial or administrative remedies before filing

---

[1]  Respondents also concede that Defendant is in "custody" and therefore may have that "custody" reviewed in a habeas petition. Government's Response at 2.



petitions for writs of habeas corpus. *Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001); *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004); *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004). However, as a prudential matter, the Ninth Circuit requires that habeas petitioners exhaust available judicial remedies before seeking relief under § 2241. *Acevedo-Carranza*, 371 F.3d at 541. Exhaustion is jurisdictional only where a petitioner is required by statute to seek a judicial remedy. Id. (citing *El Rescate Legal Sers., Inc. v. Executive Office of Immigration Review*, 959 F.2d 742, 747 (9th Cir. 1991)). If the requirement is prudential, it may be waived. Id.

The statute for review and appeal of a release or detention order, 18 U.S.C. § 3145, authorizes, but does not mandate, such review. The statute uses the term "may" as the operative word in describing the ability of either the prosecutor or the defendant to seek review of any release or detention order. Thus, exhaustion is not statutorily mandated and cannot be jurisdictional. Respondents fail to cite any case that indicates otherwise. The *Acevedo-Carranza* case, relied upon by Respondents, is easily distinguished because the issue of the petitioner's status as an aggravated felon required examination in another forum. Here there is no such predicate factual uncertainty that requires examination in another forum.

Defendant requests that any prudential requirement of exhaustion be waived, given that delay will add nothing to the court's record or clarify any question of fact, and therefore will be an exercise in wasted time and futility. Nothing more needs to be done to address the two issues raised in Defendant's Petition. Exhaustion of remedies is not required where resort to such remedies would be futile. See *Castillo-Villagra v. INS*, 972 F.2d 1017, 1024 (9th Cir. 1992); *El Rescate Legal Servs., Inc.*, 959 F.2d at 746.

### B. Court May Convert the Habeas Petition Into A Request to Change Release Conditions.

The Court, pursuant to its inherent authority to control its own docket, may also simply convert Defendant's habeas request to be freed of all release conditions as an amendment pursuant

to 18 U.S.C. § 3145(a)(2). The only issue to be decided is whether Respondents must immediately release, without any conditions, Defendant because of the mandate of customary international law. There is no dispute as to his status as a captain of a foreign-flag tuna fishing vessel charged by the United States for violation of the nation's fishery management laws, or that he has posted a reasonable bond. The legal issue is ripe for this Court's determination.

### C. Exhaustion Does Not Apply to Defendant's Imprisonment Issue.

Defendant has raised two issues in his Petition. First, he has asserted that the conditions of his pre-trial detention violate the customary rule of international law that fishing vessel crews must be released immediately and unconditionally after posting a reasonable bond. The second issue is that he was imprisoned by Respondents and is being threatened with further imprisonment, both in violation of customary international law.[2] There is no avenue for Defendant to "exhaust his judicial or administrative remedies" with respect to this issue, which is purely a legal one. Accordingly, this Court should address the issue directly in the context of this Petition for Habeas Corpus.

### D. Articles 73.2 and 73.4 of the Law of the Sea Treaty Are Binding on the United States.

The issues presented in this Petition have been considered in several cases decided by the United Nations Law of the Sea Tribunal,[3] where nations may bring their disputes if they cannot be resolved by local judiciary or diplomatic negotiation. For the convenience of the Court, attached are two recent decisions by the Tribunal on the questions of prompt release and imprisonment: (1) the "Camuoco" Case (Panama v. France) (decided February 7, 2000); and (2) the "Monte Confurco" Case (Seychelles v. France). See Exhibit "1" and Exhibit "2", attached respectively.

---

[2] In their recent plea offer, Respondents demand that Defendant agree to additional time in jail.

[3] The International Tribunal for the Law of the Sea is an independent judicial body created by the Law of the Sea Treaty to adjudicate disputes over the application of the provisions of the Treaty. The website for the Tribunal can be found at www.itlos.org.

**ORIGINAL**

These decisions represent international precedent that should be adhered to by the United States, as a law-abiding nation with respect for the rights of others. The overly aggressive, unilateral enforcement actions against the Defendant by military and prosecutorial forces of the United States in this case are out of step with the rest of the civilized world in the handling of international fishery enforcement cases.

The concept of, and right to claim, an exclusive economic zone is well-recognized. *Koru North America v. United States*, 701 F.Supp.229, 232 n. 6 (U.S.Ct.Int'l Trade 1988). The United States has stated that the sovereign rights and jurisdiction it holds in the exclusive economic zone will be exercised in accordance with the rules of international law. Statement of President Ronald Reagan, PROCLAMATION NO. 5030, 48 Fed.Reg. 10,605 (March 10, 1983). President Clinton signed the Law of the Sea Treaty in July 1994 and submitted it to the United States Senate for ratification. The legal implications of the Treaty, even though it has yet to be ratified, has been recognized by various courts, as cited in the Petition for Habeas Corpus. Respondents have failed to respond to this basic argument, and therefore they concede it.

## IV.    CONCLUSION

For the reasons set forth above, the Court should proceed on the merits of Defendant's Petition for Habeas Corpus, determine that his continued detention is unlawful and that he should now be released unconditionally, and rule that he cannot be imprisoned for the charges asserted against him in Magistrate Case No. 06-00039.

DATED: January 4, 2007

**BERMAN O'CONNOR & MANN
LAW OFFICES OF MARK S. SMITH**

Attorneys for Petitioner/Defendant WEN YUEH LU

By: _____

**DANIEL BERMAN
MARK S. SMITH**

ORIGINAL

Daniel J. Berman, Esq.
BERMAN O'CONNOR & MANN
Suite 503, Bank of Guam Building
111 Chalan Santo Papa
Hagatna, GU 96910
Telephone: (671) 472-2778

Mark S. Smith, Esq.
LAW OFFICES OF MARK S. SMITH
456 West O'Brien Drive, Suite 102-D
Hagatna, Guam 96910
Telephone: (671) 477-6631

Attorneys for Petitioner/Defendant
WEN YUEH LU

# UNITED STATES DISTRICT COURT

# FOR THE TERRITORY OF GUAM

| | |
|---|---|
| WEN YUEH LU,<br><br>          Petitioner,<br><br>     v.<br><br>LEONARDO M. RAPADAS, United States<br>Attorney for the Territory of Guam and the<br>Northern Marianas Islands; JOAQUIN L.G.<br>SALAS, in his official capacity as the Chief<br>Marshal, U.S. Marshal's Office, Territory of<br>Guam; and FRANK MICHAEL CRUZ, in<br>his official capacity as Chief Probation<br>Officer, U.S. Probation Office for the<br>Territory of Guam,<br><br>          Respondents. | CV NO. 06-00039<br><br><br>**CERTIFICATE OF SERVICE** |

# CERTIFICATE OF SERVICE

I hereby certify that on the __4th__ day of January, 2007, I caused to be served a copy of the

Defendant's [Proposed] Scheduling Order And Discovery Plan, on the following:

ORIGINAL

### HAND DELIVERY

Karon V. Johnson, Esq.
Honorable Leonardo M. Rapadas, Esq.
Office of the United States Attorney
108 Hernan Cortes Avenue, Suite 500
Hagåtña, Guam 96910

Facsimile: (671) 472-7215

Dated this ___4th___ day of January 2007.

