# INTERNATIONAL TRIBUNAL FOR THE LAW OF THE SEA

## YEAR 2000

18 December 2000

List of cases:
No. 6

## THE "MONTE CONFURCO" CASE

(SEYCHELLES *v.* FRANCE)

APPLICATION FOR PROMPT RELEASE

**JUDGMENT**

EXHIBIT "2"

## TABLE OF CONTENTS

Paragraphs

Introduction                                                          1 – 26

Factual background                                                    27 – 55

Jurisdiction                                                          56 – 60

Non-compliance with article 73, paragraphs 3 and 4, of the Convention   61 – 63

Non-compliance with article 73, paragraph 2, of the Convention       64 – 91

Form and amount of the bond or other financial security              92 – 95

Operative provisions                                                 96

**JUDGMENT**

*Present:* *President* CHANDRASEKHARA RAO; *Vice-President* NELSON; *Judges* CAMINOS, MAROTTA RANGEL, YANKOV, YAMAMOTO, KOLODKIN, PARK, BAMELA ENGO, MENSAH, AKL, ANDERSON, VUKAS, WOLFRUM, LAING, TREVES, MARSIT, EIRIKSSON, NDIAYE, JESUS; *Registrar* CHITTY.

In the "Monte Confurco" Case

*between*

Seychelles,

*represented by*

Mr. Ramón García Gallardo, *Avocat*, Bar of Brussels, Belgium, and Bar of Burgos, Spain,

*as Agent*;

Mr. Jean-Jacques Morel, *Avocat*, Bar of Saint-Denis, Réunion, France,

*as Deputy Agent*;

*and*

Mrs. Dolores Domínguez Pérez, Attorney, Bar of La Coruña, Spain, and Brussels, Belgium, Legal Assistant, S.J. Berwin & Co., London, United Kingdom and Brussels, Belgium,
Mr. Bruno Jean-Etienne, Legal Assistant, S.J. Berwin & Co., London, United Kingdom and Brussels, Belgium,

*as Counsel*,

*and*

France,

Case 1:06-cv-00039   Document 6-2   Filed 01/04/2007   Page 3 of 27

*represented by*

    Mr. Michel Trinquier, Deputy Director for the Law of the Sea, Fisheries and the Antarctic, Office of Legal Affairs of the Ministry of Foreign Affairs,

    *as Agent*;

*and*

    Mr. Jean-Pierre Quéneudec, Professor of International Law at the University of Paris I, Paris, France,

    Mr. Jacques Belot, *Avocat*, Bar of Saint-Denis, Réunion, France,

    *as Counsel.*

THE TRIBUNAL,

composed as above,

after deliberation,

*delivers the following Judgment:*

## Introduction

1.    On 20 November 2000, the Registrar of the Tribunal was notified of a letter from the Minister of Agriculture and Marine Resources of Seychelles, transmitted by facsimile, that Mr. Ramón García Gallardo and Mr. Jean-Jacques Morel were authorized to make an application to the Tribunal on behalf of Seychelles under article 292 of the United Nations Convention on the Law of the Sea (hereinafter "the Convention"), with respect to the fishing vessel *Monte Confurco*. By the same letter, the Registrar was notified of the appointment of Mr. Ramón García Gallardo as Agent and Mr. Jean-Jacques Morel as Deputy Agent, for the purpose of the application and all proceedings connected therewith.

2.    On 27 November 2000, an Application under article 292 of the Convention was filed by facsimile in the Registry of the Tribunal on behalf of Seychelles against France concerning the release of the *Monte Confurco* and its Master. A copy of the Application was sent on the same day by a note verbale of the Registrar to the Minister for Foreign Affairs of France and also in care of the Ambassador of France to Germany.

3.    On 27 November 2000, the Agent of Seychelles transmitted to the Tribunal a list of corrections to the initial submission. These corrections, being of a formal nature, were accepted

by leave of the President of the Tribunal in accordance with article 65, paragraph 4, of the Rules of the Tribunal (hereinafter "the Rules").

4.      In accordance with article 112, paragraph 3, of the Rules, the President, by Order dated 27 November 2000, fixed 7 and 8 December 2000 as the dates for the hearing with respect to the Application.  Notice of the Order was communicated forthwith to the parties.

5.      By note verbale from the Registrar dated 27 November 2000, the Minister for Foreign Affairs of France was informed that the Statement in Response of France, in accordance with article 111, paragraph 4, of the Rules, could be filed in the Registry not later than 24 hours before the hearing.

6.      The Application was entered in the List of cases as Case No. 6 and named: The "Monte Confurco" Case.

7.      On 28 November 2000, the Agent of Seychelles submitted by courier the original of the Application, which incorporated the corrections referred to in paragraph 3.  The Application was accompanied by the original of the letter referred to in paragraph 1.  A certified copy of the original of the Application was transmitted on the same date to the Minister for Foreign Affairs of France.

8.      In accordance with article 24, paragraph 3, of the Statute of the Tribunal, States Parties to the Convention were notified of the Application by a note verbale from the Registrar dated 29 November 2000.  Pursuant to the Agreement on Cooperation and Relationship between the United Nations and the International Tribunal for the Law of the Sea of 18 December 1997, the Secretary-General of the United Nations was notified by the Registrar on 28 November 2000 of the receipt of the Application.

9.      On 30 November 2000, the Registrar was notified of the appointment of Mr. Michel Trinquier, Deputy Director for the Law of the Sea, Fisheries and the Antarctic of the Office of Legal Affairs of the Ministry of Foreign Affairs of France, as Agent of France, by a letter, transmitted by facsimile, from the Deputy Director of Legal Affairs, Ministry of Foreign Affairs, Paris, addressed to the Registrar.

10.     In accordance with articles 45 and 73 of the Rules, on 1 December 2000, the President held a teleconference with the Agents of the parties and ascertained their views regarding the order and duration of the presentation by each party and the evidence to be produced during the oral proceedings.

11.     Pursuant to article 72 of the Rules, information regarding witnesses and experts was submitted by the Agent of Seychelles to the Tribunal on 28 November 2000 and on 5 and 8 December 2000, and by the Agent of France on 1 and 7 December 2000.

12.     On 6 December 2000, France transmitted by facsimile its Statement in Response, a copy of which was transmitted forthwith to the Agent of Seychelles.

13.    On 5, 6 and 8 December 2000, the Agent of Seychelles submitted additional documentation, copies of which were transmitted to the Agent of France.

14.    On 7 December 2000, the Agent of France submitted additional documentation, copies of which were transmitted to the Agent of Seychelles.