By _____
**ANNA MARIE CRUZ PEREZ**

# INTERNATIONAL TRIBUNAL FOR THE LAW OF THE SEA
## YEAR 2000

7 February 2000

List of cases:
No. 5

## THE "CAMOUCO" CASE

(PANAMA *v.* FRANCE)

APPLICATION FOR PROMPT RELEASE

**JUDGMENT**

**EXHIBIT "1"**

# TABLE OF CONTENTS

|  | Paragraphs |
|---|---|
| Introduction | 1–24 |
| Factual background | 25–42 |
| Jurisdiction | 43–48 |
| Objections to admissibility | 49–60 |
| Non-compliance with article 73, paragraph 2, of the Convention | 61–72 |
| Form and amount of the bond or other financial security | 73–76 |
| Translation of the Judgment | 77 |
| Operative provisions | 78 |

**JUDGMENT**

*Present:* *President* CHANDRASEKHARA RAO; *Vice-President* NELSON; *Judges* ZHAO, CAMINOS, MAROTTA RANGEL, YANKOV, YAMAMOTO, KOLODKIN, PARK, BAMELA ENGO, MENSAH, AKL, ANDERSON, VUKAS, WOLFRUM, LAING, TREVES, MARSIT, EIRIKSSON, NDIAYE, JESUS;     *Registrar* CHITTY.

In the "Camouco" Case

*between*

Panama,

*represented by*

Mr. Ramón García Gallardo, *Avocat*, Bar of Brussels, Belgium, and Bar of Burgos, Spain,

*as Agent*;

*and*

Mr. Jean-Jacques Morel, *Avocat*, Bar of Saint-Denis, Réunion, France,
Mr. Bruno Jean-Etienne, Legal Assistant, S.J. Berwin & Co., Brussels, Belgium,

*as Counsel,*

*and*

France,

*represented by*

Mr. Jean-François Dobelle, Deputy Director of Legal Affairs of the Ministry of Foreign Affairs,

*as Agent*;

*and*

Mr. Jean-Pierre Quéneudec, Professor of International Law at the University of Paris I, Paris, France,

Mr. Francis Hurtut, Assistant Director for the Law of the Sea, Fisheries and the Antarctic, Office of Legal Affairs of the Ministry of Foreign Affairs,

Mr. Bernard Botte, *Rédacteur*, Sub-Directorate for the Law of the Sea, Fisheries and the Antarctic, Office of Legal Affairs of the Ministry of Foreign Affairs,

Mr. Vincent Esclapez, Deputy Regional Director for Maritime Affairs, Réunion, France,
Mr. Jacques Belot, *Avocat*, Bar of Saint-Denis, Réunion, France,

*as Counsel,*

THE TRIBUNAL,

composed as above,

after deliberation,

*delivers the following Judgment:*

## Introduction

1. On 14 January 2000, the Registrar of the Tribunal was notified by a letter dated 28 December 1999 from the Minister for Foreign Affairs of Panama that Mr. Ramón García Gallardo, and Mr. Jean-Jacques Morel, were authorized to make an application to the Tribunal on behalf of Panama under article 292 of the United Nations Convention on the Law of the Sea (hereinafter "the Convention"), with respect to the fishing vessel *Camouco*.

2. On 17 January 2000, an Application under article 292 of the Convention was filed in the Registry of the Tribunal on behalf of Panama against France concerning the prompt release of the *Camouco* and its Master. The Application was accompanied by a certificate from the officer in charge of consular affairs in the Embassy of Panama, Brussels, dated 17 January 2000, notifying the appointment of Mr. Ramón García Gallardo, *Avocat*, Brussels and Burgos, as Agent of Panama. A certified copy of the Application was sent on the same day by a note verbale of the Registrar to the Minister for Foreign Affairs of France in Paris and also in care of the Ambassador of France to Germany.

3. On 19 January 2000, the Registrar was notified of the appointment of Mr. Jean-François Dobelle, Deputy Director of Legal Affairs of the Ministry of Foreign Affairs of France, as Agent of France, by a letter from the Director of Legal Affairs, Ministry of Foreign Affairs, Paris, addressed to the Registrar.

4. In accordance with article 112, paragraph 3, of the Rules of the Tribunal (hereinafter "the Rules"), the President of the Tribunal, by Order dated 17 January 2000, fixed 27 and 28 January

2000 as the dates for the hearing. Notice of the Order was communicated forthwith to the parties.

5. By note verbale from the Registrar dated 17 January 2000, the Minister for Foreign Affairs of France was informed that the Statement in Response of France, in accordance with article 111, paragraph 4, of the Rules, could be filed in the Registry not later than 24 hours before the hearing.

6. The Application was entered in the List of cases as Case No. 5 and named: The "Camouco" Case.

7. In accordance with article 24, paragraph 3, of the Statute of the Tribunal, States Parties to the Convention were notified of the Application by a note verbale from the Registrar dated 18 January 2000. Pursuant to the Agreement on Cooperation and Relationship between the United Nations and the International Tribunal for the Law of the Sea of 18 December 1997, the Secretary-General of the United Nations was notified by the Deputy Registrar of the Tribunal on 18 January 2000 of the receipt of the Application.

8. In accordance with articles 45 and 73 of the Rules, on 20 January 2000, the President held a teleconference with the Agents of the parties and ascertained their views regarding the order and timing of presentation by each of the parties and the evidence to be produced during the oral proceedings.

9. Pursuant to article 72 of the Rules, information regarding witnesses and experts was submitted by the Agent of Panama to the Tribunal on 18 and 21 January 2000, and by the Agent of France on 24 January 2000.

10. On 25 January 2000, France transmitted by facsimile its Statement in Response, copy of which was transmitted forthwith to the Agent of Panama.

11. On 26 January 2000, the Agent of Panama sent documents in order to complete the documentation in accordance with article 63, paragraphs 1 and 2, and article 64, paragraph 3, of the Rules. Copies of these documents were transmitted to the Agent of France.

12. After the closure of the written proceedings and prior to the opening of the oral proceedings, the Tribunal held initial deliberations on 26 January 2000 in accordance with article 68 of the Rules.