15.    After the closure of the written proceedings and prior to the opening of the oral proceedings, the Tribunal held initial deliberations on 6 December 2000 in accordance with article 68 of the Rules.

16.    On 7 December 2000, the President held consultations with the Agents of the parties in accordance with article 45 of the Rules.

17.    Prior to the opening of the oral proceedings, the parties submitted documents required under paragraph 14 of the Guidelines concerning the Preparation and Presentation of Cases before the Tribunal.

18.    Pursuant to article 67, paragraph 2, of the Rules, copies of the pleadings and documents annexed thereto were made accessible to the public from the date of opening of the oral proceedings.

19.    Oral statements were presented at four public sittings held on 7 and 8 December 2000 by the following:

*On behalf of Seychelles:*        Mr. Ramón García Gallardo, Agent,
                                  Mr. Jean-Jacques Morel, Deputy Agent.

*On behalf of France:*            Mr. Michel Trinquier, Agent,
                                  Mr. Jean-Pierre Quéneudec, Counsel,
                                  Mr. Jacques Belot, Counsel.

20.    The Agent of Seychelles, in the course of his statement, presented a number of computer-generated exhibits which were displayed on video monitors, including the following:

-    a nautical chart showing areas around the Kerguelen Islands; a nautical chart showing the areas covered by the Convention on the Conservation of Antarctic Marine Living Resources ("CCAMLR"); a nautical chart showing the route said to have been taken by the *Monte Confurco* and the position where the *Monte Confurco* is alleged to have been intercepted by the French surveillance frigate *Floréal*; a nautical chart showing areas where the *Monte Confurco* was said to have been fishing;

-    slides giving information on the value of the *Monte Confurco* and a calculation of the proposed amount of bond.

The Agent of Seychelles also presented a lamp, radio transmitter and battery said to be components of buoys used in long-line fishing.

In the course of his statement, the Agent of Seychelles referred to:

- photographs said to show equipment used by the *Monte Confurco* for long-line fishing preparation;

- photographs said to show the refrigerated hold and factory of *the Monte Confurco*;

- photographs showing fish alleged to have been found on board the *Monte Confurco*.

The original of each exhibit was delivered to the Registrar and duly registered.

21.     At a public sitting held on 7 December 2000, Mr. Guy Duhamel, Director of the Laboratory of Ichthyology, Museum of Natural History, Paris, was called as expert by the Agent of France and examined by him. Mr. Duhamel was cross-examined by the Agent of Seychelles. In the course of the testimony of the expert, a number of exhibits were displayed on video monitors, including a nautical chart showing the route said to have been taken by the *Monte Confurco* from 4 to 8 November 2000, as well as isobaths around the Kerguelen Islands and a map showing CCAMLR statistical zones. The original of each exhibit was delivered to the Registrar and duly registered.

22.     On 7 December 2000, a list of points and issues which the Tribunal would like the parties specially to address was communicated to the Agents.

23.     At a public sitting held on 8 December 2000, Mr. Antonio Alonso Pérez, merchant navy captain and marine surveyor, was called as expert by the Agent of Seychelles and examined by him. Mr. Alonso Pérez gave evidence in Spanish. The necessary arrangements were made for the statement of the expert to be interpreted into the official languages of the Tribunal.

24.     On 8 December 2000, the Agent of Seychelles and the Agent of France submitted written responses to points and issues referred to in paragraph 22.

25.     In the Application and in the Statement in Response, the following submissions were presented by the parties:

*On behalf of Seychelles,*
in the Application:

*[Translation from French]*

1. To declare that the Tribunal has jurisdiction under article 292 of the United Nations Convention on the Law of the Sea to hear the application submitted today;

2. To declare the present application admissible;

3. To declare that the French Republic has contravened article 73 (4) by not properly giving notice of the arrest of the vessel "MONTE CONFURCO" to the Republic of Seychelles;

4. To declare that the guarantee set by the French Republic is not reasonable as to its amount, nature or form;

5. With respect to the Master of the vessel "MONTE CONFURCO", Mr. José Pérez Argibay,

   - To ask, as an interlocutory measure for reasons of due process, that the French Republic allow the Captain to attend the hearing which is shortly to take place in Hamburg;

   - To find that the French Republic has failed to observe the provisions of the Convention concerning prompt release of masters of arrested vessels;

   - To require the French Republic promptly to release the Master, without bond, in light of the presence of the ship, cargo, etc. as a reasonable guarantee, given the impossibility of imposing penalties of imprisonment against him and the fact that he is a European citizen;

   - To find that the failure of the French Republic to comply with the provisions of article 73 (3) in applying to the Master measures of a penal character constitutes a *de facto* unlawful detention;

6. To set a bond in the maximum amount of 2,200,000 French francs, based upon:

   - 200,000 French francs for failure to notify presence;

   - 2,000,000 French francs for a presence of 24 hours in the exclusive economic zone without giving notice and up to 4 tonnes of catch theoretically taken in the worst of cases, as the sole admissible evidence of presumption;

7. With regard to the nature of the bond, that the Tribunal consider that the value of the cargo seized, the fishing gear seized, the bait and the gasoil constitute part of the guarantee; according to our calculations, the value of the foregoing being 9,476,382 French francs;

8. That the Tribunal choose between the financial instrument [*constitution financière*] issued by a European bank or a guarantee comprised of the value of an equivalent number of tonnes to be immediately discharged;

9. With regard to the form of the financial bond, as a subsidiary measure, in the event that the Tribunal chooses to set a symbolic financial bond, the Applicant requests that the Tribunal note its desire for a bank guarantee by a leading European bank, rather than

payment in cash, to be deposited with the French Republic unless the parties decide that it be deposited with the Tribunal, in exchange for the release of the vessel.

*On behalf of France,*
in the Statement in Response:

[*Translation from French*]

On the basis of the foregoing presentation of facts and considerations of law, the Government of the French Republic, while reserving the right to supplement or amend the present submissions, as appropriate, requests the Tribunal, rejecting the second submission made on behalf of the Republic of Seychelles, to declare and adjudge:

1. that the bond set by the competent French court for the release of the "Monte Confurco" is reasonable in the circumstances of the case, in light of all the relevant factors;

2. that the application submitted to the Tribunal on 27 November 2000 on behalf of the Republic of Seychelles is therefore not admissible.