13. On 27 January 2000, the President held consultations with the Agents of the parties in accordance with article 45 of the Rules.

14. Prior to the opening of the oral proceedings, the parties submitted documents required under paragraph 14 of the Guidelines concerning the Preparation and Presentation of Cases before the Tribunal.

15. Pursuant to article 67, paragraph 2, of the Rules, copies of the pleadings and documents annexed thereto were made accessible to the public from the date of opening of the oral proceedings.

16. Oral statements were presented at four public sittings held on 27 and 28 January 2000 by the following:

| | |
|---|---|
| On behalf of Panama: | Mr. Ramón García Gallardo, Agent, |
| | Mr. Jean-Jacques Morel, Counsel. |
| | |
| On behalf of France: | Mr. Jean-François Dobelle, Agent, |
| | Mr. Jean-Pierre Quéneudec, Counsel. |

17. The Agent of Panama, in the course of his statement, presented a number of exhibits which were displayed on video monitors, including the following:

- two nautical charts showing areas around the Crozet Islands, a nautical chart showing fishing areas around the Crozet Islands, a nautical chart showing the course said to have been taken by the *Camouco*;

- a slide showing the method of longline bottom fishing;

- a video film showing the method of longline bottom fishing in the southern oceans;

- photographs showing the *Camouco* and the system used for raising the fishing lines.

The original of each exhibit was delivered to the Registrar and duly registered.

18. At a public sitting held on 27 January 2000, Mr. Domingo Cándido Fernández Pérez, Ship-Owner, and Mr. M. Antonio Alonso Pérez, Captain of the Merchant Navy and Marine Surveyor, were called as experts by the Agent of Panama and examined by Mr. García Gallardo. Mr. Fernández Pérez was cross-examined by Mr. Quéneudec. Mr. Fernández Pérez and Mr. Alonso Pérez gave evidence in Spanish. The necessary arrangements were made for the statements of those experts to be interpreted into the official languages of the Tribunal.

19. On 27 January 2000, the Agent of Panama submitted a list of questions to be put to both experts, a curriculum vitae of Mr. Alonso Pérez and a technical report concerning the *Camouco*.

20. On 27 January 2000, a list of issues which the Tribunal would like the parties specially to address was communicated to the Agents.

21. On 28 January 2000, the Agent of Panama submitted a written response to the questions addressed by the Tribunal to the parties. During the hearing, on 28 January 2000, the Agent of France replied orally to those questions.

22. During the hearing on 28 January 2000, the President drew the attention of the parties to article 71 of the Rules, and to additional documents referred to by the parties in the hearing on 27 and 28 January 2000, copies of which were communicated to the other party. Since no objection was raised by the parties, the President stated that those additional documents should be filed with the Registry together with, where necessary, a translation in one of the official languages of the Tribunal.

23. In the Application and in the Statement in Response, the following submissions were presented by the parties:

*On behalf of Panama,*
in the Application:

*[Translation from French]*

1. To find that the Tribunal is competent under Article 292 of the United Nations Convention on the Law of the Sea to entertain the Application filed this day;

2. To declare that the present Application is *admissible*;

3. To declare that the French Republic has failed to comply with article 73, paragraph 4, by failing promptly to notify the Republic of Panama of the arrest of the *Camouco*.

(A) WITH RESPECT TO THE CAPTAIN OF THE CAMOUCO, MR. HOMBRE SOBRIDO

4. To request, as an interlocutory measure with a view to due process, that the French Republic permit Captain HOMBRE SOBRIDO to attend the hearing which is soon to take place in Hamburg;

5. To find that the French Republic has failed to comply with the provisions of the Convention concerning the prompt release of the Masters of arrested vessels;

6. To order the French Republic promptly to release Captain HOMBRE SOBRIDO without bond;

7. To find that the French Republic has failed to comply with the provisions of Article 73 § 3 in applying to the Captain criminal measures which de facto constitute an unlawful detention.

(B) WITH RESPECT TO THE VESSEL CAMOUCO

8. To find that the French Republic has failed to comply with the provisions of the Convention concerning prompt release of the vessel *Camouco*;

9. To order the French Republic promptly to release the vessel *Camouco*, without bond, in light of the losses and costs already sustained by the owner of the *Camouco*;

10. Subsidiarily, to determine the amount, nature and form of the bond or other financial guarantee to be posted by the Merce-Pesca Company in order to secure the release of the *Camouco* and of Captain HOMBRE SOBRIDO;

> In this connection, the Applicant requests the Tribunal to take note of its preference for a bond in the form of a bank guarantee from a leading European bank, rather than a cash payment, and for payment to be made to the International Tribunal for the Law of the Sea, for transmission by appropriate means to the French authorities in exchange for the release of the vessel;

> As regards the amount of the bond, and bearing in mind the rules applicable in similar cases, this party proposes that the Tribunal should fix a bond not greater than the sum 100,000 French francs (ONE HUNDRED THOUSAND FRENCH FRANCS, i.e. approximately US$ 15,000), in which the Tribunal will take into account the many expenses already incurred by the Merce-Pesca Company since the boarding of the *Camouco*;

11. To declare that the French Republic will bear the costs of the Applicant arising from the present proceedings.

*On behalf of France,*
in the Statement in Response:

*[Translation from French]*

On the basis of the foregoing statement of facts and legal grounds, the Government of the French Republic, while reserving the right to add to or amend, if necessary, this conclusion at a later stage in the proceedings, requests the Tribunal, rejecting all arguments to the contrary submitted on behalf of the Republic of Panama, to declare and rule that the application requesting the Tribunal to order the prompt release of the *Camouco* and its Captain is not admissible.

24. In accordance with article 75, paragraph 2, of the Rules, the following final submissions were presented by the parties at the end of the hearing:

*On behalf of Panama:*

*[Translation from French]*

The Tribunal is requested:

1. To declare that the Tribunal has jurisdiction to entertain the application pursuant to article 292 of the United Nations Convention on the Law of the Sea.

2. To declare that the present application made by the Republic of Panama on 17 January 2000 is admissible.

3. To declare that the French Republic has violated article 73, paragraph 4, by tardy and incomplete notification of the arrest and seizure of the vessel *Camouco* to the Republic of Panama of the measures taken and of those which were to be taken.

4. To find that the French Republic has failed to observe the provisions of the Convention concerning prompt release of the Master of the vessel *Camouco*.

5. To find that the French Republic has failed to observe the provisions of the Convention concerning prompt release of the vessel *Camouco*.

6. To find that the non-observance by the French Republic of the provisions of article 73, paragraph 3 - by applying to the Master of the *Camouco* provisional measures of a penal character - constitutes unlawful detention.