26.    In accordance with article 75, paragraph 2, of the Rules, the following final submissions were presented by the parties at the end of the hearing;

*On behalf of Seychelles:*

[*Translation from French*]

1. To declare that the Tribunal has jurisdiction under article 292 of the United Nations Convention on the Law of the Sea to hear the application submitted today;

2. To declare the present application admissible;

3. To declare that the French Republic has contravened article 73 (4) by not properly giving notice of the arrest of the vessel "MONTE CONFURCO" to the Republic of Seychelles;

4. To declare that the guarantee set by the French Republic is not reasonable as to its amount, nature or form;

5. With respect to the master of the vessel "MONTE CONFURCO", Mr. José Pérez Argibay,

- To find that the French Republic has failed to observe the provisions of the Convention concerning prompt release of masters of arrested vessels;

- To require the French Republic promptly to release the master, without bond, in light of the presence of the ship, cargo, etc. as a reasonable guarantee, given the

impossibility of imposing penalties of imprisonment against him and the fact that he is a European citizen;

- To find that the failure of the French Republic to comply with the provisions of article 73 (3) in applying to the master measures of a penal character constitutes a *de facto* unlawful detention;

6. With regard to the vessel, to order its release upon the posting of a guarantee in the maximum amount of 2,200,000 FF, based upon:

- 200,000 FF for failure to notify presence;

- 2,000,000 FF for a presence of 24 hours in the exclusive economic zone without giving notice and up to 4 tonnes of catch theoretically taken in the worst of cases, as the sole admissible evidence of presumption;

7. With regard to the nature of the bond, that the Tribunal consider that the value of the cargo seized, the fishing gear seized, the bait and the gasoil constitute part of the guarantee; according to our calculations, the value of the foregoing being 9,800,000 FF;

8. That the Tribunal choose between the financial instrument [*constitution financière*] issued by a European bank or a guarantee comprised of the value of an equivalent number of tonnes or other items according to our calculations;

9. With regard to the form of the financial bond, as a subsidiary measure, in the event that the Tribunal chooses to set a symbolic financial bond, the Applicant requests that the Tribunal note its desire for a bank guarantee by a leading European bank, of the same content as the guarantee already posted with the French Republic in the "*CAMOUCO*" *Case* in consideration of the release of the vessel.

*On behalf of France:*

[*Translation from French*]

The Government of the French Republic requests the Tribunal, rejecting the second submission made on behalf of the Republic of Seychelles, to declare and adjudge:

1. that the bond set by the competent French court for the release of the "Monte Confurco" is reasonable in the circumstances of the case, in light of all the relevant factors;

2. that the Application submitted to the Tribunal on 27 November 2000 on behalf of the Republic of Seychelles is therefore not admissible.

## Factual background

27. The *Monte Confurco* is a fishing vessel, flying the flag of Seychelles. Its owner is the Monteco Shipping Corporation, a company registered in Seychelles. According to the Certificate of the Seychelles Registry dated 3 March 2000, the *Monte Confurco* was registered on 2 October 1999 in Seychelles. Seychelles provided the *Monte Confurco* with fishing licence no. 710 to engage in fishing in international waters.

28. On 27 August 2000, the *Monte Confurco* left Port Louis (Mauritius) to engage in long-line fishing in the Southern seas. Its Master was Mr. José Manuel Argibay Pérez, a Spanish national.

29. On 8 November 2000, at 11:25 hours, the *Monte Confurco* was boarded by the crew of the French surveillance frigate *Floréal* in the exclusive economic zone of the Kerguelen Islands in the French Southern and Antarctic Territories.

30. A procès-verbal of violation (*procès-verbal d'infraction*) No. 1/00 was drawn up on 8 November 2000 by the Captain of the *Floréal* against the Master of the *Monte Confurco* for having:

### [Translation from French]

Failed to announce his presence and the quantity of fish carried aboard to the Head of the District of the Kerguelen Islands.

Fished without having obtained the prior authorization required by law.

Attempted to evade or for having evaded investigation by the agents responsible for policing fishing activities.

31. Following the procès-verbal of violation No. 1/00 of 8 November 2000, another procès-verbal (*procès-verbal d'appréhension*) No. 2/00 was drawn up on 9 November 2000 by the Captain of the *Floréal*, recording therein the *apprehension* of the *Monte Confurco*, the fish catch, the navigation and communication equipment, computer equipment, and documents of the vessel and of the crew.

32. On 8 November 2000, at 23:20 hours, the *Monte Confurco* was rerouted and escorted under the supervision of the French navy to Port-des-Galets, Réunion, where it arrived on 19 November 2000.

33. On 20 November 2000, the Regional and Departmental Director of Maritime Affairs of Réunion drew up three procès-verbaux of seizure (*procès-verbaux de saisie*). The following in support of the charges levelled therein was extracted from the procès-verbal of violation:

### [Translation from French]

1. Observation of the presence of the ship "MONTE CONFURCO" inside the French economic zone 90 miles to the west of the Kerguelen Islands at 0700 hours on 8 November.

2. Observation that no announcement of entry into the exclusive economic zone of the Kerguelen Islands was made.

3. Observation of long-lines in the water identical to those of the *Monte Confurco*, whose numbers form logical sequences, whereas no other fishing ship was present in the zone.

4. Observation of defrosted bait that had been jettisoned into the sea.

5. Observation of small frozen fish and fishhooks to the rear of the deck amidships.

6. Observation of topped and gutted toothfish at temperatures of between −1.6 degrees C and −2.4 degrees C in the main refrigerated hold that was at a temperature of −20 degrees C.

7. Observation that the factory had recently been cleaned and that there was fresh blood and fresh waste.

8. Observation of the presence of 158 tonnes of toothfish on board.

34. Of the three procès-verbaux of seizure referred to in paragraph 33, procès-verbal No. 58/AM/00 provided for the seizure of the toothfish on board the vessel. It estimated the catch at 158 tonnes and its value at 9 million French francs. It further decided that the fish should be sold by means of a limited tender and that the proceeds should be credited to the public treasury until court orders were obtained in respect of the proceeds. Procès-verbal No. 59/AM/00 provided for the seizure of all the fishing gear and estimated the new replacement value of this material at 300,000 French francs (FF). Procès-verbal No. 60/AM/00 provided for the seizure of the vessel, its equipment and documents, estimated the value of the ship at 15 million French francs and decided that the ship would be docked at Port-des-Galets in Réunion. The procès-verbaux record that the Master of the *Monte Confurco* refused to sign them.

35. On 20 November 2000, the Regional and Departmental Director of Maritime Affairs of Réunion moved the court of first instance (*tribunal d'instance*) at Saint-Paul for confirmation of the arrest of the vessel and for its release subject to prior payment of a bond of 95,400,000 FF, plus judicial costs.

36. On 21 November 2000, the Master of the vessel was charged and placed under court supervision (*contrôle judiciaire*) by the judge appointed by the Chief Magistrate of the *tribunal de grande instance* at Saint-Denis. The judge ordered that the Master should surrender his passport and not leave Réunion.