7. To demand that the French Republic promptly release the vessel *Camouco* and, concomitantly, release its Master, against payment of a reasonable bond of one million three hundred thousand francs (1,300,000 FF) before deduction of the price of the cargo seized (350,000 FF), i.e. a final guarantee in a maximum amount of nine hundred and fifty thousand francs (950,000 FF).

8. To order that said amount be paid by means of a bank guarantee of a major European bank, to be entrusted to the care of the International Tribunal for the Law of the Sea in order that it may be duly delivered to the French authorities in exchange for the release of the vessel and of its Master.

9. Pursuant to article 64, paragraph 4, of the rules of procedure, to prepare a Spanish translation of the judgment of the International Tribunal for the Law of the Sea.

*On behalf of France:*

*[Translation from French]*

The Government of the French Republic requests the Tribunal, while rejecting all submissions to the contrary presented on behalf of the Republic of Panama, to declare and adjudge:

(1) that the application requesting the Tribunal to order the prompt release of the *Camouco* and of its captain is not admissible.

(2) as a subsidiary submission, if it decides that the *Camouco* is to be released upon the deposit of a bond, that the bond shall be not less than the sum of 20,000,000 francs and that this sum shall be posted in the form of a certified cheque or bank draft.

**Factual background**

25. The *Camouco* is a fishing vessel flying the flag of Panama. Its owner is "Merce-Pesca (S.A.)", a company registered in Panama.

26. On 21 September 1998, the *Camouco* was provisionally registered in Panama. The registration is valid up to 20 September 2002. Panama provided the *Camouco* with a fishing licence for longline bottom fishing of "Patagonian toothfish" in "international waters" in the South Atlantic between 20° and 50° latitude South and between 20° and 80° longitude West.

27. On 16 September 1999, the *Camouco* left the port of Walvis Bay (Namibia) to engage in longline fishing in the Southern seas. Its Master was Mr. José Ramón Hombre Sobrido, a Spanish national.

28. On 28 September 1999, at 15:29 hours, the *Camouco* was boarded by the French surveillance frigate *Floréal* in the exclusive economic zone of the Crozet Islands, 160 nautical miles from the northern boundary of the zone.

29. According to the procès-verbal of violation (*procès-verbal d'infraction*) No. 1/99, drawn up on 28 September 1999 by the Captain and two other officers of the *Floréal*, the *Camouco* was observed, on 28 September 1999 at 13:28 hours, paying out a longline within the exclusive economic zone of the Crozet Islands by the Commander of the helicopter carried on board the *Floréal*. The procès-verbal of violation further recorded that the *Camouco* did not reply to calls from the *Floréal* and the helicopter, and moved away from the *Floréal* while members of the *Camouco*'s crew were engaged in jettisoning 48 bags and documents, before stopping at 14:31 hours, and that one of those bags was later retrieved and found to contain 34 kilograms of fresh toothfish. The procès-verbal of violation also stated that six tonnes of frozen toothfish were found in the holds of the *Camouco* and that the Master of the *Camouco* was in breach of law on account of:

(a) unlawful fishing in the exclusive economic zone of the Crozet Islands under French jurisdiction;

(b) failure to declare entry into the exclusive economic zone of the Crozet Islands, while having six tonnes of frozen Patagonian toothfish on board the vessel;

(c) concealment of vessel's markings, while flying a foreign flag; and

(d) attempted flight to avoid verification by the maritime authority.

The procès-verbal of violation recorded that the Master of the *Camouco* refused to sign it.

30. On 29 September 1999, at 13:05 hours, the *Camouco* was re-routed and escorted under the supervision of the French navy to Port-des-Galets, Réunion, where it arrived on 5 October 1999.

31. A procès-verbal (*procès-verbal d'appréhension*) No. 1/99, drawn up by the *capitaine de corvette* of the *Floréal* on 29 September 1999, at 13:13 hours, recorded the seizure of the *Camouco*, the fish catch, the navigation and communication equipment and documents of the vessel and of the crew. The procès-verbal No. 1/99 recorded that the Master of the *Camouco* refused to sign it.

32. According to the Application, the Master of the *Camouco* stated that he was intending merely to cross the exclusive economic zone of the Crozet Islands in a South-North direction without fishing there; that his fishing licence expressly prohibited him from fishing outside international waters; that he had forgotten to declare the entry of the *Camouco* into the exclusive economic zone of the Crozet Islands to the French authorities; that, however, the entry was declared to the district head of Crozet at 14:17 hours on 28 September 1999; that the six tonnes of toothfish were caught outside the exclusive economic zone of the Crozet Islands and that there was no fresh toothfish on board the *Camouco*. He disputed the claim that the bag of fish, which was claimed to have been retrieved by the French authorities, had been jettisoned by the crew of the *Camouco* and stated that the bags jettisoned by the crew of the *Camouco* had contained only garbage.

33. On 7 October 1999, the Regional and Departmental Directorate of Maritime Affairs drew up a procès-verbal of seizure (*procès-verbal de saisie*) (No. 052/AM/99) which reiterated the charges leveled against the Master of the *Camouco* in the procès-verbal of violation dated 28 September 1999. The procès-verbal of seizure (No. 052/AM/99) declared that the *Camouco* should be seized and estimated its value at 20,000,000 FF. On 7 October 1999, another procès-verbal of seizure (No. 053/AM/99) was drawn up for the seizure of the toothfish on board the vessel. This procès-verbal of seizure estimated the tonnage of the catch at 7,600 kilograms and its value at 380,000 FF.

34. On 7 October 1999, the Master was charged and placed under court supervision (*contrôle judiciaire*) by the examining magistrate (*juge d'instruction*) of the *tribunal de grande instance* at Saint-Denis. His passport was taken away from him by the French authorities. The rest of the crew, except four members who remained on board to see to the maintenance of the *Camouco*, left Réunion on 13 October 1999.

35. On 8 October 1999, the Regional and Departmental Directorate of Maritime Affairs sought confirmation of the arrest of the *Camouco* from the court of first instance (*tribunal d'instance*) at Saint-Paul and requested the Court to authorize its release subject to the prior payment of a bond of no less than 15,000,000 FF plus costs to be paid into the Deposits and Consignments Office (*Caisse des Dépôts et Consignations*).

36. In its order of 8 October 1999, the court of first instance at Saint-Paul, having regard to the facts of the case and the alleged breaches of law as contained in the procès-verbal of violation of 28 September 1999 and the procès-verbal of seizure (No. 052/AM/99) dated 7 October 1999, and "in particular in the light of the value of the vessel and the penalties incurred", confirmed the arrest of the *Camouco* and ordered that the release of the arrested vessel would be subject to the condition that prior payment be made of a bond in the amount of 20,000,000 FF in cash, certified cheque or bank draft, to be paid into the Deposits and Consignments Office.