37. In its order of 22 November 2000, the court of first instance at Saint-Paul noted, among other things, that the vessel *Monte Confurco* entered the exclusive economic zone of the Kerguelen Islands without prior authorization and without advising the head of a district of the nearest archipelago of its presence, or declaring the tonnage of fish carried on board (in violation of the provisions of article 2 of Law 66-400 of 18 June 1966, as amended by the Law of 18 November 1997) and that the fact that the vessel was found in the exclusive economic zone of the Kerguelen Islands with a certain tonnage of toothfish on board without having given notice of its presence or declaring the quantity of fish carried raised the "presumption" that the whole of the catch was unlawfully fished in the exclusive economic zone of the Kerguelen Islands.

38. On the amount of the bond to be fixed, the court of first instance at Saint-Paul took the following into account:

1) the value of the ship appraised by Mr. Chancerel, marine surveyor, at 15 million French francs;

2) the fines incurred by the Master of the vessel (on the basis of 158 tonnes of fish caught and the provisions of Law No. 66-400 of 18 June 1966, as amended by the Law of 18 November 1997) calculated at 79 million French francs;

3) compensation of less than 100,000 FF which victims are generally granted.

39. Keeping the aforesaid in view, the court set the bond as follows:

- to secure the appearance of the captain of the arrested vessel: 1,000,000 FF;

- to secure payment of damage caused by the contraventions found: 400,000 FF;

- to secure payment of fines incurred and confiscation of the vessel: 55,000,000 FF.

The total bond was thus fixed at 56,400,000 FF.

40. The court confirmed the arrest of the *Monte Confurco* and declared that its release would be subject to the payment of a bond in the amount of 56,400,000 FF in cash, certified cheque or banker's draft, to be paid into the Deposits and Consignments Office (*Caisse des Dépôts et Consignations*).

41. The court also observed that, by virtue of the provisions of articles 73, paragraph 2, and 292 of the Convention, the bond must be "reasonable", that the overall balance between the amount, form and nature of the bond must be reasonable and that the evaluation of reasonableness should be based on the seriousness of the contraventions ascribed to the Master of the arrested vessel, the penalties that could be imposed under the laws of the arresting State, the value of the arrested vessel and the value of the cargo. These observations echo the holdings of this Tribunal in paragraphs 66 and 67 of its judgment in the "*Camouco*" *Case*.

42. In support of its order, the court relied on the following:

(a) Article 3 of Law No. 83-582 of 5 July 1983, as amended, concerning the regime of seizure and supplementing the list of agents authorized to establish offences in matters of sea fishing;

(b) Articles 2 and 4 of Law No. 66-400 of 18 June 1966, as amended by the Law of 18 November 1997, on sea fishing and the exploitation of marine products in the French Southern and Antarctic Territories;

(c) Article 142 of the Code of Criminal Procedure.

43.    Article 3 of Law No. 83-582 of 5 July 1983, as amended, reads as follows:

*[Translation from French]*

The competent authority may seize the vessel or boat that has been used to fish in contravention of laws and regulations, regardless of the manner in which the violation is established.

The competent authority shall conduct or arrange for the conducting of the vessel or boat to a port designated by that authority; it shall prepare a procès-verbal of seizure and the vessel or boat shall be handed over to the Maritime Affairs Department.

Within a time-limit not exceeding seventy-two hours after the seizure, the competent authority shall submit to the judge of first instance of the place of the seizure an application accompanied by the procès-verbal of seizure in order for the judge to confirm, in an order made within seventy-two hours, the seizure of the vessel or boat or to decide on its release.

Whatever the circumstances, the order shall be made within six days of the arrest referred to in article 7 or of the seizure.

The release of the vessel or boat shall be decided by the judge of first instance of the place of the seizure upon the posting of a bond, the amount and arrangements for payment of which he shall decide in accordance with the provisions of article 142 of the Code of Criminal Procedure.

44.    Articles 2 and 4 of Law No. 66-400 of 18 June 1966, as amended, read as follows:

*[Translation from French]*

Article 2

No one may fish and hunt marine animals, or engage in the exploitation of marine products, whether on land or from vessels, without having first obtained authorization.

Any vessel entering the exclusive economic zone of the French Southern and Antarctic Territories shall be obliged to give notification of its presence and to declare the tonnage of fish held on board to the chief district administrator of the nearest archipelago.

Article 4

Any person who fishes, hunts marine animals or exploits marine products on land or on board a vessel, without having first obtained the authorization required under article 2, or fails to give notification of entering the economic zone, or to declare the tonnage of fish held on board, shall be punished with a fine of 1,000,000 francs and six months' imprisonment, or with one only of these two penalties.

Anyone fishing, in prohibited zones or during prohibited periods, in contravention of the provisions of the orders provided for under article 3, shall be subject to the same penalties.

However, the statutory maximum provided for in the first paragraph shall be increased by 500,000 francs for every tonne caught over and above two tonnes without the authorization provided for under article 2 or in breach of the regulations concerning prohibited zones and periods issued pursuant to article 3.

Concealment, within the meaning of article 321-1 of the Penal Code, of products caught without the authorization provided for in article 2 or in breach of the regulations concerning prohibited zones and periods issued pursuant to article 3 shall be subject to the same penalties.

45.    Article 142 of the Code of Criminal Procedure reads as follows:

*[Translation from French]*

When the accused is required to furnish security, such security guarantees:

1.    the appearance of the accused, whether under charges or not, at all stages of the proceedings and for the execution of judgment, as well as, where appropriate, the execution of other obligations which have been imposed upon him;

2.    payment in the following order of:
a)    reparation of damages caused by the offence and restitution, as well as alimony debts when the defendant is being prosecuted for failure to pay this debt;
b)    fines.

The decision which compels the defendant to furnish security shall determine the sums assigned to each of the two parts of the security.

Article 142-1

*Article 292*
*Prompt release of vessels and crews*

1.  Where the authorities of a State Party have detained a vessel flying the flag of another State Party and it is alleged that the detaining State has not complied with the provisions of this Convention for the prompt release of the vessel or its crew upon the posting of a reasonable bond or other financial security, the question of release from detention may be submitted to any court or tribunal agreed upon by the parties or, failing such agreement within 10 days from the time of detention, to a court or tribunal accepted by the detaining State under article 287 or to the International Tribunal for the Law of the Sea, unless the parties otherwise agree.