37. In support of its order, the Court relied upon the following:

(a) Article 3 of Law No. 83-582 of 5 July 1983, as amended, concerning the regime of seizure and supplementing the list of agents authorized to establish offences in matters of sea fishing;

(b) Articles 2 and 4 of Law No. 66-400 of 18 June 1966, as amended by the Law of 18 November 1997, on sea fishing and the exploitation of marine products in the French Southern and Antarctic Territories;

(c) Article 142 of the Code of Criminal Procedure.

38.    Article 3 of Law No. 83-582 of 5 July 1983, as amended, reads as follows:

### [*Translation from French*]

The competent authority may seize the vessel or boat that has been used to fish in contravention of laws and regulations, regardless of the manner in which the violation is established.

The competent authority shall conduct or arrange for the conducting of the vessel or boat to a port designated by that authority; it shall prepare a procès-verbal of seizure and the vessel or boat shall be handed over to the Maritime Affairs Department.

Within a time-limit not exceeding seventy-two hours after the seizure, the competent authority shall submit to the judge of first instance of the place of the seizure an application accompanied by the procès-verbal of seizure in order for the judge to confirm, in an order made within seventy-two hours, the seizure of the vessel or boat or to decide on its release.

Whatever the circumstances, the order shall be made within six days of the arrest referred to in article 7 or of the seizure.

The release of the vessel or boat shall be decided by the judge of first instance of the place of the seizure upon the posting of a bond, the amount and arrangements for payment of which he shall decide in accordance with the provisions of article 142 of the Code of Criminal Procedure.

39.    Articles 2 and 4 of Law No. 66-400 of 18 June 1966, as amended, read as follows:

### [*Translation from French*]

Article 2

No one may fish and hunt marine animals, or engage in the exploitation of marine products, whether on land or from vessels, without having first obtained authorization.

Any vessel entering the exclusive economic zone of the French Southern and Antarctic Territories shall be obliged to give notification of its presence and to declare the tonnage of fish held on board to the chief district administrator of the nearest archipelago.

Article 4

Any person who fishes, hunts marine animals or exploits marine products on land or on board a vessel, without having first obtained the authorization required under article 2, or fails to give notification of entering the economic zone, or to declare the tonnage of fish held on board, shall be punished with a fine of 1,000,000 francs and six months' imprisonment, or with one only of these two penalties.

Anyone fishing, in prohibited zones or during prohibited periods, in contravention of the provisions of the orders provided for under article 3, shall be subject to the same penalties.

However, the statutory maximum provided for in the first paragraph shall be increased by 500,000 francs for every tonne caught over and above two tonnes without the authorization provided for under article 2 or in breach of the regulations concerning prohibited zones and periods issued pursuant to article 3.

Concealment, within the meaning of article 321-1 of the Penal Code, of products caught without the authorization provided for in article 2 or in breach of the regulations concerning prohibited zones and periods issued pursuant to article 3 shall be subject to the same penalties.

40. Article 142 of the Code of Criminal Procedure reads as follows:

*[Translation from French]*

When the accused is required to furnish security, such security guarantees:
1. the appearance of the accused, whether under charges or not, at all stages of the proceedings and for the execution of judgment, as well as, where appropriate, the execution of other obligations which have been imposed upon him;
2. payment in the following order of:
a) reparation of damages caused by the offence and restitution, as well as alimony debts when the defendant is being prosecuted for failure to pay this debt;
b) fines.
The decision which compels the defendant to furnish security shall determine the sums assigned to each of the two parts of the security.

Article 142-1
The examining magistrate can, with the defendant's consent, order that the part of the security set to guarantee the rights of the victim or the creditor of an alimony debt be deposited to them as a provisional award, on their request.

This deposit may also be ordered, even without the consent of the defendant, when an enforceable decision of justice has granted the victim or creditor a provisional award in conjunction with facts which are the subject of proceedings.

Article 142-2
The first part of the security is refunded if the accused, whether under charges or not, has appeared at all stages of the proceedings, has satisfied the obligations of court supervision, and has submitted himself to the execution of the judgment.
It is forfeited to the State in contrary cases, except by reason of a legitimate excuse.
It is, nevertheless, refunded in case of dismissal, pardon or acquittal.

Article 142-3
The sum set aside for the second part of security which has not been deposited to the victim of the offence or to the creditor of an alimony debt shall be refunded in the case of dismissal and, unless article 372 is applied, in case of pardon or acquittal.
In case of conviction, the security is used in accordance with the provisions of article 142 (paragraph 1, section 2). Any surplus shall be refunded.
The conditions for application of the present article shall be fixed by a decree in Council of State.

41.     On 22 October 1999, Merce-Pesca and the Master of the *Camouco* filed a summons for urgent proceedings before the court of first instance at Saint-Paul, in order to secure prompt release of items seized by virtue of the procès-verbal of seizure (No. 052/AM/99) and the procès-verbal of seizure (No. 053/AM/99) dated 7 October 1999 and to seek a reduction of the amount of the bond. In the summons a complaint was, *inter alia*, made that the obligation to fix a "reasonable" bond, as required by articles 73, paragraph 2, and 292 of the Convention, was not complied with.

42.     On 14 December 1999, the court of first instance at Saint-Paul made an order rejecting the request. The Court stated: "... it is for the judge before whom the case is heard to set the bond in application of the rules laid down in article 142 of the Code of Criminal Procedure, and ... he is not required to give an account of the considerations on which he based himself both to secure payment of penalties incurred and to secure the appearance of the accused in legal proceedings, having regard to the nature of the facts." An appeal is pending against this order before the court of appeal (*cour d'appel*) at Saint-Denis.

**Jurisdiction**

43. The Applicant alleges that the Respondent has not complied with the provisions of the Convention for the prompt release of a vessel or its crew upon the posting of a reasonable bond or other financial security. The Respondent denies the allegation.

44. The Tribunal will, at the outset, examine the question whether it has jurisdiction to entertain the Application. Article 292 of the Convention sets out the requirements to be satisfied to found the jurisdiction of the Tribunal. It reads as follows:

*Article 292*
*Prompt release of vessels and crews*

1. Where the authorities of a State Party have detained a vessel flying the flag of another State Party and it is alleged that the detaining State has not complied with the provisions of this Convention for the prompt release of the vessel or its crew upon the posting of a reasonable bond or other financial security, the question of release from detention may be submitted to any court or tribunal agreed upon by the parties or, failing such agreement within 10 days from the time of detention, to a court or tribunal accepted by the detaining State under article 287 or to the International Tribunal for the Law of the Sea, unless the parties otherwise agree.