2.  The application for release may be made only by or on behalf of the flag State of the vessel.

3.  The court or tribunal shall deal without delay with the application for release and shall deal only with the question of release, without prejudice to the merits of any case before the appropriate domestic forum against the vessel, its owner or its crew. The authorities of the detaining State remain competent to release the vessel or its crew at any time.

4.  Upon the posting of the bond or other financial security determined by the court or tribunal, the authorities of the detaining State shall comply promptly with the decision of the court or tribunal concerning the release of the vessel or its crew.

45. Panama and France are both States Parties to the Convention. Panama ratified the Convention on 1 July 1996 and the Convention entered into force for Panama on 31 July 1996. France ratified the Convention on 11 April 1996 and the Convention entered into force for France on 11 May 1996.

46. The status of Panama as the flag State of the *Camouco*, both at the time of the incident in question and now, is not disputed. The parties did not agree to submit the question of release from detention to any other court or tribunal within 10 days from the time of detention. The Tribunal notes that the Application has been duly made on behalf of the Applicant in accordance with article 292, paragraph 2, of the Convention and that the Application satisfies the requirements of articles 110 and 111 of the Rules.

47. The Tribunal notes further that the Respondent does not contest the jurisdiction of the Tribunal.

48. For the aforesaid reasons, the Tribunal finds that it has jurisdiction to entertain the Application.

49.     The Applicant also contends, among other things, that the officers of the *Floréal* did not find any trace of fresh fish in the holds, save two units of fish which were kept cold for use in the on-board galley, that they did not find any trace of preparation for fishing on the decks of the ship, and that they also found that the 158 tonnes of toothfish on board were frozen to a very low temperature. It further maintains that they found a clean but wet factory and empty and inoperative freezing tunnels. No attempt was made to camouflage the name of the ship and the flag of Seychelles, which were in fact visible from all sides.

50.     In view of the aforesaid, the Applicant contends that the *Monte Confurco* was neither in the process of fishing, nor of preparing to fish, in the exclusive economic zone of the Kerguelen Islands.

51.     The Respondent does not agree with the Applicant's contention with regard to the location of the vessel on 7 November 2000. It points out that the presence of the *Monte Confurco* inside the French exclusive economic zone was detected at 90 miles to the west of the Kerguelen Islands on 8 November 2000, at 07:00 hours local time and 02:00 hours universal time. The approximate position of the ship at that time was 49° 27.9' S latitude and 66° 37.5' E longitude. The Respondent contends that the *Monte Confurco* could not have covered the distance between the two points within the time indicated by the Applicant and that the vessel would have been within the exclusive economic zone of the Kerguelen Islands for a number of days prior to 8 November 2000 and fishing during that period.

52.     The Applicant, however, points out that the vessel covered the distance between its position on 7 November 2000 and 8 November 2000 sailing at an average of 9 to 10 knots, since the vessel had 1,200 horsepower, enabling it to reach a speed of 13 knots.

53.     The Respondent also contends that the breakdown of the fax machine could not justify failure to notify the vessel's entry into the exclusive economic zone of the Kerguelen Islands, since the vessel was equipped with radio-telephone equipment and an INMARSAT station capable of sending and receiving telephone messages.

54.     Mr. Duhamel, the scientist called as an expert on behalf of the Respondent, states that it was not possible to conduct long-line fishing in the areas that the Master of the *Monte Confurco* claimed that he had fished. From a scientific point of view, he argues, the depths of water – between 3000 and 4000 metres – did not permit fishing of this species, i.e., the toothfish.

55.     For its part, the Applicant contends that the expert based his testimony on research conducted on board a scientific vessel or French fishing vessels which were principally trawlers with a fishing capacity limited to a depth of 1000 metres. Alternatively, long-line technology of a different type, which does not go below 1500 metres, is used. The Applicant adds that Spanish fishermen do carry out fishing of toothfish in waters up to a depth of 2,500 to 2,700 metres.

**Jurisdiction**

56.     The Applicant alleges that the Respondent has not complied with the provisions of article 73 of the Convention for the prompt release of a vessel or its crew. It further alleges that the bond set by the Respondent was excessive, that the parties did not reach agreement within 10 days of the time of detention to submit the matter to another court or tribunal, and that, accordingly, the Tribunal has jurisdiction to hear the Application under article 292 of the Convention.

57.     The Tribunal will, at the outset, examine the question whether it has jurisdiction to entertain the Application. Article 292 of the Convention sets out the requirements to be satisfied to found the jurisdiction of the Tribunal. It reads as follows:

### Article 292
### Prompt release of vessels and crews

1.  Where the authorities of a State Party have detained a vessel flying the flag of another State Party and it is alleged that the detaining State has not complied with the provisions of this Convention for the prompt release of the vessel or its crew upon the posting of a reasonable bond or other financial security, the question of release from detention may be submitted to any court or tribunal agreed upon by the parties or, failing such agreement within 10 days from the time of detention, to a court or tribunal accepted by the detaining State under article 287 or to the International Tribunal for the Law of the Sea, unless the parties otherwise agree.

2.  The application for release may be made only by or on behalf of the flag State of the vessel.

3.  The court or tribunal shall deal without delay with the application for release and shall deal only with the question of release, without prejudice to the merits of any case before the appropriate domestic forum against the vessel, its owner or its crew. The authorities of the detaining State remain competent to release the vessel or its crew at any time.

4.  Upon the posting of the bond or other financial security determined by the court or tribunal, the authorities of the detaining State shall comply promptly with the decision of the court or tribunal concerning the release of the vessel or its crew.

58.     Seychelles and France are both States Parties to the Convention. Seychelles ratified the Convention on 16 September 1991 and the Convention entered into force for Seychelles on 16 November 1994. France ratified the Convention on 11 April 1996 and the Convention entered into force for France on 11 May 1996. The status of Seychelles as the flag State of the *Monte Confurco*, both at the time of the incident in question and now, is not disputed. The parties did not agree to submit the question of release from detention to any other court or tribunal within 10 days of the time of detention. The Application has been duly made on behalf of Seychelles in

accordance with article 292, paragraph 2, of the Convention. The Application satisfies the requirements of articles 110 and 111 of the Rules.

59. The Respondent does not contest the jurisdiction of the Tribunal.

60. For the above reasons, the Tribunal finds that it has jurisdiction to entertain the Application.

## Non-compliance with article 73, paragraphs 3 and 4, of the Convention

61. The Applicant contends that the placement of Mr. José Manuel Pérez Argibay, the Master of the *Monte Confurco*, under court supervision constitutes a *de facto* detention and a grave violation of his personal rights, contrary to the provisions of article 73, paragraph 3, of the Convention. It further contends that Seychelles was not given proper notification of the arrest of the vessel in terms of article 73, paragraph 4, of the Convention.