2. The application for release may be made only by or on behalf of the flag State of the vessel.

3. The court or tribunal shall deal without delay with the application for release and shall deal only with the question of release, without prejudice to the merits of any case before the appropriate domestic forum against the vessel, its owner or its crew. The authorities of the detaining State remain competent to release the vessel or its crew at any time.

4. Upon the posting of the bond or other financial security determined by the court or tribunal, the authorities of the detaining State shall comply promptly with the decision of the court or tribunal concerning the release of the vessel or its crew.

45. Panama and France are both States Parties to the Convention.   Panama ratified the Convention on 1 July 1996 and the Convention entered into force for Panama on 31 July 1996. France ratified the Convention on 11 April 1996 and the Convention entered into force for France on 11 May 1996.

46. The status of Panama as the flag State of the *Camouco*, both at the time of the incident in question and now, is not disputed.   The parties did not agree to submit the question of release from detention to any other court or tribunal within 10 days from the time of detention.   The Tribunal notes that the Application has been duly made on behalf of the Applicant in accordance with article 292, paragraph 2, of the Convention and that the Application satisfies the requirements of articles 110 and 111 of the Rules.

47. The Tribunal notes further that the Respondent does not contest the jurisdiction of the Tribunal.

48. For the aforesaid reasons, the Tribunal finds that it has jurisdiction to entertain the Application.

**Objections to admissibility**

49. The parties disagree on whether the Application is admissible and it is, therefore, to that question that the Tribunal must now turn its attention. Article 292, paragraph 1, of the Convention provides for the making of an application for release based on an allegation that the detaining State has not complied with the provisions of the Convention for the prompt release of a vessel or its crew upon the posting of a reasonable bond or other financial security. Pursuant to article 113, paragraph 2, of the Rules, if the Tribunal decides that the allegation is "well-founded" it will order the release of the vessel and its crew upon the posting of the bond or other financial security as determined by the Tribunal.

50. Before the Tribunal pronounces itself on whether or not the allegation is well-founded, it is necessary to consider certain objections to admissibility by the Respondent.

51. The Respondent states that the Applicant filed the Application more than three months after the detention of the *Camouco*, that the Applicant had been completely inactive during this period, that article 292 speaks in terms of "prompt release", which carries with it the characteristics of dispatch and urgency that are inherent in the notion of "prompt release", that, by failing to act promptly, the Applicant has created, by its conduct, a situation akin to estoppel and that, consequently, the Application is not admissible.

52. The Applicant states that article 292 does not impose any time-limit for making an application and that, in any event, there is no delay on its part, as alleged by the Respondent. It adds that it was only on 14 December 1999, when the court of first instance at Saint-Paul made an order confirming its earlier order, that it came to know, in a definitive manner, that the sum to be secured by a bond was 20 million FF. It states that it was then that it took a decision to approach the Tribunal. It notes that the Respondent cannot complain about delay. In its final submissions, the Applicant stated that the Respondent has failed to notify the Applicant, as required by article 73, paragraph 4, of the Convention, of the "arrest and seizure of the *Camouco* ... of the measures taken and of those which were to be taken" in respect of the vessel. The Applicant further states that, even if the communication addressed to the Ministry of Foreign Affairs of Panama by the French Embassy in Panama were to be taken as amounting to notification of the information required under article 73, paragraph 4, of the Convention, it was dated 11 November 1999, long after the date of detention.

53. The Respondent, however, maintains that, as early as 1 October 1999, the Prefect of Réunion informed the Consul-General of Panama in Paris that the Master of the *Camouco* had been the subject of a procès-verbal of violation for violating the regulations governing fishing in the exclusive economic zone of the Crozet Islands and that the *Camouco* was being diverted to Port-des-Galets in Réunion, so that its captain could be tried before the *tribunal de grande instance* at Saint-Denis. The Applicant denies that any such notification was received by the Consulate-General of Panama in Paris and places reliance in this regard on a letter dated 27 January 2000 from the Embassy of Panama in Paris.

54. The Tribunal finds that there is no merit in the arguments of the Respondent regarding delay in the presentation of the Application. In any event, article 292 of the Convention requires

prompt release of the vessel or its crew once the Tribunal finds that an allegation made in the Application is well-founded. It does not require the flag State to file an application at any particular time after the detention of a vessel or its crew. The 10-day period referred to in article 292, paragraph 1, of the Convention is to enable the parties to submit the question of release from detention to an agreed court or tribunal. It does not suggest that an application not made to a court or tribunal within the 10-day period or to the Tribunal immediately after the 10-day period will not be treated as an application for "prompt release" within the meaning of article 292.

55. The other objection to admissibility pleaded by the Respondent is that domestic legal proceedings are currently pending before the court of appeal of Saint-Denis involving an appeal against an order of the court of first instance at Saint Paul, whose purpose is to achieve precisely the same result as that sought by the present proceedings under article 292 of the Convention. The Respondent, therefore, argues that the Applicant is incompetent to invoke the procedure laid down in article 292 as "a second remedy" against a decision of a national court and that the Application clearly points to a "situation of *lis pendens* which casts doubt on its admissibility". The Respondent draws attention in this regard to article 295 of the Convention on exhaustion of local remedies, while observing at the same time that "strict compliance with the rule of the exhaustion of local remedies, set out in article 295 of the Convention, is not considered a necessary prerequisite of the institution of proceedings under article 292".

56. The Applicant rejects the argument of the Respondent and maintains that its taking recourse to local courts in no way prejudices its right to invoke the jurisdiction of the Tribunal under article 292 of the Convention.

57. In the view of the Tribunal, it is not logical to read the requirement of exhaustion of local remedies or any other analogous rule into article 292. Article 292 of the Convention is designed to free a ship and its crew from prolonged detention on account of the imposition of unreasonable bonds in municipal jurisdictions, or the failure of local law to provide for release on posting of a reasonable bond, inflicting thereby avoidable loss on a ship owner or other persons affected by such detention. Equally, it safeguards the interests of the coastal State by providing for release only upon the posting of a reasonable bond or other financial security determined by a court or tribunal referred to in article 292, without prejudice to the merits of the case in the domestic forum against the vessel, its owner or its crew.

58. Article 292 provides for an independent remedy and not an appeal against a decision of a national court. No limitation should be read into article 292 that would have the effect of defeating its very object and purpose. Indeed, article 292 permits the making of an application within a short period from the date of detention and it is not normally the case that local remedies could be exhausted in such a short period.

59. At this stage, the Tribunal wishes to deal with the submissions of the Applicant requesting it to declare that the Respondent has violated article 73, paragraphs 3 and 4, of the Convention. The scope of the jurisdiction of the Tribunal in proceedings under article 292 of the Convention encompasses only cases in which "it is alleged that the detaining State has not complied with the provisions of this Convention for the prompt release of the vessel or its crew upon the posting of

a reasonable bond or other financial security". As paragraphs 3 and 4, unlike paragraph 2, of article 73 are not such provisions, the submissions concerning their alleged violation are not admissible. It may, however, be noted, in passing, that there is a connection between paragraphs 2 and 4 of article 73, since absence of prompt notification may have a bearing on the ability of the flag State to invoke article 73, paragraph 2, and article 292 in a timely and efficient manner.