62. The Respondent states that, under article 292 of the Convention, the Tribunal's competence does not extend to the adjudication of the allegations made by the Applicant. Further, it maintains that the allegations are not based upon facts. The Respondent denies that court supervision amounts to detention, since such supervision does not deprive the Master of the vessel of his liberty. Attention was also drawn to the letter dated 9 November 2000 from the Prefect of Réunion transmitted by facsimile on 10 November 2000 to the Consul General of Seychelles in Paris, wherein information was given on the measures taken against the vessel and its Master.

63. As held in the "*Camouco*" *Case*, in proceedings under article 292 of the Convention, submissions concerning the alleged violations of article 73, paragraphs 3 and 4, of the Convention are not admissible (Judgment of 7 February 2000, paragraph 59). The question of the implications of court supervision in connection with the request made for the release of the Master of the vessel will be addressed in paragraph 90.

## Non-compliance with article 73, paragraph 2, of the Convention

64. The Tribunal notes that the Applicant alleges that there has been non-compliance with article 73, paragraph 2, of the Convention, which is a provision of the Convention "for the prompt release of the vessel or its crew upon the posting of a reasonable bond or other financial security".

65. The Applicant submits that the bond set by the court of first instance at Saint-Paul in the amount of 56,400,000 FF for the release of the *Monte Confurco* and its Master is not a "reasonable bond or other security" within the meaning of article 73, paragraph 2, of the Convention and that the Tribunal should, in exercise of its powers under article 292 of the Convention, fix a "reasonable" bond and order the release of the vessel upon the posting of such a bond, as well as the release of the Master without a bond, since he could not be subject to imprisonment. The Applicant contends that the bond should be set in the amount of 2,200,000 FF, based upon:

- 200,000 FF for failure to notify presence;

- 2,000,000 FF for a presence of 24 hours in the exclusive economic zone without giving notice and up to 4 tonnes of catch theoretically taken in the worst of cases, as the sole admissible evidence of presumption.

66. The Respondent requests the Tribunal to hold that the bond set by the French court is reasonable in the circumstances of the case and in light of all the relevant factors.

67. When an application for prompt release of a vessel and its crew is filed, the Tribunal, as stated in article 113 of the Rules, is required to decide whether or not the allegation made by the Applicant is well-founded. If the Tribunal decides that the allegation is well-founded, it is required to determine the amount, nature and form of the bond or financial security to be posted for the release of the vessel or the crew.

68. It is accordingly necessary for the Tribunal to determine whether the bond imposed by the French court is reasonable.

69. The Tribunal notes that for the purposes of these proceedings the context for determining what is a reasonable bond flows from article 73 of the Convention. Paragraphs 1 and 2 of article 73 read as follows:

1. The coastal State may, in the exercise of its sovereign rights to explore, exploit, conserve and manage the living resources in the exclusive economic zone, take such measures, including boarding, inspection, arrest and judicial proceedings, as may be necessary to ensure compliance with the laws and regulations adopted by it in conformity with this Convention.

2. Arrested vessels and their crews shall be promptly released upon the posting of reasonable bond or other security.

70. Article 73 identifies two interests, the interest of the coastal State to take appropriate measures as may be necessary to ensure compliance with the laws and regulations adopted by it on the one hand and the interest of the flag State in securing prompt release of its vessels and their crews from detention on the other. It strikes a fair balance between the two interests. It provides for release of the vessel and its crew upon the posting of a bond or other security, thus protecting the interests of the flag State and of other persons affected by the detention of the vessel and its crew. The release from detention can be subject only to a "reasonable" bond.

71. Similarly, the object of article 292 of the Convention is to reconcile the interest of the flag State to have its vessel and its crew released promptly with the interest of the detaining State to secure appearance in its court of the Master and the payment of penalties.

72. The balance of interests emerging from articles 73 and 292 of the Convention provides the guiding criterion for the Tribunal in its assessment of the reasonableness of the bond. When determining whether the assessment made by the detaining State in fixing the bond or other

security is reasonable, the Tribunal will treat the laws of the detaining State and the decisions of its courts as relevant facts. The Tribunal, however, wishes to make it clear that, under article 292 of the Convention, it is not an appellate forum against a decision of a national court.

73.     The Tribunal is of the view that the amount of a bond should not be excessive and unrelated to the gravity of the alleged offences. Article 292 of the Convention is designed to ensure that the coastal State, when fixing the bond, adheres to the requirement stipulated in article 73, paragraph 2, of the Convention, namely, that the bond it fixes is "reasonable" based on an assessment of relevant factors.

74.     The proceedings under article 292 of the Convention, as clearly provided in paragraph 3 thereof, can deal only with the question of release, without prejudice to the merits of any case before the appropriate domestic forum against the vessel, its owner or its crew. Nevertheless, in the proceedings before it, the Tribunal is not precluded from examining the facts and circumstances of the case to the extent necessary for a proper appreciation of the reasonableness of the bond. Reasonableness cannot be determined in isolation from facts. It should, however, be emphasized that a prompt release proceeding, as held by this Tribunal in the *M/V "SAIGA" Case*, is characterized by the requirement, set out in article 292, paragraph 3, of the Convention, that it must be conducted and concluded "without delay" (Judgment of 4 December 1997, paragraph 47). This, too, suggests a limitation in prompt release proceedings on the extent to which the Tribunal could take cognizance of the facts in dispute and seek evidence in support of the allegations made by the parties.

75.     When under article 292 of the Convention the Tribunal is called upon to determine what constitutes a reasonable bond, its determination must be based on the Convention and other rules of international law not incompatible with the Convention.

76.     In the *"Camouco" Case*, the Tribunal specified the factors relevant in an assessment of the reasonableness of bonds or other financial security, as follows:

> The Tribunal considers that a number of factors are relevant in an assessment of the reasonableness of bonds or other financial security. They include the gravity of the alleged offences, the penalties imposed or imposable under the laws of the detaining State, the value of the detained vessel and of the cargo seized, the amount of the bond imposed by the detaining State and its form. (Judgment of 7 February 2000, paragraph 67).

This is by no means a complete list of factors. Nor does the Tribunal intend to lay down rigid rules as to the exact weight to be attached to each of them. These factors complement the criterion of reasonableness specified by the Tribunal in the *M/V "SAIGA" Case* as follows:

> In the view of the Tribunal, the criterion of reasonableness encompasses the amount, the nature and the form of the bond or financial security. The overall balance of the amount, form and nature of the bond or financial security must be reasonable. (Judgment of 4 December 1997, paragraph 82).