60. The considerations set out in the previous paragraph also apply to the allegations of the Applicant (which are not reiterated in the Applicant's final submissions), that the Respondent has violated the provisions of the Convention on freedom of navigation and that the Respondent's laws are incompatible with the provisions of the Convention.

## Non-compliance with article 73, paragraph 2, of the Convention

61. The Tribunal will now deal with the allegation that the detaining State has not complied with the provisions of the Convention for the prompt release of the vessel and its Master upon the posting of a reasonable bond or other financial security. For the application for release to succeed, the allegation that the detaining State has not complied with the provisions of the Convention for the prompt release of the vessel or its crew upon the posting of a reasonable bond should be well-founded. In the present case, the Master of the *Camouco* has been accused of violating the French laws concerning fishery resources in the exclusive economic zone of France and it is not disputed that article 73 of the Convention is thereby attracted.

62. The Respondent maintains that, under article 73, paragraph 2, the posting of a bond or other security is a necessary condition to be satisfied before an arrested vessel and its crew can be released, that the Applicant has not posted any bond so far, which it is required to do promptly and immediately after the arrest of the *Camouco* and its Master, and that, consequently, the Application deserves to be dismissed as the allegation contained therein is not well-founded. In reply, the Applicant states that the posting of a bond is not a condition precedent for the submission of an application under article 292.

63. The Tribunal wishes to clarify that the posting of a bond or other security is not necessarily a condition precedent to filing an application under article 292 of the Convention. It is pertinent to recall here the Judgment of 4 December 1997 in the *M/V "SAIGA" Case*, wherein the Tribunal held:

> 76. According to article 292 of the Convention, the posting of the bond or security is a requirement of the provisions of the Convention whose infringement makes the procedure of article 292 applicable, and not a requirement for such applicability. In other words, in order to invoke article 292, the posting of the bond or other security may not have been effected in fact, even when provided for in the provision of the Convention the infringement of which is the basis for the application.

77. There may be an infringement of article 73, paragraph 2, of the Convention even when no bond has been posted. The requirement of promptness has a value in itself and may prevail when the posting of the bond has not been possible, has been rejected or is not provided for in the coastal State's laws or when it is alleged that the required bond is unreasonable.

64. In its Application, the Applicant contends that the bond of 20,000,000 FF fixed by the French court is not "reasonable". In its final submissions, the Applicant stated that the amount of a reasonable bond should be fixed at 1,300,000 FF, from which the value of the cargo seized (350,000 FF) should be deducted. The Respondent stated that the maximum total amount of fines which could be imposed on the Master of the *Camouco* and on the owners of Merce-Pesca could be more than 30 million francs and that this figure alone suffices to show the reasonableness of the amount of the bond required by the French court.

65. It is, accordingly, necessary for the Tribunal to determine whether the bond imposed by the French court of 20 million FF is reasonable for the purposes of these proceedings.

66. In the *M/V "SAIGA" Case*, the Tribunal stated that "the criterion of reasonableness encompasses the amount, the nature and the form of the bond or financial security. The overall balance of the amount, form and nature of the bond or financial security must be reasonable." (Judgment of 4 December 1997, paragraph 82).

67. The Tribunal considers that a number of factors are relevant in an assessment of the reasonableness of bonds or other financial security. They include the gravity of the alleged offences, the penalties imposed or imposable under the laws of the detaining State, the value of the detained vessel and of the cargo seized, the amount of the bond imposed by the detaining State and its form.

68. In the present case, the Tribunal has taken note of the gravity of the alleged offences and also the range of penalties which, under French law, could be imposed for the offences charged. The Agent of France indicated that the maximum penalty which can be imposed on the Master of the *Camouco* is a fine of 5 million FF. The Tribunal notes the statement by the Agent of France that, in conformity with article 73, paragraph 3, of the Convention, the Master of the *Camouco* is not subject to imprisonment. According to the Agent of France, under French law, the company which owns the *Camouco* can also be held criminally liable, as a legal person, for the offences committed by the Master of the *Camouco* acting on its behalf to a fine up to five times that imposed on the Master. The Tribunal, however, notes that no charge has yet been made against the company.

69. Regarding the value of the *Camouco*, article 111, paragraph 2(b), of the Rules requires that the application for the release of a vessel or its crew from detention contain, where appropriate, data relevant to the determination of the value of the vessel. However, the value of the vessel alone may not be the controlling factor in the determination of the amount of the bond or other financial security. In the present case, the parties differ on the value of the *Camouco*. During the oral proceedings, expert testimony was offered by the Applicant and not challenged by the Respondent to the effect that the replacement value of the *Camouco* was 3,717,571 FF. On the

other hand, the value assessed by the French authorities for the purposes of the domestic proceedings is 20 million FF but there is no evidence on record to substantiate this assessment. Attention is drawn to court orders referred to in paragraphs 36 and 42. The Tribunal also notes that the catch on board the *Camouco*, which according to the Respondent is valued at 380,000 FF, has been confiscated and sold by the French authorities.

70. On the basis of the above considerations, and keeping in view the overall circumstances of this case, the Tribunal considers that the bond of 20 million FF imposed by the French court is not "reasonable".

71. That the *Camouco* has been in detention is not disputed. However, the parties are in disagreement whether the Master of the *Camouco* is also in detention. It is admitted that the Master is presently under court supervision, that his passport has also been taken away from him by the French authorities, and that, consequently, he is not in a position to leave Réunion. The Tribunal considers that, in the circumstances of this case, it is appropriate to order the release of the Master in accordance with article 292, paragraph 1, of the Convention.

72. For the above reasons, the Tribunal finds that the Application is admissible, that the allegation made by the Applicant is well-founded for the purposes of these proceedings and that, consequently, France must release promptly the *Camouco* and its Master upon the posting of a bond or other financial security as determined in paragraph 74.

**Form and amount of the bond or other financial security**

73. The Tribunal then comes to the task of determining the amount, nature and form of the bond or other financial security to be posted, as laid down in article 113, paragraph 2, of the Rules.

74. On the basis of the foregoing considerations, the Tribunal is of the view that a bond or other security should be in the amount of 8 million FF and that, unless the parties otherwise agree, it should be in the form of a bank guarantee.