77.    The Tribunal will now deal with the application of the various factors in the present case.

78.    Turning to the gravity of the offences alleged to have been committed in the present case, they relate to the conservation of the fishery resources in the exclusive economic zone.

79.    The Respondent has pointed out that the general context of unlawful fishing in the region should also constitute one of the factors which should be taken into account in assessing the reasonableness of the bond. In its view, this illegal fishing is a threat to the future resources and the measures taken under CCAMLR for the conservation of toothfish. The Respondent states that "[a]mong the circumstances constituting what one might call the 'factual background' of the present case, there is one whose importance is fundamental. That is the general context of unlawful fishing in the region concerned." The Tribunal takes note of this argument.

80.    The Tribunal has taken note of the range of penalties which, under French law, are imposable for the alleged offences. These penalties underline that under French law such offences are grave.

81.    The Applicant, however, argues that the only offence committed by the Master of the vessel was his failure to notify the entry of the *Monte Confurco* into the exclusive economic zone of the Kerguelen Islands and the tonnage of fish it carried on board, and that the vessel did not fish in the said zone.

82.    The Tribunal notes the admission of the Applicant that the Master did not notify the presence of the vessel in the exclusive economic zone. The Tribunal further notes that the vessel carried on board a large quantity of toothfish and that it was equipped with radio-telephone equipment and an INMARSAT station capable of sending and receiving telephone messages.

83.    The parties do not seem to disagree on the penalties imposable under the French laws which have been noted in paragraphs 42 to 45. These laws provide for imposition of fines, award of damages and possible confiscation of vessels, fishing gear and fish illegally caught. The order of the court of first instance at Saint-Paul took into account the penalties imposable under French law, as may be seen from paragraph 38. The Applicant, however, argues that the maximum penalties taken into account by the French court were highly exaggerated; that, on the facts of the case, these penalties could not be imposed; and that the practice of French courts does not warrant the application of such high penalties.

84.    As regards the value of the *Monte Confurco*, the parties differ widely. In its order, the court of first instance at Saint-Paul has fixed the value of the vessel at 15,000,000 FF, placing reliance on the appraisal made by Mr. Chancerel, a marine surveyor. Later, in the course of the public sitting held on 7 December 2000, the Respondent relied upon an expert opinion given by Barry Rogliano Salles, which placed the value of the vessel at US$ 1,500,000, a value some 25% less than that given by Mr. Chancerel. As against this, the Applicant relied upon reports by two experts, Mr. Albino Moran, who stated that the value of the vessel was somewhere between US$ 400,000 and US$ 450,000, and Mr. Prassant Kirmar of BP Shipping Agency Ltd., who put the value of the vessel in the region of US$ 500,000. During the oral proceedings, expert testimony was offered by Mr. Antonio Alonso Pérez, on behalf of the Applicant and not challenged by the

Respondent, to the effect that the value of the *Monte Confurco* was about US$ 345,680. The vessel is not insured for its machinery and hull. The assessment of the value of the vessel as provided by the Applicant corresponds to the amount for which the vessel was sold in 1999. The Tribunal considers that this assessment is reasonable.

85.     Turning now to the cargo, both parties estimate the value of the catch on board the *Monte Confurco* at 9,000,000 FF. It may be relevant to mention here that the Respondent also seized the fishing gear, the value of which is estimated by the French authorities at 300,000 FF, and that this valuation is not disputed by the Applicant. The order of the court of first instance at Saint-Paul does not provide for securing confiscation of the fish on board and the fishing gear, and, accordingly, the amount of bond fixed by the court does not incorporate their value.     The Respondent contends that the seizure of the fish on board and of the fishing gear is "not before the Tribunal", and that it will be the subject of a different proceeding under French law.

86.     The Tribunal, however, considers that the value of the fish and of the fishing gear seized is also to be taken into account as a factor relevant in the assessment of the reasonableness of the bond. The seizures of the fish, the fishing gear and the vessel were effected with reference to the same offences. For the purposes of article 292 of the Convention, the Tribunal considers them as part and parcel of the same proceedings.

87.     In its order, the court of first instance at Saint-Paul held that the 158 tonnes of toothfish were found on board, that the fact that the vessel was discovered in the exclusive economic zone of the Kerguelen Islands without prior notification of its entry therein and without declaration of the quantity of fish carried on board "raises the presumption that the whole of the catch was unlawfully fished in the exclusive economic zone" of the Kerguelen Islands. In calculating the amount of the bond, the court of first instance appears to have assumed that the fines the trial judge might impose could correspond approximately to the illegal catch being half of the 158 tonnes.

88.     The Tribunal is aware that the expert opinion of the scientist referred to in paragraph 54 suggests that not all the fish on board could have been fished outside the exclusive economic zone of the Kerguelen Islands. The Tribunal does not, however, consider the assumption of the court of first instance at Saint-Paul as being entirely consistent with the information before this Tribunal. Such information does not give an adequate basis to assume that the entire catch on board, or a substantial part of it, was taken in the exclusive economic zone of the Kerguelen Islands; nor does it provide clear indications as to the period of time the vessel was in the exclusive economic zone before its interception.

89.     On the basis of the above considerations, and keeping in view the overall circumstances of this case, the Tribunal considers that the bond of 56,400,000 FF imposed by the French court is not "reasonable" within the meaning of article 292 of the Convention.

90.     It is not disputed that the *Monte Confurco* has been in detention. However, the parties are in disagreement whether the Master of the vessel is also in detention. It is admitted that the Master is presently under court supervision, that his passport has also been taken away from him by the French authorities, and that, consequently, he is not in a position to leave Réunion. The

Tribunal considers that, in the circumstances of this case, it is appropriate to order the release of the Master in accordance with article 292, paragraph 1, of the Convention.

91.    For the above reasons, the Tribunal finds that the Application with respect to the allegation of non-compliance with article 73, paragraph 2, of the Convention is admissible, that the allegation made by the Applicant is well-founded for the purposes of these proceedings and that, consequently, France must release promptly the *Monte Confurco* and its Master upon the posting of a bond or other financial security to be determined by the Tribunal.

### Form and amount of the bond or other financial security

92.    The Tribunal then comes to the task of determining the amount, nature and form of the bond or other financial security to be posted, as laid down in article 113, paragraph 2, of the Rules.