75. The Applicant has requested that the Tribunal order a bank guarantee "to be entrusted to the care of the Tribunal in order that it may be duly delivered to the French authorities". The provisions of article 114 of the Rules lay down the procedure if a bond or other financial security were to be posted with the Tribunal. Such posting, however, requires the agreement of the parties. The bond or other financial security is to be posted with the detaining State unless the parties agree otherwise (Rules, article 113, paragraph 3). Since the parties have not agreed otherwise, the Tribunal cannot accede to the request of the Applicant.

76. The bank guarantee should, among other things, state that it is issued in consideration of France releasing the *Camouco* and its Master, in relation to the incidents that occurred in the exclusive economic zone of the Crozet Islands on 28 September 1999 and that the issuer undertakes and guarantees to pay to France such sums, up to 8 million FF, as may be determined by a final judgment or decision of the appropriate domestic forum in France or by agreement of the parties. Payment under the guarantee would be due promptly after receipt by the issuer of a

written demand by the competent authority of France accompanied by a certified copy of the final judgment or decision or agreement.

## Translation of the Judgment

77. The Applicant has requested, pursuant to article 64, paragraph 4, of the Rules, that the Tribunal prepare a Spanish translation of its Judgment. Article 64, paragraph 4, reads as follows:

When a language other than one of the official languages is chosen by the parties and that language is an official language of the United Nations, the decision of the Tribunal shall, at the request of any party, be translated into that official language of the United Nations at no cost for the parties.

Article 64, paragraph 4, of the Rules deals with the situation where the parties chose a language other than English or French for their written pleadings, which is not the case in the present proceedings. Accordingly, the Tribunal cannot accede to the request of the Applicant that the Judgment be translated into Spanish pursuant to that provision.

## Operative provisions

78. For these reasons,

THE TRIBUNAL,

(1) Unanimously,

   *Finds* that the Tribunal has jurisdiction under article 292 of the Convention to entertain the Application made on behalf of Panama on 17 January 2000.

(2) By 19 votes to 2,

   *Finds* that the Application for release is admissible;

IN FAVOUR:    *President* CHANDRASEKHARA RAO; *Vice-President* NELSON; *Judges* ZHAO, CAMINOS, MAROTTA RANGEL, YANKOV, YAMAMOTO, KOLODKIN, PARK, BAMELA ENGO, MENSAH, AKL, WOLFRUM, LAING, TREVES, MARSIT, EIRIKSSON, NDIAYE, JESUS;

AGAINST:    *Judges* ANDERSON, VUKAS.

(3) By 19 votes to 2,

*Orders* that France shall promptly release the *Camouco* and its Master upon the posting of a bond;

IN FAVOUR: *President* CHANDRASEKHARA RAO; *Vice-President* NELSON; *Judges* ZHAO, CAMINOS, MAROTTA RANGEL, YANKOV, YAMAMOTO, KOLODKIN, PARK, BAMELA ENGO, MENSAH, AKL, WOLFRUM, LAING, TREVES, MARSIT, EIRIKSSON, NDIAYE, JESUS;

AGAINST: *Judges* ANDERSON, VUKAS.

(4) By 15 votes to 6,

*Determines* that the bond shall be eight million French Francs (8,000,000 FF) to be posted with France;

IN FAVOUR: *President* CHANDRASEKHARA RAO; *Vice-President* NELSON; *Judges* ZHAO, CAMINOS, MAROTTA RANGEL, YANKOV, YAMAMOTO, PARK, BAMELA ENGO, MENSAH, AKL, LAING, MARSIT, EIRIKSSON, JESUS;

AGAINST: *Judges* KOLODKIN, ANDERSON, VUKAS, WOLFRUM, TREVES, NDIAYE.

(5) By 19 votes to 2,

*Determines* that the bond shall be in the form of a bank guarantee or, if agreed to by the parties, in any other form;

IN FAVOUR: *President* CHANDRASEKHARA RAO; *Vice-President* NELSON; *Judges* ZHAO, CAMINOS, MAROTTA RANGEL, YANKOV, YAMAMOTO, KOLODKIN, PARK, BAMELA ENGO, MENSAH, AKL, WOLFRUM, LAING, TREVES, MARSIT, EIRIKSSON, NDIAYE, JESUS;

AGAINST: *Judges* ANDERSON, VUKAS.

Done in English and in French, both texts being authoritative, in the Free and Hanseatic City of Hamburg, this seventh day of February, two thousand, in three copies, one of which will be placed in the archives of the Tribunal and the others transmitted to the Government of the Republic of Panama and the Government of the French Republic, respectively.

(Signed)     P. CHANDRASEKHARA RAO,
                      President.


(Signed)          Gritakumar E. CHITTY,
                          Registrar.


*Judge* MENSAH, availing himself of the right conferred on him by article 125, paragraph 2, of the Rules of the Tribunal, appends his declaration to the Judgment of the Tribunal.

*(Initialled)*     T.A.M.


*Judge* LAING, availing himself of the right conferred on him by article 125, paragraph 2, of the Rules of the Tribunal, appends his declaration to the Judgment of the Tribunal.
*(Initialled)*     E.A.L.


*Judge* NDIAYE, availing himself of the right conferred on him by article 125, paragraph 2, of the Rules of the Tribunal, appends his declaration to the Judgment of the Tribunal.
*(Initialled)*     T.M.N.


*Vice-President* NELSON, availing himself of the right conferred on him by article 30, paragraph 3, of the Statute of the Tribunal, appends his separate opinion to the Judgment of the Tribunal.

*(Initialled)*     L.D.M.N.


*Judge* ANDERSON, availing himself of the right conferred on him by article 30, paragraph 3, of the Statute of the Tribunal, appends his dissenting opinion to the Judgment of the Tribunal.

*(Initialled)*     D.H.A.


*Judge* VUKAS, availing himself of the right conferred on him by article 30, paragraph 3, of the Statute of the Tribunal, appends his dissenting opinion to the Judgment of the Tribunal.

*(Initialled)*     B.V.

*Judge* WOLFRUM, availing himself of the right conferred on him by article 30, paragraph 3, of the Statute of the Tribunal, appends his dissenting opinion to the Judgment of the Tribunal.

*(Initialled)*        R.W.


*Judge* TREVES, availing himself of the right conferred on him by article 30, paragraph 3, of the Statute of the Tribunal, appends his dissenting opinion to the Judgment of the Tribunal.

*(Initialled)*        T.T.

*Judge* WOLFRUM, availing himself of the right conferred on him by article 30, paragraph 3, of the Statute of the Tribunal, appends his dissenting opinion to the Judgment of the Tribunal.

*(Initialled)*     R.W.

*Judge* TREVES, availing himself of the right conferred on him by article 30, paragraph 3, of the Statute of the Tribunal, appends his dissenting opinion to the Judgment of the Tribunal.

*(Initialled)*     T.T.