93.    On the basis of the foregoing considerations, the Tribunal is of the view that the security should be in the total amount of 18,000,000 FF. In considering the overall balance of amount, form and nature of the bond or financial security, the Tribunal holds that the monetary equivalent of the 158 tonnes of fish on board the *Monte Confurco* held by the French authorities, i.e., 9,000,000 FF, shall be considered as security to be held or, as the case may be, returned by France to the Applicant. The remaining security, in the amount of 9,000,000 FF, should, unless the parties otherwise agree, be in the form of a bank guarantee, to be posted with France. The Tribunal notes that, in the *"Camouco" Case*, it decided that the bond should be in the form of a bank guarantee (Judgment of 7 February 2000, paragraph 74). No difficulty was encountered in the implementation of this judgment. Consequently, the claim of the Respondent that cash or certified cheque are the only possible forms for the bond does not seem reasonable to the Tribunal.

94.    The Tribunal holds that the bank guarantee shall be invoked only if the monetary equivalent of the security held by France is not sufficient to pay the sums as may be determined by a final judgment or decision of the appropriate domestic forum in France.

95.    The bank guarantee should, among other things, state that it is issued in consideration of France releasing the *Monte Confurco* and its Master, in relation to the incidents dealt with in the order dated 22 November 2000 of the court of first instance at Saint-Paul and that the issuer undertakes and guarantees to pay to France such sums, up to 9,000,000 FF, as may be determined by a final judgment or decision of the appropriate domestic forum in France or by agreement of the parties. Payment under the guarantee would be due promptly after receipt by the issuer of a written demand by the competent authority of France accompanied by a certified copy of the final judgment or decision or agreement.

### Operative provisions

96.    For these reasons,

THE TRIBUNAL,

(1)     Unanimously,

*Finds* that the Tribunal has jurisdiction under article 292 of the Convention to entertain the Application made on behalf of Seychelles on 27 November 2000.


(2)     Unanimously,

*Finds* that the claims of Seychelles that France failed to comply with article 73, paragraphs 3 and 4, of the Convention are inadmissible.


(3)     Unanimously,

*Finds* that the Application with respect to the allegation of non-compliance with article 73, paragraph 2, of the Convention is admissible.


(4)     By 19 votes to 1,

*Finds* that the allegation made by the Applicant is well-founded;

IN FAVOUR:       *President* CHANDRASEKHARA RAO; *Vice-President* NELSON; *Judges* CAMINOS, MAROTTA RANGEL, YANKOV, YAMAMOTO, KOLODKIN, PARK, BAMELA ENGO, MENSAH, AKL, VUKAS, WOLFRUM, LAING, TREVES, MARSIT, EIRIKSSON, NDIAYE, JESUS;

AGAINST:       *Judge* ANDERSON.


(5) By 19 votes to 1,

*Decides* that France shall promptly release the *Monte Confurco* and its Master upon the posting of a bond or other security to be determined by the Tribunal;

IN FAVOUR:       *President* CHANDRASEKHARA RAO; *Vice-President* NELSON; *Judges* CAMINOS, MAROTTA RANGEL, YANKOV, YAMAMOTO, KOLODKIN, PARK, BAMELA ENGO, MENSAH, AKL, VUKAS, WOLFRUM, LAING, TREVES, MARSIT, EIRIKSSON, NDIAYE, JESUS;

AGAINST:       *Judge* ANDERSON.

(6)    By votes 17 to 3,

*Determines* that the bond or other security shall consist of: (1) an amount of nine million French francs (9,000,000 FF) as the monetary equivalent of the 158 tonnes of fish seized by the French authorities and (2) a bond in the amount of nine million French francs (9,000,000 FF);

IN FAVOUR:    *President* CHANDRASEKHARA RAO; *Vice-President* NELSON; *Judges* CAMINOS, MAROTTA RANGEL, YANKOV, YAMAMOTO, KOLODKIN, PARK, BAMELA ENGO, MENSAH, AKL, VUKAS, WOLFRUM, REVES, MARSIT, EIRIKSSON, NDIAYE;

AGAINST:    *Judges* ANDERSON, LAING, JESUS.


(7) Unanimously,

*Determines* that the bond shall be in the form of a bank guarantee or, if agreed to by the parties, in any other form.


(8) By 18 votes to 2,

*Decides* that the bank guarantee shall be invoked only if the monetary equivalent of the security held by France is not sufficient to pay the sums as may be determined by a final judgment or decision of the appropriate domestic forum in France;

IN FAVOUR:    *President* CHANDRASEKHARA RAO; *Vice-President* NELSON; *Judges* CAMINOS, MAROTTA RANGEL, YANKOV, YAMAMOTO, KOLODKIN, PARK, BAMELA ENGO, MENSAH, AKL, VUKAS, WOLFRUM, LAING, TREVES, MARSIT, EIRIKSSON, NDIAYE;

AGAINST:    *Judges* ANDERSON, JESUS.


    Done in English and in French, both texts being authoritative, in the Free and Hanseatic City of Hamburg, this eighteenth day of December, two thousand, in three copies, one of which will be placed in the archives of the Tribunal and the others transmitted to the Government of the Republic of Seychelles and the Government of the French Republic, respectively.

                              *(Signed)*    P. CHANDRASEKHARA RAO,
                                            President.

(Signed)        Gritakumar E. Cнιττу,
Registrar.

*Judge* MENSAH, availing himself of the right conferred on him by article 125, paragraph 2, of the Rules of the Tribunal, appends his declaration to the Judgment of the Tribunal.

                      *(Initialled)*     T.A.M.

*Judge* VUKAS, availing himself of the right conferred on him by article 125, paragraph 2, of the Rules of the Tribunal, appends his declaration to the Judgment of the Tribunal.

                      *(Initialled)*     B.V.

*Judge* NDIAYE, availing himself of the right conferred on him by article 125, paragraph 2, of the Rules of the Tribunal, appends his declaration to the Judgment of the Tribunal.

                      *(Initialled)*     T.M.N.

*Vice-President* NELSON, availing himself of the right conferred on him by article 30, paragraph 3, of the Statute of the Tribunal, appends his separate opinion to the Judgment of the Tribunal.

                      *(Initialled)*     L.D.M.N.

*Judge* ANDERSON, availing himself of the right conferred on him by article 30, paragraph 3, of the Statute of the Tribunal, appends his dissenting opinion to the Judgment of the Tribunal.

                      *(Initialled)*     D.H.A.

*Judge* LAING, availing himself of the right conferred on him by article 30, paragraph 3, of the Statute of the Tribunal, appends his dissenting opinion to the Judgment of the Tribunal.

                      *(Initialled)*     E.A.L.

*Judge* JESUS, availing himself of the right conferred on him by article 30, paragraph 3, of the Statute of the Tribunal, appends his dissenting opinion to the Judgment of the Tribunal.

                      *(Initialled)*     J.-L.J.